I.    **The Amendments to §235(b)(3) of the SRA of 1984 violate the <u>Ex Post Facto</u> clause in Petitioner's particular case, as §235(b)(3) was in effect at the time of petitioner's 1986 sentencing, requiring Petitioner's release on parole after serving the 148th month of his 100-148 months parole guideline range, and the amendments, made after the 1986 sentencing, are being used to extend the parole release to at least 2010 or 2013.**

Petitioner presents an Ex Post Facto challenge to the amendments to §235(b)(3) of the SRA of 1984, he was tried, found guilty and sentenced after §235(b)(3) was enacted October 12, 1984, when it required Petitioner's parole <u>within</u> his 100-148 month parole guideline range.  After Petitioner was sentenced in 1986, amendments were made to §235(b)(3) beginning on December 7, 1987, which pemitted the Parole Commission to set parole release dates outside the parole guideline range, and these amendments are being used to extend Petitioner's parole release date outside his 100-148 months parole guideline range to 2010 or 2013.

A.    <u>On the date of Petitioner's sentencing in 1986, 18 U.S.C. §4206 was not the parole standard applicable to Petitioner's parole release date.  At the time, §4206 was abolished with the Parole Commission on October 31, 1992, and Petitioner was not eligible for parole until after October 31, 1992.  Congress clearly expressed its intent that §235(b)(3) was the sole parole release law applicable to Petitioner.</u>

Petitioner received a forty-five year sentence on April 3, 1986, for his 1986 convictions.  This rendered Petitioner ineligible for any type of parole consideration until after "serving ten years."  18 U.S.C. §4205(a).  At the time of Petitioner's 1986 sentencing, the SRA had abolished the Parole Commission and parole statutes as of October 31, 1992.  See <u>D'Agostino</u>, <u>supra</u>, 877 F.2d at 1171.

- 9 -

Because the Parole Commission and parole statutes were abolished as of October 31, 1992, and Petitioner was not "eligible" for any type of parole consideration until after serving ten years, 18 U.S.C. §4205(a), Congress realized that Petitioner would "fall through the cracks" and never receive a parole hearing or parole release date. 1984 U.S. Code Cong. & Admin. News at 3372. Consistent with the Act's intent to remove disparity, Congress chose to release Petitioner <u>within</u> his "applicable parole guideline range." <u>Lyons v. Mendez</u>, 303 F.3d 285 (3rd Cir. 2002); <u>Romano</u>, 816 F.2d at 841. The terms for establishing Petitioner's parole release date were set forth in §235(b)(3):

> The United States Parole Commission <u>shall</u> set a release date, for an individual who will be <u>in its</u> jurisdiction the day before the expiration of five years after the effective date of this Act, that is <u>within</u> the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

CCCA, Pub. L. 98-472, Ch. II, §235(b)(3), 98 Stat. 2032, October 12, 1984 (see exhibit 5).

The Third Circuit Court has made it clear that §235(b)(3) applied to Petitioner in <u>Lyons v. Mendez</u>, 303 F.3d 285 (3rd Cir. 2002). In <u>United States ex rel D'Agostino v. Keohane</u>, 877 F.2d 1167 (3rd Cir. 1989), a prisoner being released on parole <u>prior</u> to the Commission's expiration on October 31, 1992, advanced a claim that he was entitled to the benefits of the original version of §235(b)(3). Circuit Judge Mennsman made it very clear that §235(b)(3) did not apply to D'Agostino. As she pointed out, §235(b)(3) "requires the Parole Commission to set release dates <u>within</u> applicable guideline ranges <u>only</u> for prisoners [such as

Petitioner] who will be in prison October 30, 1992, the day before the end of the five-year transition period..." Id. at 1171, quoting Romano v. Luther, 816 F.2d at 842 (emphasis supplied).

Petitioner remained in prison after October 31, 1992, so §235(b)(3) applied to him. Lyons v. Mendez, 303 F.3d 285 (3rd Cir. 2002). The question now is whether the amendments made to §235(b)(3) after petitioner's sentencing in 1986 violate the Ex Post Facto clause.

The Ex Post Facto clause

> forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the [Clause] is not an individual's right to less punish-ment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was con-summated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legis-lature, it violates the clause if it is both retro-spective and more onerous than the law in effect on the date of the offense.

Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed. 2d 17 (1981); Stogner v. California, N° 01-1757 (S.Ct. 6/26/03).

The critical issue to resolve is whether §235(b)(3) was in effect on the date of Petitioner's 1986 sentencing. The Legisla-tive History to §235(b) provides that answer, which is affirmative.

