## AFFIDAVIT OF GENNARO ANGIULO
## IN SUPPORT OF HIS PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. §2241

NOW COMES Petitioner, Gennaro Angiulo, Pro-Se, and in support of his Motion pursuant to 28 U.S.C. §2241, would show this Honorable Court as follows:

### I

Since Petitioner is not versed in Law, this Honorable Court's indulgence is requested in the reading of this Memorandum of Law in support, pursuant to the terms of 28 U.S.C. §2241, under the doctrine of Liberal Construance.

### II

Petitioner Angiulo was sentenced to a Federal term of imprisonment, subsequent to a jury trial, and is presently confined at the Federal Medical Center (F.M.C.) Devens at Ayer, Massachusetts.

Thus, jurisdiction is conferred upon this Honorable Court to review Petitioner's challenge to a violation of his constitutional Due Process rights by the United States Parole Board on August 28, 2003, and September 17, 2003.

### III

Petitioner Angiulo is currently incarcerated at F.M.C. Devens, Ayer, Massachusetts, and has no formal legal training. Petitioner is also pursuing this matter as a Pro Se litigant. Thus, petitioner is a legally disadvantaged party who should be held to a

less stringent standard than a lawyer. Petitioner Angiulo hereby moves this Honorable Court to protect his due process right in this proceeding as mandated by the Supreme Court in Haines v. Kerner, 404 U.S. 519

## SUMMARY OF CLAIMS

Petitioner Angiulo has raised two (2) claims which are all substantial Constitutional Due Process violations that have occurred during the course of his initial parole hearing on August 28, 2003, and September 17, 2003.

Petitioner has shown and established "cause" and has further demonstrated "Actual Prejudice" from the two violations within the structure of his §2241 Motion that is before this Honorable Court.

## THE COURT's HABEAS CORPUS JURISDICTION

The Court has power to grant a writ of habeas corpus under the mandate of 28 U.S.C. §2241(a). Petitioner is in custody under authority of the United States, §2241(c)(1), for violation of an Act of Congress, Id. (c)(2), but his custody is in violation of "The Constitution" and "laws" of the United States, Id. (c)(3).

Petitioner claims that a remedy under the "Great Writ" of habeas corpus is always available to him either under statutory authority, the common law, or under the United States Constitution, whenever he is in custody in violation of the laws of Constitution. Inherent in the application of the great writ is that a remedy under it is never time-barred. Thus, written into the Constitution is a prohibition against the passage of any law respecting the curtailment of habeas corpus: "The privilege of the Writ of Habeas

Petitioner Gennaro Angiulo was indicted, along with his brothers, upon a multi-count R.I.C.O. indictment that alleged as predicate acts gambling businesses, extortionate credit transactions and obstruction of justice-murder conspiracies.[1] The prosecutions arose out of highly publicized 1981 investigation that yielded extensive electronic surveillance. The facts are fully set forth in the 1st Circuit's opinion on direct appeal in United States v. Angiulo, 897 F.2d 1169 (1990) and the Court is respectfully referred thereto.[2] Trial commenced on June 10, 1985, and concluded with guilty verdicts on February 25, 1986. On April 3, 1986, petitioner was sentenced to a total of 45 years in various consecutive terms.[3] Thereafter several post-trial hearings were conducted relating to the jury's forfeiture verdict and how to effectuate it. Judgment of forfeiture was not entered until February 17, 1989.

The convictions were affirmed on appeal in the Angiulo opinion, ante. Thereafter, a motion was filed under Rule 35(b) F.R.Cr.P., seeking modification/reduction of sentence, along with reduction of the PSR or resentencing for Rule 32 violations.

---

1/ The latter were not charged in substantive counts, so there were no jury findings on these.

2/ There were related prosecutions, the facts of which are reported at United States v. Angiulo, 487 F.2d 956 (1st Cir. 1988) and United States v. Cintolo, 818 F.2d 980 (1st Cir. 1987).

3/ Petitioner received 20 years concurrent to each other count on counts 1 and 2, the RICO counts. On the gambling counts, 3-5 and 7, he received 5 years concurrent on each but consecutive to the RICO 20. On the extortionate credit counts, 12-15, petitioner received 15 years concurrent on each but consecutive to all other terms. Finally, on the obstruction of justice related counts, 18 and 19, petitioner received 5 years concurrent but consecutive to all other terms. This was how the aggregate total of 45 years was arrived at.

