IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Gennaro Angiulo, | § | |
| (Petitioner) | § | |
| | § | |
| v. | § | Case No. 04-40041-FDS |
| | § | |
| David L. Winn, Warden, | § | |
| United States Parole Commission, | § | |
| (Respondents) | § | |

MOTION TO FURTHER AMEND PETITION  FOR WRIT
OF HABES CORPUS PURSUANT TO F.R.C.P. 15 (a)

NOW COMES, Gennaro Angiulo (Hereinafter: "Petitioner/Angiulo") who is presently before the Court standing pro se, respectfully moving to further amend his habeas corpus pleading under Rule 15. In support herein, petitioner avows as follows:

1.  Petitioner repeats and realleges Paragraphs 1 through 25 of his pro se "Motion To Amend Petition For Writ Of Habeas Corpus Pursuant To F.R.C.P. 15 (a)" filed with this court on or about June 29, 2004.

2.  Petitioner avers that a responsive pleading by the Respondents has not been served as to petitioner's initial § 2241 pleading, or

1.

his first motion to amend.

3. Respondent's David L. Winn and the United States Parole Commission will not be prejudiced in any cognizable way by the allowance of this motion. Respondents have asked for and received 120 days from on or about March 29, 2004 to respond.

E. **THE SUPREME COURT'S RECENT HOLDINGS IN BLAKELY V. WASHINGTON ANNOUNCE A MANDATE BASED UPON BED-ROCK PRINCIPLES IN CONSTITUTIONAL LAW THAT INVALIDATES THE PAROLE ELIGIBILITY RULES AND REGULATIONS OF THE UNITED STATES PAROLE COMMISSION**

26. A truly awakening metamorphosis occurred on June 24, 2004 when the Supreme Court of the United States decided the case of **Blakely v. Washington**, No. 02-1632 (2004) which was persuasively foreshadowed in the District of Massachusetts on June 18, 2004 in the consolidated matter of **United States v. Richard Green**, Cr. Action No. 02-10054-WGY. (Young, C.J.). There, the "unsound policy" of the system of "determinate sentencing practices", in theory, is equally applicable to the current regulatory scheme the legislative body has empowered the angency United States Parole Commission with. Petitioner Angiulo proffers as follows.

27. It may be that the regime produced by the legislature, see: 28 CFR §2.20 and the United States Parole Commissions Rules and Procedures Manual dated January 1, 1995 is indeed now invalid because it authorizes "... depriving a man of .... his liberty"

absent submission of accusations to "the unanimous sufferage of twelve of his equals and neighbors", and in its place, permits a ".... lone employee of the [government]" to arbitrarily extend a prisoners length of incarceration on wholly unproven "facts".

28. On August 28, 2003, Angiulo was given a parole hearing. The record establishes that Angiulo was eligible for release. Parole Board Examiner, Mr. Joseph Pacholski, (hereinafter: "Examiner") sitting alone reached "factual" determinations absent proof and requisite authority to do so that lengthened petitioner's term of confinement by more than a decade. Accord: first Motion To Amend, Exhibit-1. The Examiner's spurious factual findings were affirmed on February 27, 2004 by the U.S. Parole Commissions National Appeals Board. Exhibit-2, supra. Absent these baseless, and indeed now illegal determinations, Angiulo would likely be enjoying his humble freedom on parole. See: Exhibits 7 & 8, supra.

29. The method employed by the Parole Commission (agency) to achieve its goal in lengthening petitioner's captivity is tantamount to the method rejected by the Blakely court. There, the U.S. Sentencing Commission (agency) was ingeniously given powers that effectively "marginalize[d] the American jury." Green, supra; Blakely, supra. Discussing the Sixth Amendments unfettered force. Here, the U.S. Parole Commission has long held and practiced "powers" that "marginalize" the Sixth Amendment and Due Process Clause of the United States Constitution. On June 24, 2004 those powers were effectively invalidated.

