FILED
UNITED STATES DISTRICT COURT OFFICE
DISTRICT OF MASSACHUSETTS
2004 JUL 26  A 9: 41

GENNARO J. ANGIULO          )
                            )          DISTRICT COURT
          v.                )          DISTRICT OF MASS.
                            )  Civil Action No. 04-40041-FDS
                            )
DAVID L. WINN, et al.       )

## GOVERNMENT'S OPPOSITION TO PETITIONER ANGIULO'S FILING FOR A WRIT OF HABEAS CORPUS UNDER TITLE 28, UNITED STATES CODE, SECTION 2241

By this memorandum, the United States formally opposes Petitioner Gennaro J. Angiulo's ("Angiulo") third request for habeas relief in as many years.  Unlike his previous meritless claims, which targeted the underlying convictions, Angiulo's present petition focuses exclusively on the Parole Commission's (Commission) decision to deny him an early release from his sentence.  Petitioner's arguments, both individually and collectively, fail to state a colorable claim for relief under Title 28, United States Code, Section 2241 and therefore his petition should be denied.

**Procedural History**

Angiulo is serving a 45-year sentence for RICO, RICO conspiracy, illegal gambling, conspiracy to make extortionate extensions of credit, collection of extortionate extensions of credit, obstruction of justice, and conspiracy to obstruct justice, imposed by the United States District Court for the District of Massachusetts on April 3, 1986.  (Exhibit 1, sentence

1

monitoring computation data.)  Petitioner's presentence
investigation report justifiably describes him as a member and
the Underboss (i.e., second-in-command) of the Patriarca Family
of La Cosa Nostra ("LCN") in Boston.  (Exhibit 2, presentence
investigation report, pp. 1-2.)  The presentence investigation
report states that the evidence at trial proved that petitioner
and others conspired to murder Walter Bennett, William Bennett,
Joseph Barboza, Angelo Patrizzi, and Walter LaFreniere.  (Exhibit
2, p. 2.)  In addition, the First Circuit Court of Appeals held,
in the direct appeal of petitioner's conviction, that the jury
"must necessarily have accepted the government's interpretation
of the pertinent tape-recorded conversations involving Simone,
Granito, Gennaro J. Angiulo, and Zannino."  United States v.
Angiulo, 897 F.2d 1169, 1199 (1st Cir. 1990).  The "government's
interpretation" was that the tape recorded conversations recorded
a conspiracy among petitioner, Granito, and others to murder
Patrizzi.  897 F.2d at 1199-1200.

The structure of petitioner's aggregate sentence made him
eligible to be considered for parole as of September 18, 1993;
however, he did not apply for parole until June 3, 2003.
(Exhibit 1, p. 2 and Exhibit 3, application for parole.)  The
United States Parole Commission conducted an initial parole
hearing for petitioner on August 23, 2003.  (Exhibit 4, hearing
summary.)  At that time, the hearing examiner computed
petitioner's salient factor score as 9 points (of a possible

10).[1] The examiner rated his offense severity as Category Eight, finding that his offense had involved murder.[2] 28 C.F.R. §2.20, Chapter Two, Subchapter A, paragraph 201 (murder rated Category Eight); Chapter One, paragraph 101 (conspiracy rated same as underlying offense). This combination of offense severity rating and salient factor score yielded a guideline range of 100+ months to be served prior to parole release.[3] In addition, the examiner assessed guidelines of 0-6 months for 3 minor institutional infractions. The addition of this range did not change petitioner's aggregate guideline range, however.[4] The examiner

---

[1] The salient factor score is a statistical device to evaluate the risk posed by a prisoner if released on parole; it looks at the number of prior convictions and commitments, and other factors, to arrive at a score between zero (highest risk) and ten (lowest risk). See 28 C.F.R. §2.20, salient factor scoring manual. Angiulo's relatively low salient factor score reflects his status within the LCN. Since this criminal organization protects high-ranking members by conducting criminal activity through a structured enterprise, it affords them a level of insulation which frequently results in understated personal criminal histories.

[2] The offense severity rating is a rating of the severity of the offense(s) committed (not limited to the offense(s) of conviction) on a scale from Category One (least severe) to Category Eight (most severe). The parole guidelines are derived from a grid which plots the SFS along one axis and the Offense Severity Category along the other, yielding ranges of months at the intersections. See 28 C.F.R. §2.20, guidelines table.

