review is very limited.")  It is not the function of the federal courts to review the discretion of the Commission in parole decisions.

The Parole Act and its legislative history clearly indicates that "Congress intended to carve out an area of decision-making which, like the decision to grant or deny parole, is committed to agency discretion and hence unreviewable even for abuse of discretion." Wallace v. Christensen, 802 F.2d at 1551 (en banc); Jones v. U.S. Bureau of Prisons, 903 F.2d 1178, 1183-85, 87 (8th Cir. 1990); Larson v. United States, 907 F.2d 85 (8th Cir. 1990). "In unmistakable terms, the Parole Act specifically commits the decision to grant or deny parole to the unreviewable discretion of the Parole Commission." Garcia, 660 F.2d at 988.  Pursuant to 18 U.S.C. §4218(d), all Parole Commission decisions involving the granting, denial, modification, or revocation or parole "shall be considered actions committed to agency discretion for the purpose of § 701(a)(2)" of the APA.  Thus, the merits of the decision to rate petitioner's offense severity as Category Eight, and to deny parole, is subject to review by this court only where the decision is alleged to be so arbitrary and capricious as to be beyond that discretion. Brown v. Lundgren, 528 F.2d 1050, 1054 (5th Cir. 1976).

Congress intended to exempt from judicial review the Commission's substantive decisions to grant or deny parole and to make these decisions unreviewable even for abuse of discretion.

13

Wallace, 802 F.2d at 1545-51; Jones, 903 F.2d 1183-84. Review is limited to only where the Commission violated the Constitution or acted outside its statutory limits. Wallace, Jones, Larson, Bowen v. United States Parole Commission, 805 F.2d 885, 888 (9th Cir. 1986). "Federal courts lack jurisdiction to entertain claims that the Parole Commission has abused its discretion in making decisions that involve 'the exercise of judgment among a range of possible choices or options.'" Myers v. United States Parole Commission, 813 F.2d 957, 959 (9th Cir. 1987) (citing Wallace, 802 F.2d 1552). See also, Wajda v. United States, 64 F.3d 385, 388 (8th Cir. 1995)(federal court lacks jurisdiction to review a substantive decision of the Parole Commission where the decision involves the exercise of judgment among a range of options); Jones, 903 F.2d 1182-83. Therefore, a threshold determination of jurisdiction based upon the claims raised by petitioner must be made. Jones, 903 F.2d 1184 ; Roberts v. Corrothers, 812 F.2d 1173, 1176-78 (9th Cir. 1987). Since the Commission's determination to deny petitioner parole release is an action committed to agency discretion by law, the Court is limited to determining whether the Commission committed constitutional error or exceeded its statutory authority. Wallace, Kramer v. Jenkins, 803 F.2d 896, 901 (7th Cir. 1986) (Kramer V).

    b.  Petitioner's challenge to the Commission's decision to rate his offense severity as Category Eight, and to deny him

14

parole, cannot be presented to this Court for a <u>de</u> <u>novo</u> determination. <u>Kramer V</u>, 803 F.2d at 901; <u>Billiteri v. United States Board of Parole</u>, 541 F.2d 938, 943-44 (2d Cir. 1976). Rather, the scope of review is limited to determining whether the Parole Commission had "any evidence" to support its finding:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusions reached....

<u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985)(discussing the review of a prison disciplinary board finding). In <u>Solomon v. Elsea</u>, 676 F.2d 282 (7th Cir. 1982), the Seventh Circuit rejected a challenge to the sufficiency of the evidence relied upon by the Parole Commission, anticipating almost exactly the above quoted standard of review in <u>Superintendent v. Hill</u>:

> The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.

<u>Solomon</u>, 676 F.2d at 290; <u>accord</u>, <u>Van Etten v. United States Parole Comm'n</u>, 96 F.3d 144, 145 (5th Cir. 1996)(decision reviewed for whether there is "some evidence" to support the Commission's decision); <u>Perveler v. Estelle</u>, 974 F.2d 1132 (9th Cir. 1992) (constitutional due process requirements are satisfied as long as there is "some evidence" in the record to support the parole decision); <u>Kramer V</u>, 803 F.2d at 7-9; <u>Zannino</u>, 531 F.2d at 691;

15

Hodges v. O'Brien, 589 F. Supp. 1225, 1235 (D.Kan. 1984); Nunley v. United States Board of Parole, 439 F. Supp. 887, 891 (W.D. Okla. 1977).