B.    The Legislative History firmly establishes that the subsections of §235(b) went into effect on the date of the enactment on October 12, 1984. These subsections had to be in effect upon enactment, as the parolable term of imprisonment at issue for Petitioner's 1986 sentencing came directly from §235(b)(1)(A).

It is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." Colautti v. Franklin, 439 U.S. 379, 392 (1979). If §235(b)(3) was not in effect on the date of Petitioner's 1986 sentencing, then no

law was operative governing his post-1992 parole release on the
date he was sentenced.  Courts are not permitted to interpret sta-
tutes in a manner that produces absurd results.  <u>Public Citizen v.</u>
<u>Department of Justice</u>, 491 U.S. 440, 453-55 (1989).

Not suprisingly, four Courts of Appeals have published opinions
holding that §235(b)(3) went into effect October 12, 1984.  <u>Lyons v.</u>
<u>Mendez</u>, 303 F.3d 285 (3rd Cir. 2002); <u>Romano v. Luther</u>, 816 F.2d
832, 839 (2nd Cir. 1987); <u>Norwood v. Brennan</u>, 891 F.2d 179, 181
(7th Cir. 1989); <u>Dallis v. Martin</u>, 929 F.2d 587, 589, 589 n.4 (10th
Cir. 1991).

The legislative history to §235 reveals that Congress speci-
fically targeted the group of offenders being sentenced from Octo-
ber 12, 1984, to October 31, 1987, as individuals to be released
within their parole guideline range if they remained in prison be-
yond October 30, 1992.  In §235(b)(1) and in the Senate Report on
§235(b), this is defined as the "period described in subsection
(a)(1)(B)."  In drafting §235, Congress went to great lengths to
comply with the "fair notice" requirements of the <u>due process</u>
clause, by devoting several paragraphs detailing how the provi-
sions as to a term of imprisonment would be executed for indivi-
duals sentenced from October 12, 1984 to October 31, 1987.  This
was the major purpose of §235.

However, until now, no court except the Third Circuit (<u>Lyons</u>
<u>v. Mendez</u>, 303 F.3d 285 (2002)) had ever been presented with an
Ex Post Facto challenge to the amendments of §235 by an individual
who was sentenced from October 12, 1984 to October 31, 1987, the
"period described in subsection (a)(1)(B)" of §235(b)(1).  As a
result, no Court except the Third Circuit (in <u>Lyons v. Mendez</u>)

interpreted this phrase, or interpreted §235 from the perspective
of an individual who was committed and sentenced during this period.
Once this was interpreted, it provided the key to the proper inter-
pretation of the effective date of §235(b), which is October 12,
1984.

    1.    The intent of the "period described in subsection
           (a)(1)(B)" of §235(b)(1) is the key to obtaining
           the October 12, 1984 effective date of §235(b)

It is impossible to dispute that the subsections of §235(b)
went into effect October 12, 1984.  Section 235(b)(1) of the SRA of
1984 provided this Petitioner with the "[parolable] term of impris-
onment" at issue for his 1986 sentence.  Section 235(b)(1)(A)
provided:

> (b)(1) The following provisions of law in effect on the day
> before the effective date of this Act shall remain in effect...
> as to a term of imprisonment during the period described in
> subsection (a)(1)(B):
>
> (A) Chapter 311 of Title 18, United States Code.
> (B) Chapter 309 of Title 18, United States Code.
> . . .

Exhibit 5.  In the Senate Report, Congress clearly expressed
its intent that the underlined text went into effect upon enact-
ment, and the Senate Report leaves no room for dispute that this
language provided this Petitioner with the "[parolable] term of
imprisonment" at issue:

> Section [235](b)... keeps the provisions as to a [parolable]
> term of imprisonment in current law in effect during the
> period described in subsection (a)(1)(B).

S. rep. 98-225, p. 189, September 13, 1983, reprinted in 1984
U.S. Code Cong. & Admin. News 3182, 3372 (see exhibit 2).
It is indisputable that the "period described in subsection
(a)(1)(B)" is October 12, 1984, to October 31, 1987.[3/]

Quite simply, §235(b) had to be in effect on October 12, 1984, as §235(b) could not "keep the provisions as to a term of imprisonment" in effect from October 12, 1984, to October 31, 1987, unless it went into effect October 12, 1984.  Congress clearly expressed its intent that the subsections of §235(b) went into effect October 12, 1984,[4/] and "courts have a duty to be faithful to Congressional intent when interpreting a statute." Texaco Inc. v. Hasbrouck, 496 U.S. 543, 568 n.27 (1990).  Two parole laws were annexed to