(These latter proceedings this Court is familiar with personally). This Court conducted hearings in May 1992.

Petitioner Angiulo avers that these issues are debatable among jurists of reason; can be resolved in a different manner, and that resolution would result in petitioner being immediately released on parole due to presently being held illegally under the present existing parole laws of the S.R.A. of October 12, 1984, primarily §235(b)(3) of §235(b), which was effective on October 12, 1984, thus constituting a fundamental miscarriage of justice to such a degree as to violate Petitioner's Constitutional Due Process Rights, pursuant to the Fifth Amendment of the United States Constitution, making this Habeas petition ripe for relief.

## STATUTORY HEARING

On August 28, 2003, after serving 240 months, an initial parole hearing at F.M.C. Devens was held pursuant to 28 C.F.R. §2.14--the purpose of which as required by 18 U.SC. §4208(h) being to consider any significant development, new information or changes in the prisoner's status. There was significant new information submitted relating to the offense behavior and Gennaro Angiulo's role therein. This was the receipt pursuant to a Court order of Gennaro Angiulo's Addendum to the presentence report, which updated the many new developments in the case since 1986. It is significant to note that absolutely no countervailing statements or objections to this addendum were filed by the U.S. Attorney or U.S. Probation Office. This 14-page document clearly establishes that no-one of those charged in the predicate racketeering acts of conspiracies to murder were found guilty of any murders or acts in furtherance of same.

Despite the evidence and documentation submitted, the hearing assessment dated September 17, 2003, relies on Ch. 13, subpart A, number 3, p. 55 of the 1-1-95 Rules and Procedures Manual (28 C.F.R. §2.20 number 4) to <u>ignore</u> the evidence that Gennaro Angiulo cannot be held accountable under the guise of "relevant conduct" where no other co-defendant was convicted of any murders or murder related acts, nor was any findings of specific evidence in the record relating to control and foreseeability made.

Part 4, which is clearly relevant, 28 C.F.R. §2.20, Ch. 13, Subpart A, number 4, <u>supra</u>, (see also same at 7-1-95 Manual, Ch. 1, sec. 4, p. 114) reads:

> The prisoner is to be held accountable for his own actions and actions done in concert with others; however, the prisoner is <u>not</u> to be held accountable for activities committed by associates over which the prisoner has no control and could not reasonably expect to foresee. However, if the prisoner has been <u>convicted</u> of a conspiracy, he must be held accountable for the criminal activities committed by his co-conspirators, provided such activities were committed in furtherance of the conspiracy and subsequent to the date the prisoner joined the conspiracy.

It is under those qualifying standards that Gennaro Angiulo CANNOT in this case be held accountable for any acts other than his own.

As to the Bennett conspiracies to murder, the addendum contains court testimony and trial transcripts in <u>United States v. Connolly</u>, absolving Gennaro Angiulo and the enterprise, see Exhibit 15.

As to Patrizzi, Gennaro Angiulo and co-defendant Samuel Granito were charged with accessory before the fact of murder in the Patrizzi matter. The 1st Circuit <u>Angiulo</u> opinion held:

> "applying this standard to the facts, we conclude that the evidence was <u>Not</u> sufficient to find beyond a reasonable doubt that Simone was a principal in the murder of Patrizzi. It therefore follows that there was insufficient evidence to support a finding that Samuel Granito was an accessory before the fact."

This decision, plus the fact the jury at trial returned <u>no</u> verdict of murder under the specific instruction relating to murder given by Judge Nelson (see Addendum - Exhibit 15), absolved Gennaro Angiulo and Granito completely of the accessory before the fact of murder. The enterprise itself had no convictions of any predicate acts of murder or conspiracy to murder. Therefore, the only acts that can be attributed to Gennaro Angiulo and the enterprise are gambling, conspiracy to make, collect and collecting extortionate extension of credit, and obstruction of justice, with no violence to anyone.