30. Like the offender in <u>Blakely</u>, petitioner's rights have been marginalized based on powers that the legislature (Congress) promulgated to the (agency) Parole Commission that it did not have in the first instance. As Judge Young's <u>ex</u>plicit holding in <u>Green</u> avers:

> "Congress lacks the power to enact the substance of the Guidelines (SRA) into law, and therefore lacks the power to delegate the enactment of the Guidelines to a governmental agency ....." <u>supra</u>.

<u>Im</u>plicitly, what Judge Young in <u>Green</u>, and the Supreme Court in <u>Blakely</u> suggest with convincing dicta is that Congress, empowered by the Framer's through the Constitution, may not, indeed cannot, embolden through legislation any agency with powers that when employed anul bed-rock principles of the federal constitution; the very authority that empowers the Congress itself?

31. The current parole eligibility system is such a regime. As established by petitioner, the hearing examiner, and later the national appeals board considered facts outside the scope of Angiulo's jury verdict to enhance his <u>Offense Behavior Category</u> **from** (7) **to** (8) which tailor-made their decision to keep petitioner within an open-ended eligibility range. Without such an enhancement, petitioner has overserved his otherwise judgment exceeding by more than a decade. The immediate question for this court is whether the actions of the Commission in rendering liberty decisions beyond that otherwise applicable, and based on unfounded, unproven, subjective "facts" is just as unconstitutional in a parole hearing context as they were

in Mr. Blakely's or Mr. Green's sentencing hearings context. Angiulo contends, and clearly establishes, that Blakely and its progeny invalidates the current parole eligibility regime and forthwith release is now warranted.

32. Directing the Court's attention to Exhibits 1 and 2, supra, it is beyond debate that the agency parole commission (empowered by an act of Congress) used authority it did not have to make penal decisions to the direct and proximate harm of petitioner, including, but not limited to:

a. -- Petitioner is "a more serious risk than indicated by your Salient Factor Score in that you held a key .... position in an organized crime family."

b. -- "You were involved in conspiracies that resulted in four (4) murders that were carried out in furtherance of an organized criminal enterprise ...."

c. -- ".... you were convicted of obstruction of justice that involved a Grand Jury witness being threatened."

Put another way, how much power over an individual does proof of given facts give the agency? As Judge Young explicitly opined in Green, "If the [agency] wants proof of this fact to give it more power over an individual's liberty, it must submit that fact to a jury and prove it beyond a reasonable doubt." supra. The "Department" (agency) Judge Young refers to is the Department of Justice ---- the very same Agency under attack sub judice.

33. Indeed, the current regime used by respondent agency to deny

5.

petitioner his entitled release is even more primitively unconstitutional than that outlawed by the Supreme Court in <u>Blakely</u>. It begs the question:

---- If "sentencing factors" cannot any longer hide within the safe harbor of the now outlawed Sentencing Commission Guidelines Manual, then how, and under what constitutional provision (Sixth Amend.?) may "aggravating case factors" that were, and remain, unproven, unreliable and patent hearsay pass constitutional muster and remain approved authority within the January 1, 1995 United States Parole Commission <u>Rules and Procedures Manual</u>?

The regime, now deemed illegal, is the same and the results equally troubling: the offender, here Angiulo, ends up serving in excess of a decade beyond his otherwise Cayegory-7 Offense Behavior eligibility because the agency was unconstitutionally empowered with authority that never existed.

34. If Angiulo were before the Article III court today, Article I trumps so says the majority in <u>Blakely</u>, (and coincidently Judge Young in Boston too). Therefore, if an Article III federal court may not consider sentencing "factors" in the now defunct Sentencing Commission regime that have no **verdict relationship**, how may the agency parole commission consider "factors" that possess absolutely no **verdict relationship** ? Simply stated, Angiulo was tried and convicted for,

      a. Gambling

      b. Obstruction of Justice, and

      c. Extorionate extension of credit,

and so the verdict reads. Under <u>Blakely</u> and its progeny, "relevant conduct" is now just as unconstitutional under the parole eligibility guidelines as it is under the sentencing guidelines.[1]