[3] The guideline ranges for Category Eight offenses are open-ended ranges (e.g., 100+ months), unlike the ranges for offenses of lesser severity, which have both a lower and an upper limit (e.g., 100-148 months). See 28 C.F.R. §2.20, guidelines table.

[4] The addition of zero months to 100 yielded 100; the addition of 6 to the open-end of the range did not change its open-endedness. The guideline range remained 100+ months.

3

recommended that petitioner be required to serve to the expiration of his sentence, which will require service of approximately 320 months.  (Exhibit 4, p. 3.)

The Commission adopted this recommendation and informed petitioner of its decision by notice of action dated September 17, 2003.  (Exhibit 5, notice of action.)  This represented a decision within petitioner's guideline range of 100+ months.  The Commission's regulations require it to identify "pertinent case factors" warranting a decision more than 48 months above the guideline minimum (i.e., requiring service of more than 148 months in petitioner's case) in Category Eight cases.  The Commission stated that:

> After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating case factors: You are a more serious risk than indicated by your Salient Factor Score in that you held a key managerial position in an organized crime family.  You were involved in conspiracies that resulted in four murders that were carried out in furtherance of an organized criminal enterprise between April of 1967 and March of 1981.  In addition, you were convicted of obstruction of justice that involved a Grand Jury witness being threatened.

(Exhibit 5, notice of action.)

The National Appeals Board affirmed this decision on administrative appeal.  (Exhibit 6, notice of action on appeal.)

## Claims Presented

1.   Petitioner claims that the December 7, 1987, amendment to §235(b)(3) of the Sentencing Reform Act violates the ex post

4

facto clause as to him, because prior to that amendment he was
(allegedly) entitled to a release date within his parole
guidelines, and the amendment deprived him of that right
retroactively.

2.   Petitioner claims that 18 U.S.C. §4206(c) was repealed
in 1992, and therefore the Commission may not rely on §4206(c) to
render a decision "outside" his guideline range.

3.   Petitioner claims that the Commission violated its
regulation at 28 C.F.R. §2.19(c) because it did not identify to
him what information it relied upon in concluding that he was a
member of La Cosa Nostra.  He alleges that he was responsible
solely for his own gambling operations, and that he "let people
believe" that he was associated with the LCN, but in fact was
not.

4.   Finally, petitioner claims that the Commission erred in
rating his offense severity Category Eight.  He argues that
because neither he nor any codefendant was convicted of murder,
he cannot be held responsible for murder.

## Argument

1.   Petitioner's claim regarding the Sentencing Reform Act
and its amendments is without merit.

This claim requires historical background to put it into
context.  The Sentencing Reform Act of 1984, at §218(a)(5), 98
Stat. 2027, abolished the Parole Commission.  However, Section
235(b)(1)(A), 98 Stat. 2032, kept the Parole Commission in

5

existence for five years after the effective date of the Act
(November 1, 1987), until November 1, 1992, to process the cases
of prisoners convicted of crimes committed before the effective
date of the Act, who would still be incarcerated after that date.
See Romano v. Luther, 816 F.2d 832 (2d Cir. 1987); Lightsey v.
Kastner, 846 F.2d 329 (5th Cir. 1988).  The five-year period has
been extended on three subsequent occasions: first to ten years,
then to fifteen, and most recently to eighteen years.  See
Judicial Improvements Act of 1990, Pub. L. 101-650, 104 Stat.
5089, Sec. 316 (Dec. 1, 1990)(extending to 10 years); Parole
Commission Phaseout Act of 1996, Pub. L. 104-232, 110 Stat. 3055,
Sec. 2(a)(Oct. 2, 1996)(extending to 15 years); 21st Century
Department of Justice Appropriations Act, Pub. L. 107-273, 116
Stat. 1758, Sec. 11017 (Nov. 2, 2002)(extending to 18 years).

        Section 235(b)(3) of the Sentencing Reform Act, as
originally enacted, required the Parole Commission to set release
dates within the applicable parole guideline ranges for those
"old law" prisoners who would be within its jurisdiction on the
day before the expiration of the five-year period in 1992.  On
December 7, 1987, Congress amended the language of §235(b)(3) to
require that the Commission make parole release decisions
"pursuant to Section 4206 of title 18" for all such offenders;
§235(b)(3) no longer requires the Commission to make decisions
within the parole guidelines for such prisoners.  Sentencing Act
of 1987, §2(b)(2) of Pub. L. 100-182.  Section 235(b)(3) with the

1987 amendment provided as follows:

> The United States Parole Commission shall set a release date, for an individual before the expiration of five years after the effective date of this Act, pursuant to Section 4206 of Title 18, United States Code. A release set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

Petitioner's argument is that he is entitled to the benefit of the original language of §235(b)(3), i.e., to a decision within his parole guidelines, because he was sentenced prior to the 1987 amendment. This argument fails for several reasons.

First, the relevant date for purposes of ex post facto analysis is not the date of sentencing, but the date on which the offense was committed. E.g., Lightsey v. Kastner, 846 F.2d at 333 (the relevant law for purposes of ex post facto analysis-the "law annexed to the crime"-is the law in effect on the date the crime was committed). All of petitioner's offenses were committed well before the Sentencing Reform Act was even passed: he was indicted on September 19, 1983 (Exhibit 2, p. 1) for offenses which occurred before that date, and the Sentencing Reform Act was passed in 1984. Therefore, the original version of §235(b)(3) on which he seeks to rely is not the "law annexed to his crime." Rather, the law annexed to his crime is 18 U.S.C. §4201 et seq (the Parole Commission and Reorganization Act of 1976), the law in effect at the time of his offense. Therefore, were the Commission to have relied upon 18 U.S.C. §4206(c) to

7

render a decision outside his parole guideline range, this action
would not violate the ex post facto clause.

However, the Commission did not rely on §4206(c) in
petitioner's case.  This is the second flaw in Angiulo's
argument.  As explained above, the decision that petitioner serve
approximately 320 months, to the expiration of his sentence, is a
decision **within**, not above, his open-ended guideline range of
100+ months.[5]  (Emphasis added)  See Madonna v. U.S. Parole
Commission, 900 F.2d 24, 26 (3d Cir. 1990)(because Category Eight
guideline ranges have no upper limit, a decision above the range
is not possible; therefore, requirement of §4206(c) that
Commission show "good cause" for exceeding guideline range is not
implicated in Category Eight cases; decision more than 48 months
above the guideline minimum is not a decision above the range);
Kele v. U.S. Parole Commission, 775 F.2d 243 (8th Cir.
1985)(same); Adams v. Keller, 736 F.2d 320, 323-24 (6th Cir.
1984).  Accordingly, even assuming arguendo that petitioner were
entitled under §235(b)(3) to a decision within his guideline
range (which he is not), he has in fact received a decision
within his guideline range.  Therefore, he cannot demonstrate

_____

[5]Petitioner alleges that his guideline range is 100-148
months, but it is not.  It is 100+ months.  28 C.F.R. §2.20;
Exhibit 5.  The Madonna case explicitly rejected the argument
that the regulatory requirement that "pertinent case factors" be
set forth when the decision in a Category Eight case exceeds the
guideline minimum by more than 48 months constitutes an upper
limit to the guidelines 48 months above the minimum.  900 F.2d at
26.

that the Commission's failure to apply §235(b)(3) in his case has
increased his punishment retroactively.[6] He has, therefore,
failed to make a requisite showing for an ex post facto claim:
that the retroactive application of law increased the punishment
for his crime. *See* <u>California Dept of Corrections v. Morales</u>,
514 U.S. 499 (1995). Petitioner's ex post facto claim must be
rejected.

2. Petitioner's claim that the Commission may not make
parole decisions under §4206 because that statute has been
repealed is also meritless. The Sentencing Reform Act repealed
the Parole Commission and Reorganization Act (Chapter 311 of
Title 18), but also saved that statute for five years,
subsequently amended to 18 years. See 18 U.S.C.A. §3551,
Historical and Statutory Notes, setting out text of §235(b). In
addition, the parole statute, including §4206, was saved as to
individuals sentenced under it until the expiration of their
sentences. §235(b)(4).[7] Therefore, petitioner's claim that

---

[6]In other words, petitioner did receive a decision within
his guideline range, so his claim that he was deprived of his
right under §235(b)(3) to a decision within his guidelines fails
to state a claim.

[7]Section 235(b)(4) provides that:

Notwithstanding the other provisions of this subsection, all
laws in effect on the day before the effective date of this Act
pertaining to an individual who is-

(A) released pursuant to a provision listed in paragraph
(1); and

9

§4206(c) was repealed in 1992 is erroneous and must be dismissed.

3.   Petitioner's claim that the Commission violated its regulation by not identifying what information it relied upon in finding him to have been a member of LCN must also be dismissed. Section 2.19(c) of the Commission's regulations provides in pertinent part that:

> The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprized of the information and afforded an opportunity to respond.  If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability.

28 C.F.R. §2.19(c).

Petitioner's initial hearing was his opportunity to respond to the information identifying him as the Underboss of the

---

(B)(i) subject to supervision on the day before the expiration of the five (total eighteen) year period following the effective date of this Act; or

(ii) released on a date set pursuant to paragraph (3); including laws pertaining to terms and conditions of release, revocation of release, provision of counsel, and payment of transportation costs, shall remain in effect as to the individual until the expiration of his sentence, except that the district court shall determine, in accord with the Federal Rules of Criminal Procedure, whether release should be revoked or the conditions of release amended for violation of a condition of release.

§235(b)(4) of the Sentencing Reform Act, with all pertinent amendments.

Patriarca LCN Family.  At the commencement of parole hearings, the hearing examiner informs the prisoner of the proposed salient factor score and offense severity rating.  See 28 C.F.R. §2.13(a).  Both his presentence investigation report and the court opinion on his direct appeal so identify him.  He was clearly aware at the time of the hearing that the Commission would be considering the information contained in his presentence investigation report.  At the hearing petitioner presented an alternate version of the crimes for which he was convicted: that he was involved solely in running a gambling business, that he was friends with Patriarca, that others assumed he was a member of the LCN because of this association, and that he did not disabuse them of that notion because it benefitted his gambling business.[8]  This constituted petitioner's "opportunity to respond," which the record indicates he did in fact exercise.

_____

[8]Angiulo's recent claim denying membership in the LCN is directly at odds with the evidence presented at his trial.  For example, Special Agent James Nelson of the Federal Bureau of Investigation testified that Angiulo was the Underboss of the Patriarca LCN Family which controlled criminal activity throughout New England.  Angiulo, 897 at 1187.  Agent Nelson's testimony was based directly on the taped recordings introduced in evidence.  Angiulo, 897 at 1188.  The taped evidence captured the petitioner and his cronies actively planning crimes and discussing the business of the LCN.  Agent Nelson's pertinent trial testimony is attached hereto as Exhibit 7.  Transcripts of the tape-recorded conversations are available if the court wishes to review them.  Even without Nelson's testimony, a cursory understanding of the words and phrases found in these recorded conversations, unequivocally establishes that Angiulo's explanation was ludicrous and properly rejected by the Commission.

11

Furthermore, petitioner waived his right to review his file prior to his hearing. [See Exhibit 3, p. 2, waiver of prior disclosure of file.]  Petitioner cannot now complain that he was not told what information the Commission would consider at his hearing when he waived his right to be informed of what information the Commission would consider at his hearing.

4.   Petitioner's claim that his offense was improperly rated Category Eight must be rejected.

As a preliminary matter, the scope of judicial review of parole decisions is limited.  The court's task is not to substitute its judgment for that of the Parole Commission in determining when a prisoner should be released on parole because "the Parole Commission's substantive decision to grant or deny parole is an action 'committed to agency discretion' under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and thus is insulated from judicial review."  Farkas v. United States, 744 F.2d 37, 39 (6th Cir. 1984); Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981).  See also Brest v. Ciccone, 371 F.2d 981, 982 (8th Cir. 1967)(the Board of Parole is given absolute discretion on matters of parole); Wallace v. Christensen, 802 F.2d 1539 (9th Cir. 1986)(in light of APA, judicial review of Parole Commission decisions limited to violations of the Constitution, the statute, or the regulations).  See also Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976) ("The district court may not substitute its judgment for that of the Board and, therefore, the scope of its

12