Clearly there is a rational basis in the record to support the Commission's rating of petitioner's offense as Category Eight. Specifically, the presentence investigation report states that petitioner conspired to murder five people including Angelo Patrizzi. (Exhibit 2, p. 2.) The presentence investigation report states that the motive for killing Patrizzi was that petitioner and Granito believed that he would seek to avenge the slaying of his brother (Joseph Patrizzi) by killing Frederick Simone, a Mafia soldier. The presentence investigation report states that "when Simone twice failed to execute Patrizzi as planned, Granito brought him to the Underboss of the Family, Gennaro J. Angiulo, where he and Granito were intercepted on March 11, 1981, explaining the failed attempts to kill Patrizzi and seeking Angiulo's help in carrying out this brutal murder." (Exhibit 2, pp. 3-4.) This clearly provides the Commission with a rational basis in the record for its finding that petitioner was responsible for conspiracy to commit murder.

The Commission's regulation provides that: "The prisoner is to be held accountable for his own actions and actions done in concert with others...." 28 C.F.R. §2.20, Chapter Thirteen, Subchapter A, General Note 4. Petitioner is accountable for the killing of Patrizzi, even though he did not personally kill

16

Patrizzi, because he acted in concert with others, conspiring to kill Patrizzi. Furthermore, petitioner's argument that he cannot be held responsible for murder because no one was convicted of murder is meritless. It is well-settled law that the Commission may consider all available relevant information regarding the criminal conduct of the prisoner, and is not limited to the offenses of conviction. *E.g.*, Tobon v. Martin, 809 F.2d 1544, 1545 (11th Cir. 1987)("The law is clear that the Parole Commission may consider any relevant evidence or information in reaching its decision."); Ochoa v. United States, 819 F.2d 366, 372 (2d Cir. 1987)(Commission could consider hearsay linking prisoner to terrorist activities even though judge decided not to take this information into consideration in sentencing); Billiteri v. U.S. Parole Board, 541 F.2d 938, 944-45 (2d Cir. 1976)(Commission may consider offenses alleged in presentence investigation report as to which there is no conviction); Melvin v. Petrovsky, 720 F.2d 9, 11 (8th Cir. 1983)("The Commission is not limited to the indictment and conviction in determining the severity of the offense..."); Maddox v. U.S. Parole Commission, 821 F.2d 997, 999 (5th Cir. 1987)("18 U.S.C. §4207 contains a non-exhaustive list of information that the Commission may consider in making parole determinations. As with sentencing courts, the only constraints on the information that may be considered by the Parole Commission are constitutional. Specifically, the Commission may consider dismissed counts of an

17

indictment, hearsay evidence, and allegations of criminal activity for which the prisoner has not even been charged.")

Furthermore, the law of petitioner's case is that the jury "must necessarily have accepted the government's interpretation of the pertinent tape-recorded conversations [about the planned murder of Patrizzi] involving Simone, Granito, Gennaro J. Angiulo, and Zannino." Angiulo, 897 F.2d at 1199-1200. The government's interpretation was that these taped conversations recorded the participants conspiring to kill Patrizzi. Id. at 1197. Specifically, that petitioner "indicated that he would assist in the effort to find and kill Patrizzi." Id. Equally important, as the Court of Appeals expressly found, petitioner and Zannino discussed the murder of Patrizzi the next day. In this taped conversation, petitioner enlisted Zannino's aid as well: "Therefore you and I are going to solve a problem here. Not that we want to do it, because (the underboss speaking to his lieutenant) it is our fuckin duty." Id. Petitioner's misguided notion of "duty" to a criminal organization, which resulted in a gangland slaying of Patrizzi, was properly considered by the Commission.

Because the law of petitioner's case is that the jury accepted the government's interpretation of the March 11th conversations and others as constituting a conspiracy to murder Patrizzi, petitioner cannot fault the Commission for holding him responsible for that conspiracy. Public Interest Research Group

18

v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997)("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.")

**Amended Petition**

On June 29, 2004, petitioner amended his writ. His reliance on Lyons v. Mendez, 303 F.3d 285 (3d Cir. 2002) is unavailing. The majority of courts that have considered the matter have held that the effective date for the Sentencing Reform Act of 1984 is November 1, 1987. D'Agostino v. Keohane, 877 F.2d 1167, 1170 (3d Cir. 1989); Lightsey v. Kastner, 846 F.2d at 332; Farese v. Story, 823 F.2d 975 (6th Cir. 1987); Kimberlin v. Brewer, 825 F.2d 1157, 1158 (7th Cir. 1987); United States v. Rewald, 835 F.2d 215 (9th Cir. 1988); Lewis v. Martin, 880 F.2d 288 (10th Cir. 1989); Valladares v. Keohane, 871 F.2d 1560 (11th Cir. 1989). (The Second Circuit found a different effective date-- October 12, 1984--but that Circuit concurred with all others that the original five year "winding down period" was to end on November 1, 1992. See Romano v. Luther, 816 F.2d at 840.) *But see* Lyons v. Mendez, 303 F.3d 285 (3d Cir. 2002).[9]

---

[9] This court should not adopt the minority approach of the Third Circuit in Lyons to hold the effective date of §235(b)(3) to have been its date of enactment (October 12, 1984), for several reasons. First, such a holding is unnecessary to disposition of this case: because petitioner did in fact receive a decision within his guideline range of 100+ months (i.e., he was not denied what he claims under §235(b)(3)), he has not made a *prima facie* showing of an ex post facto violation, and his

19

———————

claim must be dismissed on that ground. Second, even assuming an effective date of October 12, 1984, §235(b)(3) it is not the law annexed to petitioner's crimes, all of which were complete by the date of his indictment in 1983.

Third, the analysis of the Third Circuit in <u>Lyons</u> was seriously flawed. The <u>Lyons</u> opinion does not take into account that the Parole Commission's existence has been extended since the 1987 amendment to §235(b)(3), and that the Commission has never been required to implement §235(b)(3) by setting final release dates. See discussion of extensions *supra*.

Congress enacted these extensions because of a concern, identified as early as the 1990 amendment, that if the Commission were to actually make the final round of release decisions under §235(b)(3) and then cease to exist, the consequent deprivation of periodic parole hearings to persons sentenced under a scheme which provided for such periodic hearings would violate the ex post facto clause of the Constitution. This concern is clear in the legislative history of both the 1990 and 1996 amendments. The 1990 legislative history states:

> The Sentencing Reform Act's abolition of parole creates substantial questions under the ex post facto clause of the Constitution. The Sentencing Reform Act provides that a person convicted after November 1, 1992, of a crime committed before November 1, 1987, is entitled to parole consideration. After November 1, 1992, however, there will be no agency to make parole determinations, thereby depriving such a person of the parole consideration to which that person is entitled. Further, the parole provisions applicable to persons convicted before November 1, 1992, of an offense committed before November 1, 1987, entitle an inmate to a periodic review of the inmate's status. The abolition of the Parole Commission on November 1, 1992 means that after that date no agency will be empowered to conduct the required review.

House Report No. 101-734 at p. 20, reprinted in 1990 Cong. & Ad. News, Vol. 8, p. 6866. Similarly, the 1996 legislative history states:

> At the end of fiscal year 1996, there will still be approximately 6,700 parole-eligible, 'old law' defendants in the federal system. Constitutional requirements, specifically the ex post facto clause, necessitate the

20

---

>   extension of the Commission, or the establishment of a similar entity authorized by statute to perform its functions. Otherwise, those remaining 'old law' offenders will file habeas corpus petitions, seeking release on the grounds that their right to be considered for parole had been unconstitutionally eliminated. If such petitions were successful, public safety may be jeopardized by the release of dangerous criminals.

House Report No. 104-789, section titled "Background and Need for the Legislation", reported at 1996 U.S.Code Cong. & Ad. News, Vol. 6, p. 3479 (citations omitted).

   Section 235(b)(3) has been understood by courts, including the Third Circuit in U.S. ex rel. D'Agostino v. Keohane, supra, and the Second Circuit in Romano v. Luther, supra, to have been intended by Congress to be an administrative "winding-up" provision, to deal with "those individuals who would not be released by the expiration of the Commission's tenure." 877 F.2d at 1171. Further, §235(b)(3) has consistently been interpreted as not requiring action by the Commission until near the end of the "winding-up" period. E.g., Romano, 816 F.2d at 839-40 (subsection by its own terms only requires the Commission to set dates far enough in advance of the end of the "winding-up" period to permit an administrative appeal to be taken); Lightsey v. Kastner, 846 F.2d 329; Stange v. U.S. Parole Commission, 875 F.2d 760 (9th Cir. 1989)("Section 235(b)(3) simply specifies the timing of the Commission's *decisions* regarding release dates; it says nothing about when prisoners shall actually become eligible for release.")(emphasis original).

   When it later became clear to Congress that it was not, in fact, true that "most individuals sentenced under the old system would be released during the [original] five year transition period", D'Agostino, 877 F.2d at 1171, Congress made subsequent amendments which lengthened the "transition period," first to ten years, then to fifteen years and most recently to eighteen years. The effect of each of these amendments was to postpone the operative effect of §235(b)(3), i.e., the time when the Commission was required to make the final round of release decisions.

   The Lyons opinion ignores the purpose of §235(b)(3) as a provision that was necessary only if the parole release functions were terminated and there was no longer any entity in existence to set a release date for a prisoner who was eligible for parole. Congress delayed the need for applying §235(b)(3) by thrice

21

If the effective date was 1987, then §235(b)(3) was not the "law annexed to the crime" for any crime committed prior to November 1, 1987, for purposes of ex post facto analysis. Lightsey, *supra* at 333 (the relevant law for purposes of ex post facto analysis,

---

extending the Commission's tenure. In determining the meaning of a statute, the court must "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158 (1990). The Court should read §235(b)(3) keeping in mind that it is a "winding up" provision to become operative only in the event that parole release functions are terminated. It is clear from the design of the statute and its object that Congress did not intend, in promulgating §235(b)(3), to create a windfall of within-guidelines parole release decisions for individual prisoners; to the contrary, as the court noted in Stange, 875 F.2d at 762, Congress was merely specifying the timing of final decisions by the Commission, not granting rights to prisoners.

Furthermore, in order for this Court to follow Lyons, it would have to also hold that the 1990, 1996, and 2002 amendments to §235(b)(3) were ex post facto because they postponed the time when the Commission would apply the transition provisions to prisoners and thereby negated their opportunity for release dates within their guidelines. Such a holding simply makes no sense, however, because both the extension amendments were **remedies** for the ex post facto problems which would arise if **any version** of §235(b)(3) were implemented by the Commission.

Under the Lyons court's analysis of the issue presented, the Commission was required to render a decision in Lyons' case under a "winding-up" provision–*i.e.*, as if it had gone out of business in 1992–notwithstanding the evident fact that it had (and has) not and that parole release remained fully available to Lyons for the duration of his sentence. Such a holding converts what has at all times been a "housekeeping" statute directing the Commission how to handle its remaining caseload on the eve of its abolition, D'Agostino, 877 F.2d at 1171, into a statute creating a right to a parole date within the guidelines regardless of whether the Parole Commission or its functions continue to exist. Nothing in the legislative history suggests that Congress intended to create any such entitlement.

22

*i.e.*, the "law annexed to the crime", is the law in effect on the date the offense was committed). Petitioner committed his crimes prior to 1987, so his ex post facto claim is meritless.

Moreover, even assuming arguendo that the effective date of §235(b)(3) was October 12, 1984, petitioner completed all of his criminal actions prior to that date as well. Petitioner attempts in his amended petition to lengthen his own criminal career in order to claim entitlement to §235(b)(3): although his own indictment was issued on September 19, 1983 for crimes committed prior to that date, he attempts to attach himself to the indictments against coconspirators issued on April 17, 1986 and July 15, 1986[10] (after he had already been convicted and sentenced on April 3, 1986) in order to try to bring himself within the purview of §235(b)(3). Amended petition, p. 6. This

---

[10] Following a long-term investigation of the LCN, petitioner and six co-defendants were indicted on September 19, 1983. As a result of this intensive Title III investigation, additional indictments were returned in the District of Massachusetts. On September 14, 1984, seven coconspirators, including petitioner's son, were indicted for RICO and other offenses. On December 13, 1984, petitioner's counsel was indicted for obstruction of justice. On April 17, 1986, seven coconspirators were indicted for the same gambling-related offenses for which petitioner was convicted.

On July 15, 1986, Donato Angiulo, petitioner's brother and co-defendant, and three others were indicted in the District of Nevada on charges unrelated to the indictments returned in this district. Donato Angiulo appealed a ruling denying his motion to dismiss that indictment based upon an alleged violation of the double jeopardy clause. The Ninth Circuit affirmed the district court's ruling. United States v. Spinale, 857 F.2d 1479 (9th Cir. 1988).

23

ploy must be rejected: all of petitioner's crimes were committed prior to any possible effective date of §235(b)(3). Therefore, the originally enacted version of §235(b)(3) was not the law annexed to petitioner's crime, and the December 1987 amendment he challenges was simply irrelevant to his case.

## Conclusion

For the foregoing reasons, the petition for habeas corpus should be denied and the case dismissed.

Respectfully submitted,<br>
MICHAEL J. SULLIVAN<br>
United States Attorney<br>
By<br>
ERNEST S. DiNISCO<br>
Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

Suffolk, ss.                                         Boston, Massachusetts
                                                     July 23, 2004

This is to certify that I have this day served a copy of the foregoing document by mail on Gennaro J. Angiulo, 03583-016, F.M.C. Devens, P. O. Box 879, Ayer, Massachusetts 01432-0879.

ERNEST S. DiNISCO
Assistant U. S. Attorney

24