---

3/ The Senate Report on §235 defines the "period described in subsection (a)(1)(B)" as the period "relating to the creation and responsibilities of the United States Sentencing Commission," which took effect on the "date of enactment" on October 12, 1984. S. Rep. 98-225, p. 188.  Exhibit 1.  Initially, the Commission was given "18 months" after the date of enactment to submit the initial guidelines to Congress.  Id.  On December 26, 1985, this 18 month period was extended one year to "30" months, or October 31, 1987.  Sentencing Reform Amendments Act of 1985, Pub. L. 99-217, §2(a), 99 Stat. 1728.  Exhibit 7.  Petitioner's 1986 sentence occurred during the "period described in subsection (a)(1)(B)." The Sentencing Guidelines took effect November 1, 1987.

4/ The Senate Report on §235(a) states that "with three exceptions, this title will take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment..."  The "Third exception, contained in subsection (a)(1)(B) (ii) is that the sentencing guidelines system will not replace the current law provisions relating to the imposition of sentence, the determination of a prison release date, and the calculation of good time credits, until three events occur..."  Exhibit 1. This is why the Senate Report on §235(b) states that "subsection [235](b)... keeps the provisions as to a term of imprisonment in current law **in effect during the period described in subsection (a)(1)(B)**."  Exhibit 2.  As the Romano and Lyons courts pointed out, §235(b) governed the transition period from October 12, 1984 to October 31, 1987.  Romano, 816 F.2d at 839. Lyons, 303 F.3d 293.

Also, the above phrase "**with three exceptions**" in the Senate Report on §235(a) places the "effective date" at October 12, 1984.  This is obvious, as the heading of §235 is "EFFECTIVE DATE," and its effective date had to be October 12, 1984, as that is the date §235(a) of the SRA authorized the "creation" of the Sentencing Commission in 1984, there wouldn't have been any Sentencing Guidelines to take effect on November 1, 1987. Exhibit 1.

Petitioner's term of imprisonment, §235(b)(1)(A) and §235(b)(3), but only §235(b)(3) could apply as the date of Petitioner's sentence.

The Lyons and Romano courts explained why §235(b)(3) had to be "in effect" October 12, 1984:

> The government contends that subsection 235(a)(1) postpones the effective date of the SRA until November 1, 1987, with certain exceptions, and that subsection 235(b)(3), being part of the [SRA], therefore has the same effective date provision.  Section 235 specifies the times when the various provisions of the [SRA] become effective and includes various provisions to coordinate the implementation of the new sentencing system. **Unless a contrary intention clearly appears, an effective date provision becomes effective on the date of enactment.** It would be highly anomalous for portions of a section creating the timetable for a statute to have their own effective dates delayed.  As appellant points out, if the subsections of subsection 235(b) did not become effective until November 1, 1987, the Chairman of the Parole Commission, who becomes an ex officio member of the Sentencing Commission by virtue of subsection 235(b)(5), could not join the Sentencing Commission until November 1, 1987, almost six months after the Commission must submit its guidelines to Congress.

Romano, 816 F.2d at 839.  The Lyons Court, 303 F.3d 785 at 293 held:

> "It may be true that considering the mechanics of transition, "there was no need" for §235(b)(3) to go into effect before the rest of the SRA.  It is possible that Congress wished to design a transition without the window of opportunity through which Lyons sees his freedom.  However, the text of the statute is the best expression of the intent of Congress.  Using standard tools of statutory interpretation, we have carefully considered both the text and context of §235(b)(3) and conclude that it took effect upon enactment.  We hold that §235(b)(3) took effect on October 12, 1984, and as originally enacted, applied to Lyons.  Thus he was a member of the class of individuals who were sentenced between the enactment of the SRA in 1984 and the amendment of §235(b)(3) in 1987 who are entitled to a parole release date within the guideline range.  The application of the 1987 amendment to Lyons disadvantaged him because it permitted the Commission to set his release date beyond... rather than within... the guideline range.  By imposing additional retrospective punishment on Lyons, the amended §235(b)(3) operated as an Ex Post Facto law.  It is unconstitutional as applied to Lyons."

- 15 -

The history of §235(b) makes it clear that the parole transition provisions of the SRA of 1984 went into effect immediately, and this is well supported by other factors.[5/]

In Norwood v. Brennan, 891 F.2d 179, 181 (7th Cir. 1989), another anomaly surfaced:[6/]

> Because Norwood raises issues regarding retroactivity, we will first address the effective date of §235 of the SRA of 1984, as set forth in §235(a)(1). In construing that section, we held in United States v. Stewart, 865 F.2d 115 (7th Cir. 1988), that the SRA of 1984 only applied to offenses committed after November 1, 1987. That rule, however, does not apply to the parole transition provision of the SRA including §235, because defendants, being sentenced after November 1, 1987, are not subject to parole. A contrary holding would produce the anomaly of a parole regulation applicable only to offenses not subject to parole. While we have not previously addressed this question, the Second Circuit reached an identical conclusion in Romano. There, the court stated that in general the 1984 SRA applied only to offenses committed after November 1, 1987, but that the SRA transition provisions, such as then §235, were effective immediately. That holding was consistent with the intent of Congress in enacting the SRA and with the overall statutory scheme. Therefore, §235 of the SRA of 1984 applied to Norwood's parole determination...

Id. at 181.

Another glaring anomaly occurs unless the subsections of §235(b) went into effect October 12, 1984. Section 235(b)(1) of the SRA provides:

> The following provisions of law in effect on the day before the effective date of this Act shall remain in effect...

> (E) Section 5017 through 5020 of Title 18...

Exhibit 5. §235(b)(1)(E). Sections "5017 through 5020" were not "in effect on the day before" November 1, 1987, as they are statutes of Chapter 402 of Title 18 - which was repealed on the "date of enactment" on October 12, 1984. §235(a)(1)(A). Exhibit 4, 10-13. Of course, sections "5017 through 5020" were in effect

- 16 -

the day before October 12, 1984.

---

5/ "Statutes should be interpreted to avoid untenable distinctions
and unreasonable results whenever possible."
American Tobacco Co. v. Peterson, 456 U.S. 63, 71 (1982)
A basic tenet of statutory construction is that a statute
"should" be construed so that effect is given to all its pro-
visions, so that no part will be inoperative or superflous,
void or insignificant, and so that one section will not destroy
another unless the provision is the result of obvious mistake
or error." 2A Norman J. Singer, Sutherland, Statutes and
Statutory Construction, §46.06, at 119-120 (5th Ed. 1992).

6/ In Norwood v. Brennan, the court was interpreting an amendment
made to §235(a)(1) on December 7, 1987, adding:
    This Chapter shall take effect on the first day of the first
    calender month beginning thirty-six months after the date of
    enactment, and shall apply only to offenses committed after
    the taking effect of this chapter, except that --

Sentencing Act of 1987, Pub. L. 100-182, §2(a), 101 Stat. 1266.
The intent of this amendment was to clarify the intent of the
Senate Report on §235(a), which stated:
    This title will apply only to any offense or other event
    occurring on or after the effective date [of the sentencing
    guideline]. A sentence imposed before the **effective date of
    the guidelines** as to an individual imprisoned or on probation
    or parole on that date would not be affected by this title.
    As to an offense committed prior to the effective date [of the
    guidelines], the pre-existing law will apply to all substantive
    matters including the imposable sentence [as the pre-existing
    laws were retained in effect by §235(b) of the SRA].

Exhibit 2. Of course, the Senate Report on §235(a) dealt exclu-
sively with the date the guidelines went into effect. The Sen-
tencing Guidelines went into effect on November 1, 1987. How-
ever, as the Norwood court recognized, the SRA's intent to apply
only to sentencing after November 1, 1987, could not apply to
the parole transition provision of the §235(b), or Congress en-
acted a law that could never apply to anyone, which would be
absurd. It was clearly the intent of Congress that the parole
transition provision, §235(b), was in effect upon enactment on
October 12, 1984.

Further, the Parole Commission conducted parole hearings for this Petitioner in 2003.  The legal authority for these hearings came from §235(b)(1)(A), as extended by Pub. L. 101-650 and 104-232 in 1990 and 1996, respectively, so §235(b) had to be in effect in 1986.

The statutory framework underlying §235, once properly understood, reveals why §235(b) was an integral part of the Act's "EFFECTIVE DATE" provision, and why it had to go into effect October 12, 1984.

Prior to October 12, 1984, the Parole Commission and Reorganization Act of 1976 ("PCRA") governed the parole of federal prisoneres.  Pub. L. 94-233, §2, 90 Stat. 219, codified as amended at Chapter 311 of Title 18 U.S.C. §§4201-4218 (1982)(repealed October 12, 1984, repeal effective November 1, 1987).

The PCRA was repealed on October 12, 1984, by the SRA of 1984, §218(a)(5)(Exhibit 3), which abolished the Parole Commission and all pre-existing parole statutes.  CCCA of 1984, Ch. II, Pub. L. 98-473, §218(a)(5), 98 Stat. 2037.  Exhibit 3.  In the interim period between the date the PCRA was repealed, October 12, 1984, and the date the Sentencing Guidelines were finally implemented, November 1, 1987, Congress decided to retain parolable terms of imprisonment, parole, and good time statutes in effect.  As set forth in the Senate Report above, this was done through §235(b)(1) Indeed, although the PCRA was repealed October 12, 1984, it was §235(b)(1)'s phrase "period described in subsection (a)(1)(B)" that kept the PCRA in effect until October 31, 1987, and made the repeal effective November 1, 1987.

The obvious reason for this phrase in §235(b)(1), and for

- 18 -

placing §235(b) in effect October 12, 1984, is a matter of funda-
mental constitutional law - to warn those being sentenced between
October 12, 1984, and October 31, 1987, of how their terms of im-
prisonment and parole release dates were going to be determined,
in light of the fact that the Parole Commission and parole statutes
were being abolished. Weaver v. Graham, 450 U.S. at 28 ("The
Framers sought to assure that legislative Acts give fair warning
of their effects and permit individuals to rely on their meaning
until explicitly changed."); McBoyle v. United States, 283 U.S. 25,
27 (1932)(An accused has the right to "fair warning... in language
that the common world will understand of what the law intends to
do if a certain line is passed.")[7]

Congress could not place §235(b) into effect November 1, 1987,
as individuals committing offenses on or after November 1, 1987,
were no longer subject to parolable terms of imprisonment, and
there could be no fair warning. Cf. Norwood v. Brennan, supra,
891 F.2d at 181.

With this understanding, the intent of §235(b) takes its na-
tural course. The Senate Report on §235(b) states:

> Subsection (b) retains the Parole Commission and current
> law provisions related to parole in effect for the five-
> year period after the effective date of this title in
> order to deal with sentences imposed under current sen-
> tencing practices. It also keeps the provisions of a
> term of imprisonment in effect during the period des-
> cribed in (a)(1)(B). ...

---

[7] The "courts are not at liberty to pick and choose among Con-
gressional enactments, and when two statutes [§235(b)(3) and
§235(b)(1)(A)] are capable of co-excistence, it is the duty
of the courts, absent a clearly expressed intent to the con-
trary, to regard each as effective." Morton v. Mancari,
417 U.S. 535, 551 (1974).

> Most of those individuals incarcerated under the old
> system will be released during the five year period.  As
> to those individuals who have not been released at that
> time, the Parole Commission must set a release date for
> them prior to the expiration of the five years that is
> consistent with the applicable parole guidelines.

Exhibit 2.  Congress enacted all these provisions together.  Individuals being sentenced between October 12, 1984 and October 31, 1987, to the date the Parole Commission was abolished, October 31, 1992, were given fair warning that their parole release dates would be established by PCRA standards.

Congress recognized that most prisoners were sentenced between October 12, 1984, and October 31, 1987, would be released during the five-year period.  However, Congress also recognized that the very language of 18 U.S.C. §4205(a) rendered individuals like petitioner, who were sentenced from October 12, 1984, to October 31, 1987, ineligible for parole until after the Parole Commission was abolished on October 31, 1992.  Congress stated that petitioner and others similarly situated would "fall through the cracks," and never receive a parole release date.  1984 U.S. Code Cong. & Admin. News at 3372.  For this "limited group, Congress chose not to require service of their maximum sentences but instead to afford them release within their applicable parole guideline range." Lyons, 303 F.3d at 285; Romano, 816 F.2d at 841.[8]

---

[8] The Lyons and Romano opinions give the state of law exactly as it was at the time of petitioner's sentencing in 1986.

C.  The application of the version of §235(b)(3) in effect
    on the date of sentencing in 1986 requires petitioner's
    immediate release from federal prison, as the amendments
    are Ex Post Facto laws.

The "retroactive alteration of parole or early release provi-

sions... implicates the Ex Post Facto clause because such credits

are one determinant of petitioner's prison term... and [the peti-

tioner's] effective sentence [was] altered once this [was] changed."

Weaver, 450 U.S. at 32; Stogner v. California, N° 01-1957 (S.Ct.

6/26/03).  The Court explained that the removal of such provisions

can constitute an increase in punishment, because a "prisoner's

eligibility for reduced imprisonment is a significant factor en-

tering into... the defendant's decision to plea bargain."  Id.

Petitioner relied on §235(b)(3) in 1984 in rejecting a plea

bargain, (See this petition, infra at 5), never imagining that

Congress would retroactively nullify the law mandating his release

date within his 100-148 month parole guideline range.  Petitioner's

term of incarceration has been advanced by 171 months as a result

of amendments made to §235(b)(3) after his sentencing.

The Ex Post Facto clause is violated if the amendments are

"both retrospective and more onerous than the law in effect on the

date of [petitioner's] sentence [in1986]."  Weaver, 450 U.S. at 30.

The amendments are retrospective, as they were made after petition-

er's sentence in 1986.  They are being applied to deny parole until

at least 2010 or 2013.  A release after serving 148 months is re-

quired by §235(b)(3) of 1984.  The word "shall" is used in

§235(b)(3), and "Congress could not have chose stronger words to

express its intent that petitioner's parole release within 148

months be mandatory.  United States v. Monsanto, 491 U.S. 600, 607

(1989).

Section 235(b)(3) was the "specific, narrowly drawn statute" that applied to petitioner's parole release date after sentencing in 1986, and it "takes precedence over the more generally applicable statute [§235(b)(1)(A)]." Simpson v. United States, 435 U.S. 6, 15 (1978); see also Morton v. Mancari, supra, 417 U.S. at 550-551.[9/]

The amendments are Ex Post Facto laws, and petitioner is entitled to immediate release on parole, like he should have at his initial parole hearing back in August 2003, after serving 240 months.

---

[9/] Again, at the time of sentencing in 1986, the parole release standard retained for the five-year transition period. 18 U.S.C. §4206 of §235(b)(1)(A), could never apply to petitioner. Argument 1.A., ante at pp. 6-9. The Ex Post Facto laws are Pub. L. 100-182, §4, Pub. L. 101-650, §316, and Pub. L. 104-232, §§1-3, which extended the use of §4206 until 2002 - 2005.

II.  **The Amendments to the original version of §235(b)(3)**
     **of the SRA of 1984 violated Petitioner's Due Process**
     **Rights.**

On the date of Petitioner's sentencing in 1986, §235(b)(3)
was the only parole release law applicable. At the time,
Petitioner had researched the legislative history, which made
it clear that the subsection of §235(b) went into effect upon
enactment in 1984. Based on this, petitioner rejected a plea
bargain, as §235(b)(3) provided the same release date as a 20
year or over sentence. Petitioner would be released after serving
148 months, according to Salient Factor 9, Severity 8, due to
§235(b)(3). Further, the parole discharge was the same. 28 C.F.R.
§2.43(c)(1)(1986); Exhibit 8. Petitioner preserved his trial and
appellate rights, without exposing himself to increased punishment,
a sound tactical decision at the time.

The amended versions of §235(b) can not be applied retroactively
to petitioner, as they violate his liberty interest in parole
created by the only parole release law applicable on the date of
sentencing, §235(b)(3). See: Wolff v. McDonnell, 418 U.S. 539, 558
(1974)("liberty interest" created by statute is protected by Due
Process Clause); Landgraf v. USI Film Products, 511 U.S. 244, 266
(1994)(Due Process Clause "protects the interests in fair notice
and repose that may be compromised by retroactive legislation");
Matthews v. Kidder Reabody & Co., 161 F.3d 156, 160 n.4 (3rd Cir. 1998).

-23-

## THE VIOLATIONS BY THE PAROLE BOARD OF THE PAROLE BOARD RULE
## "NOTICE OF THE PROVISIONS OF RULE 219(c)"
### DENIED PETITIONER's DUE PROCESS

The Petitioner also hereby avers that he has been deprived of his due process rights under the Fifth Amendment by the Parole Board Examiner, Mr. Joseph Pacholski's decision that petitioner's offense severity rating is Category 8, so as to decide that petitioner "continue to expiration." To assert a due process claim, petitioner must identify the denial of a liberty interest. Sandin v. Conner, 515 U.S 472, 115 S.Ct. 2293, 132 L.Ed. 2d 418 (1995). The Assistant United States Attorney's duties include inter alia research and preparation of the presentence report. The data and information accumulated is directly responsible for the prospective liberty of a criminal offender and as to how the parole board authorities execute any longer term of imprisonment. Regardless of the pre or post judgment utilization of the document, its force creates and influences liberty concerns.

Such interests are generally limited to "freedom of restraint" when the restraint exceeds the intended sentence in a manner as to give rise to protection by the due process clause. However, due process will also manifest if circumstances... "nonetheless impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison," in petitioner's case, they being 85 years of age, poor health, and having already served 20 years of a 30 years sentence, instead of the §235(b)(3) guideline range of 148 months. Id. at 484, 115 S.Ct. 2293.

In this petition, petitioner can establish both. The fact that the actual sentencing mechanics and hybrid categories is not

- 24 -

incorporated in this petition should not erode the seriousness of
the fact that absent the use of the inaccurate date, which was sub-
mitted to the parole board in addendum form (Exhibit 15) Petitioner's
severity rating is a Category 7, not 8, and he therefore has over-
served his within guideline liberty interest sentence of 128 months
maximum of Salient factor 9, Severity 7.  (See Addendum, exhibit 15).

What is now before this District Court is the continued use,
by examiner Joseph Pochalski, and the National Appeals Board, of
the unaccurate data that constructively they used to calculate
what presently is an erroneous release date among other matters
affecting illegal restraint.

This is _not_ a petition or controversy where _no_ liberty interest
accrues in the parole board security classification of Category 8,
Myer v. Reno, 911 F.Supp. 11, 17 (D.D.C. 1996), or place of con-
finement, Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75
L.Ed. 2d 813 (1983).  This _is_ a petitioner where it is shown that
examiner Pacholski and the National Appeals Board, in reaching
their decision of Category 8, relied on a P.I.R. report dated
March 11, 1986, compiled by Assistant United States Attorneys, in
which they quoted predicate racketeering acts of conspiracies to
murder of which the jury had obviated to render _no verdict_ and also
had eventually been dismissed by Federal and State Courts.  The
examiner or parole commission may not base its judgment as to
parole on an inaccurate factual predicate.  See Campbell v. United
States Parole Commission, 704 F.2d 106, 109 (3rd Cir. 1983).
All of the conspiracies to murder, alleged by the A.U.S.A.'s in
the P.I.R. Report relied upon by examiner Pacholski in reaching
his decision of offense severity rating 8, have in the last 20 years

been rebutted and proven false by testimony from F.B.I. agents and F.B.I. top echelon informants in three separate trials since 1983: <u>United States v. Connolly</u>, Cr N° 99-10428 (1st Cir. May 28, 2002), <u>United States v. Angiulo</u>, Federal 1st Circuit Court of Appeals, <u>Commonwealth v. Angiulo</u>, Massachusetts Supreme Court (Exhibit 15).

The examiner's and National Appeals Board's reliance and decision, by and in basing their final judgement as to severity category and no parole on inaccurate predicate racketeering conspiracies to murder, which had been completely rebutted by jury trials, F.B.I. agents' testimony and top echelon 41 years F.B.I. informants, (see Addendum Exhibit 15), violated petitioner's constitutional <u>due process rights</u> (Courts of Appeals have found that the Federal Parole Statute creates a substantial expectation of parole that is protected by the <u>due process clause</u>), see: <u>Kindred v. Spears</u>, 894 F.2d 1474-1484 (5th Cir. 1990); <u>Solomon v. Elsea</u>, 676 F.2d 282, 285 (7th Cir. 1982); and <u>Evans v. Dillahunty</u>, 662 F.2d 522, 526 (8th Cir. 1981), by denying petitioner's liberty interests created by the S.R.A. on October 12, 1984, section 235(b)(3), and freedom from restraint, thereby imposing atypical significant hardship on petitioner to the ordinary incidents of prison life, he being eighty-five (85) years of age. <u>See</u>: <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). In addition the use of the inaccurate misleading allegations and evidence in the prosecution's P.S.R. of March 11, 1986 is so unduly prejudicial that it rendered the initial parole hearing of August 28, 2003, fundamentally unfair and violated petitioners due process rights under the "Due Process Clause" of the 5th Amendment.

-26-

## THE VIOLATION OF THE PAROLE BOARD's NOTICE PROVISIONS OF 219(c)

There is no question that the examiner and commission are en-
titled to consider the contents of any documents available to them
prior to arriving at a decision during a parole hearing, but the
examiner or commission must provide a prisoner with notice that
the information will be used as evidence to deny him parole and
the prisoner must have an opportunity to respond to the evidence
in the document 28 CFR §219(c)("the examiner or commission may take into
account any substantial information available to it... and any
aggravating and mitigating circumstances, provided the prisoner
is apprised of the information and afforded an opportunity to
respond.")  Patterson v. Gunnell, 753 F.2d 253-255 (2nd Cir. 1985).

Furthermore, the opportunity to respond to the evidence in
the documents used to deny parole must take place before the ex-
aminer proffers his recommendation.  28 CFR §219(c) explains that
after the prisoner has had an opportunity to respond to the evi-
dence, if there exists a factual dispute, the commission shall
resolve it according to the preponderance of evidence.  It is in-
conceivable that Congress intended this fact finding to take place
after a hearing examiner had made his determination to grant or
deny parole.

The examiner and commission did not comply with 28 CFR §219(c) in the
case at bar.  After questioning petitioner as to whether he was a
member of "La Cosa Nostra" and without mention of any of the evi-
dence connecting Petitioner to La Cosa Nostra, the ultimate basis
for the denial of parole, the examiner proceeded to ask about the
alleged predicate acts of conspiracy to murders, also without men-
tion of any of the evidence of any documents being used or referred

to.  The examiner then adjourned the hearing and asked petitioner
to leave the examining room.  When the examiner called petitioner
back into the room, the examiner read his recommendation that "due
to petitioner being a member of La Cosa Nostra and the enterprise
being involved in extreme and cruel murders," that petitioner is
denied parole, and ordered to continue to 2010, 2013 expiration.

The explanation to the petitioner of the examiner's reasons
for the denial of parole (at the conclusion of the hearing) was
the first mention to petitioner that he was a member of La Cosa
Nostra, with no documentation or evidence being tendered to peti-
tioner, before the decision of no parole regarding La Cosa Nostra
was decided, as mandated under Parole Rule 28 C.F.R. §219(c).
See Gambino v. Morris, 134 F.3d 156 (3rd Cir. 1998).

After a hearing, the examiner and commission may deny parole
but they must explain with particularity the reason for the denial
and include a summary of the information relied on in making this
determination.  Petitioner was denied proper notice of the factual
documented allegations supporting the examiner's and parole commis-
sion's determination that he was a member of La Cosa Nostra.  The
examiner and commission violated Parole Board Rule 28 C.F.R. §2:53
by failing to provide a hearing complying with 28 C.F.R. §219(c)
when they did not inform petitioner, prior to and subsequent to
the hearing of any essential piece of documented information upon
which it relied when it determined that petitioner was a member of
La Cosa Nostra.

This error is serious enough to warrant a new parole hearing.
Patterson v. Gunnell, 753 F.2d (2nd Cir. 1985), remanding for a
new parole hearing upon finding of examiner and commission's
failure to comply with Parole Board Rule 28 C.F.R. §219(c)'s provisions.

## CONCLUSION

Examiner Joseph Pacholski's and the National Appeals Board's decision to advance petitioner's "Severity Offense Behavior Rating" from Category 7 to Category 8 for petitioner's supposedly being involved in enterprise and predicate racketeering acts of murder, alleged in the prosecution's version of the case in the March 11, 1986, P.I.R., and on which the jury obviated to render no verdicts because the jury had necessarily determined that petitioner and the enterprise did not engage in that conduct (see addendum Exhibit 15), was impermissable. The Parole Commission promulgated rules state that the Parole Commission may not consider specific conduct in evaluating the prisoner's offense severity rating when the jury has acquitted the prisoner for the same conduct or rendered no verdict because in doing so the jury had determined that the prisoner did not engage in that conduct. The Parole Commission must furnish more than a standard reason to justify parole denial that exceeds guidelines, and must rebut allegations that it relied on conspiracy to murder charges for which the petitioner was acquitted or no verdict was rendered.

THEREFORE, petitioner respectfully requests that the District Court orders the Commission Appeals Board to reinstate his "Severity Offense Behavior Rating" to Category 7, Salient Factor 9, and petitioner then has exceeded his within §235(b)(3) guideline limits of 128 months by having already served 240 months. Under these conditions, petitioner respectfully requests that he be immediately released due to the fact that he has served 112 months over his S.R.A. §235(b)(3) within guidelines of 128 months (Salient Factor 9, Severity 7) or 148 months (Salient Factor 9, Severity 8) as of

the August 28, 2003, initial parole hearing.

WHEREFORE, based upon the foregoing facts, points and authorities, the Court is respectfully requested to conduct all necessary hearings and fashion an order granting appropriate relief.

Respectfully submitted,

Dated : *March 10 2004*    *Gennaro Angiulo Pro-Se*
GENNARO ANGIULO
03583-016
Federal Medical Center Devens
Post Office Box 879
Ayer, MA 01432-0879

<u>CERTIFICATION</u>

The undersigned hereby certifies that on this _29_ day of
_MARCH_____, 2004, a true copy of the §2241 Motion and Memo-
randum was served upon the Office of the United States Attorney,
Boston, Massachusetts, 02109.


*Gennaro Angiulo - Pro. Se*
GENNARO ANGIULO
03583-016
Federal Medical Center Devens
Post Office Box 879
Ayer, MA 01432-0879