-7-

United States v. Patriarca, (Cr # 89-289-MLW; December 1, 1995, District of Massachusetts) is a controlling case, as it is from the petitioner Gennaro Angiulo's district and involves the Patriarca Family. In this opinion, Judge Wolf discussed when a defendant could be liable for predicate acts of those in the enterprise. After an extensive round of hearings, a detailed 90-page opinion made specific findings relevant to our case here. The rules and practices of the Patriarca Family were analyzed and findings made as to the scope of criminal activity that was reasonable foreseeable to Patriarca in the years 1966 to 1986. It was observed that the strict rule was that the only murders authorized would be those personally approved by the "Boss" Raymond Patriarca himself. It was held that killing "violated the Patriarca Family rule prohibiting members from committing murder without the authorization of the Boss. The evidence indicates that from 1966 on, the violence was unprecedented." So how can the examiner assume Gennaro Angiulo knew of alleged murders? Particularly where Gennaro Angiulo was not Boss and thus had no authority to authorize murders?! It can just as easily be inferred that Gennaro Angiulo did not know of various murders, only Raymond Patriarca Sr. SO it is bootstrapping speculation to hold Gennaro Angiulo accountable for murder allegations.

The title as "Boss" of the Family is pertinent to sentencing dispositive of the knowledge issue. "It is the scope ot the participant's agreement--rather than his place in the hierarchy that is crucial for sentencing purposes." (opinion at 19). Thus, it cannot be presumed that Gennaro Angiulo knew about the alleged conspiracies to murder.

The examiner's conclusion that Gennaro Angiulo and the enterprise were involved in murders is speculation woefully short of specific evidence. This type of rationale was also squarely rejected in United States v. Rosenfeld, (March 7, 1996; 2nd Circuit). See also Farese v. Luther, 953 F.2d (3rd Cir. 1992), where the Court found there "was no evidence form which the Commission could have found the elements of control and foreseeability."

> "Although the Fund Administrator (and District Court) determined that Rosenfeld 'must have known' about the improper tax trading, they did not support this determination with any finding of fact that demonstrates how Rosenfeld must have known of these activities."

On May 28, 2002, F.B.I. Agent John Connolly, on trial for multiple acts of RICO and RICO conspiracy, 18 U.S.C. §1962(c) and (d), was found guilty by a jury of his peers. During the trial, evidence surfaced that related to United States v. Angiulo, 83-235 N., the indictment that petitioner was tried for and found guilty on February 28, 1986, and sentenced to 45 years imprisonment on April 3, 1986. Due to the revelations in United States v. Connolly by F.B.I. agents and F.B.I. informants, petitioner, after 20 years of imprisonment, realized that he and the gambling venture that he had been found guilty of, had been absolved by testimony in United States v. Connolly of conspiracies to murder. It is of importance at this time to state that in United States v. Angiulo, petitioner's trial. no conspiracies to murder verdicts had been found by the jury relevant to petitioner or the gambling venture headed by petitioner.

On April 28, 2003, petitioner, in letter form, which was acknowledged by Steven Brunson, Parole Board Case Analyst on July 1, 2003, submitted a request for a parole hearing, and an

addendum to be attached to his "Presentence Investigation Report" pursuant to a court order. This addendum compiled 20 years of court decisions and trial transcripts plus F.B.I. and informant testimony absolving petitioner and the gambling venture of all allegations of conspiracies to murder which, even though he had never been found guilty of, had been included in petitioner's P.I.R. report. It is also important to bring to the Court's attention that these so-called conspiracies to murder were all charged as "predicate racketeering acts" and not substantive counts of racketeering. See attached letter and addendum to P.I.R. (Exhibit 15).

On August 28, 2003, an initial parole hearing was held for petitioner Gennaro Angiulo, register number 03583-106, at the Federal Medical Center Devens, Post Office Box 879, Ayer, Massachusetts, by Joseph Pacholski, examiner. Mr. Pacholski questioned petitioner as to whether he was a member of "La Cosa Nostra." Petitioner answered truthfully "No." Petitioner has been a gambler since his early years, starting upon graduating was from high school in 1936, when gambling was not a federal offense, and continuing during his 5 years in the United States Navy during World War II and thereafter.

During his youthful years, petitioner became very personally friendly with Mr. Raymond Patriarca and his immediate family in Worcester, Massachusetts. This personal friendly relationship continued until Raymond Patriarca's death in 1984.

Due to petitioner being very close to Mr. Patriarca over the course of years, most people and the government (F.B.I.) had seemed to assume and come to the conclusion that petitioner was a member of the so-called "La Cosa Nostra." It was to petitioner

's advantage as a gambler in the gambling business neither to confirm or deny what most people and the government (F.B.I.) assumed. In reality, petitioner was the boss of the Angiulo gambling venture, which he promoted upon his honorable discharge from the U.S. Navy in 1946 and continued until indicted and tried in 1986.

The Angiulo gambling venture nor petitioner were not members of "La Cosa Nostra" at any time, even though most people and the government (F.B.I.) believed petitioner and his gambling venture were. Petitioner's not denying it at any time was most assuredly to his advantage of the course of years, as his success as a gambler showed.

After a period of further questioning by examiner Joseph Pacholski, he proceeded to ask about the alleged predicate racketerring acts of conspiracy to murder contained in the indictment about which he had noticed and read <u>only</u> in the prosecutor's version of petitioner's P.I.R. Petitioner explained to examiner Pacholski that there were no jury verdicts rendered relative to the predicate racketeering acts of conspiracy to murder and that petitioner had addressed them all, in an addendum submitted to the Parole Board Chairman Edward F. Reilly on April 28, 2003, and asked Pacholski if he had reviewed it. Receiving no answer, petitioner presented the examiner with a full copy of the letter written and addendum submitted pursuant to court order, of April 3, 1986, to the Parole Board. He glanced at it and asked if it was petitioner's only copy. Petitioner answered "no" and stated that examiner Pacholski could keep it as to refer to the answer to his question about the alleged predicate racketeering acts of murder that were referred to <u>only</u> in the prosecution's version of peti-

- 11 -

tioner's original P.I.R. of March 11, 1986.

Examiner Pacholski then asked petitioner to leave the examining room and wait outside. Upon leaving, petitioner noticed the time and approximately five minutes later, Pacholski recalled petitioner into the examining room. Pacholski stated in no uncertain terms that petitioner's "Salient Factor Score" was 9 and that due to petitioner being a member in "La Cosa Nostra" and the enterprise being involved in extreme cruel and brutal murders, he was upgrading petitioner's "Severity of Offense Behavior" from Category 7 to Category 8, and that petitioner's guidelines for decision making customary total time to be served before release was 100+ months.

Examiner Joseph Pacholski, in reviewing the P.I.R. submitted on March 11, 1986, had also read the U.S. Probation Officer's Parole Guideline Worksheet (Form F.5), submitted with the P.I.R. on March 12, 1986, by Anne E. Toye, Probation Officer, which reiterated his exact words relative to the alleged predicate acts of murder, and who was chastized by Judge Nelson at the sentencing hearing for copying the prosecution's version of the case (see addendum - Exhibit 15).

Examiner Pacholski then stated for the record; "I find that you serve the maximum amount of your sentence, 30 years, 360 months." Examiner Pacholski raised the upper limits of petitioner's 100+ months guideline to 360 months; 260 months more than called for.

During the period relevant to this case, a study commissioned by the Federal Judicial Center noted that the principal problem inherent in the use of the presentence report is its potential

for introducing inaccurate or misleading information into the court and parole decisions. Stephen A. Fennell and William N. Hall "Due Process at Sentencing and Parole Hearings," an empirical and legal analysis of the disclosure of pre-sentence reports in Federal Courts, 93 Harv. L. Rev. 1615, 1628 (1980).

Although presentence reports are an extremely useful sentencing and parole hearing tool, by their nature, the information they contain is "generally hearsay even remote hearsay at the second and third remove." United States v. Frushon, 10 F.3d 663, 666 (9th Cir. 1993)(quoting United States v. Fine, 935 F.2d 596, 603 (9th Cir. 1992). As a result, presentence reports are generally inadmissable at trial to prove any of the hearsay reports they contain. See United States v. Matta Ballasteros, 71 F.3d 754, 767 (9th Cir. 1995), as amended page 98 F.3d 1100 (9th Cir. 1996).

Because they are not subject to evidentiary standards, presentence reports also contain factual errors.

In this case, by using the Presentence report submitted by the prosecution in 1986, regarding petitioner, which contains hearsay, inaccurate, misleading and inadmissable evidence, (see Court ordered addendum submitted to Parole Board on April 28, 2003 and September 30, 2003 - Exhibit 15) in order to deny petitioner's parole, resulted in petitioner being denied the parole liberty interest created by the S.R.A. Pub. L. 98-473, Ch. II, 98 Stat. 2027, 2031-2033, October 12, 1984, §235(b)(3), due petitioner, thereby denying petitioner's "Due Process Rights."

In order to do so, Examiner Pacholski and the Parole Commission used a pre-existing parole law, 18 U.S.C. §4206, which permitted departures from petitioner's parole guideline range for "good

- 13 -

cause." On August 28, 2003, and September 17, 2003, 18 U.S.C. §4206 did not exist, as the S.R.A. of October 12, 1984, had abolished the Parole Board and all parole statutes as of October 31, 1992 and the terms for establsihing petitioner's parole release date were set forth in §235(b)(3) of the S.R.A. which mandated that petitioner be released within his guideline range after serving 100 to 148 months. Therefore, petitioner should have been granted immediate parole at the hearing after having served 240 months; 92 months over his within §235(b)(3) guideline range of 100 to 148 months. By their decision to continue petitioner to expiration of 360 months, the examiner and the United States Parole Commission violated petitioner's Constitutional Due Process Rights by not apprising petitioner before and at the initial hearing on August 28, 2003, of any evidence or facts used to deny petitioner parole, which constituted a direct violation of Parole Board Rule 28 C.F.R. §2.53, by failing to provide a hearing complying with Parole Board Rule 28 C.F.R. §219(c).

Also, the use of Parole Statute 18 U.S.C. §4206 (which was repealed and abolished by the S.R.A. of October 12, 1984, as of October 31, 1992) and had been reinstated by Pub. Law 100-182 S.A. of December 7, 1987, 101 Stat. 1266, and was then used on August 28, 2003, by the examiner and on September 13, 2003, by the Parole Commission, to deny petitioner parole, violates the Ex Post Facto laws regarding petitioner's case. The Ex Post Facto clause is violated if the amendments are "both retrospective and more onerous than the law in effect on the date of petitioner's sentencing in 1986." The amendments are retrospective, as they were made after petitioner's sentence in 1986. They are clearly

more onerous as they are being applied by using a non-existent repealed statute (reinstated §4206) to deny petitioner parole until at least 2010-2013, even though a release date after serving 100 to 148 months was required by §235(b)(3) of 1984, of petitioner.

Petitioner primarily bases his claim to Habeas relief on the Ex Post Facto clause of the United States Constitution, Article 1, section 9 ("No... Ex Post Facto Law shall be passed."). This clause forbids Congress from enacting any law which imposes additional punishment to that then prescribed, "for a criminal act when a defendant is found guilty or at the time of sentencing." Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed. 2d 17 (1981). Emphasis added. Stogher v. California, No.:01-1757(S.Ct. 6/03)

Petitioner states that the original §235(b)(3) took effect upon enactment in 1984, and the law in effect in 1986, at the time of petitioner's sentencing, was the original §235(b)(3) requiring parole dates within the guideline range and that petitioner was clearly disadvantaged when the Parole Commission on September 17, 2003, relied on the 1987 amendment to §235(b)(3) by the Sentencing act of 1987, Pub. L. 100-182, Ch. II, 101 Stat. 1266 (1987), to postpone his release over fourteen years beyond the guideline range of 148 months, because the original provision -- requiring the commission to stay within the guideline range -- was in effect when petitioner was found guilty and sentenced to 45 years imprisonment in 1986 and this the retroactive application of the 1987 amendment to §235(b)(3) to lengthen his punishment is unconstitutional under the Ex Post Facto clause.

This decision to petitioner after having served 240 months, with good conduct, being 85 years of age, and in poor health, is

tantamount to an illegal death sentence.

Signed under the pains and penalties of perjury on this *10th* day of *March*, 2004.

*/s/ Gennaro Angiulo/*
Gennaro Angiulo
03583-016
F.M.C. Devens
P.O. Box 879
Ayer, MA 01432-0879

The above individual came before me on this *10th* day of *March*, 2004, subscribed and sworn to the herein.

_____
Notary Public

My commission expires: _____

ANGELA M. VALLEE
Notary Public
Commonwealth of Massachusetts
My Commission Expires
August 9, 2007

-16-