35. The greatest punishment permitted legally as to the petitioner's jury verdict is that in which the parole guidelines permit at Offense Behavior Category-7. <u>No</u> jury found petitioner "guilty" of being a member of "La Cosa Nostra", <u>no</u> jury found petitioner "guilty" of conspiracy to commit (1) murder, let alone "four" (4) murders, and neither did Angiulo's jury find him "guilty" of the "offense behavior" used by the examiner to enhance his applicable Category from 7 to Category-8. Therefore, petitioner was "entitled" to a Category-7 parole eligibility date " .... <u>without</u> any additional findings" being made to enhance him to Category-8 <u>Blakely</u>, <u>supra</u>.[2]

36. Placed against the backdrop of Justice Scalia's burglar analogon in <u>Blakely</u>: Angiulo possesses a "legal right" to be considered for parole eligibility pursuant to **Category-7** offense behavior as per his jury verdict. Moreover, based on that right, he is "entitled to no more ....." than the term of service established under that Category.

---

[1] One Agency's "sentencing factors" is another angency's "aggravating case factors". In either context, the Judge's or Examiner's power goes "too far" and infringes on the province of the jury. <u>Id</u>. <u>Blakely</u>. Petitioner's jury verdict places him in Offense Behavior Category-7.

7.

If Congress "cannot Impose a system like the Guidelines (sentencing factors) by statute, it cannot delegate the power to create such a system." Id. supra. How then, under the same Article I, authority can they impose a system such as that in current operation and then "delegate the power" to an agency that denies certain rights of Due Process to its citizens? (aggravating case factors). Again, delegating powers to agency's that circumvent a citizens entitlements under the Fifthe and Sixth Amendments beyond those powers Article I, prescribes to the Congress.

> "Still, it should be noted that giving an agency [such as the Parole Commission] enormous control over policy in an area as sensitive as the criminal law raises accountability concerns that should be considered in determining whether the federal criminal process as a whole complies with the Constitution." Green, supra at 116 (Young C.J.)

37. Clearly, the United States Parole Commission's decision to refuse to utilize the lesser of the two guideline ranges as directed to do so, (See Exhibit-3 @ page 189, f.n. 430)---(i.e., the parole guideline: 100+ months and not the new guideline range of: 87 months) vitiates Petitioner Angiulo's expectation of the full force of §235(b), inures, while correspondingly eroding the very foundational principles of the Fifth Amendments Due Process Clause. The Parole Commission, pursuant to these regulations is obligated to now release Angiulo on parole. Accordingly, a writ of mandamus may issue to ensure that Petitioner's rights are guaranteed. See: Larson v. Domestic & foreign Commerce Corp., 337 U.S. 682, 687-88 (1949).

---

2. It would be illogical to believe that the majority in Blakely, and Judge Young

WHEREFORE, Gennaro Angiulo, Petitioner herein hereby moves this Honorable Court for leave to amend further his pleading now before the Court. Respondents will not be prejudiced in any form as responsive pleadings have yet to be served on Petitioner.

---

2.Cont. in Green analogized their holdings using "parole board" concepts if they were not, (given the opportunity) poised to invalidate such "aggravating case factors" regimes in accordance with the recent mandate--- "because the very reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust government to mark out the role of the jury." Id.

Respectfully submitted on this 21 day of July, 2004.

Gennaro Angiulo
Petitioner / Pro Se

*/s/ Gennaro Angiulo Pro Se*

## CERTIFICATE OF SERVICE

I, Gennaro Angiulo, petitioner herein hereby states that I have cause service to be made upon the following parties by sending true and complete copies of the foregoing First Class U.S. Certified Mail to: (or hand delivered)

1. Office of the United States Attorney
   District of Massachusetts
   U.S. District Courthouse
   595 Main Street, Suite 502
   Worcester, Massachusetts  01608

2. David L. Winn, Warden
   P.O. Box 880
   FMC Devens
   Ayer, Massachusetts  01432

3. United States Parole Commission
   U.S. Department of Justice
   5550 Friendship Boulevard
   Chevy Chase, Maryland  20815-7201

*/s/ Gennaro Angiulo*
Gennaro Angiulo, #03583-016
FMC Devens/J-A
P.O. Box 879
Ayer, MA  01432

This __21__ Day Of July, 2004: