# TABLE OF CONTENTS

EXHIBIT 1 - Sentence Monitoring Computation Data . . . . . . . . .

EXHIBIT 2 - Presentence Report . . . . . . . . . . . . . . . . . .

EXHIBIT 3 - Notice of Hearing-Parole Application. . . . . . . . . .

EXHIBIT 4 - Hearing Summary . . . . . . . . . . . . . . . . . . . .

EXHIBIT 5 - Notice of Action . . . . . . . . . . . . . . . . . ___

EXHIBIT 6 - Notice of Action on Appeal . . . . . . . . . . . . . .

EXHIBIT 7 - Trial Transcript - Day 33 - pp. 54-56 and 105 . . . . .

Exhibit 1

```
5H      PAR3C  540*23 *           SENTENCE MONITORING          *      08-05-2003
  PAGE 001           *           COMPUTATIN  DATA             *    . 16:58:06
                                AS OF 08-05-2003
```

REGNO..: 03583-016 NAME: ANGIULO, GENNARO


```
FBI NO...........: 451197A              DATE OF BIRTH: 03-20-1919
ARS1.............: DEV/A-DES
UNIT.............: J CC                 QUARTERS.....: J03-331L
DETAINERS........: NO                   NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  05-15-2010 VIA MAND REL

--------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION............: MASSACHUSETTS
DOCKET NUMBER....................: CR 83-235-N
JUDGE............................: NELSON
DATE SENTENCED/PROBATION IMPOSED: 04-03-1986
DATE WARRANT ISSUED..............: N/A
DATE WARRANT EXECUTED............: N/A
DATE COMMITTED...................: 05-29-1986
HOW COMMITTED....................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED................: NO
SPECIAL PAROLE TERM..............:
```

```
                 FELONY ASSESS   MISDMNR ASSESS   FINES         COSTS
COMMITTED......
   AMOUNT......:  $00.00          $00.00          $120,000.00   $00.00
   AMOUNT PAID.:  $00.00          $00.00          $00.00        $00.00
   DATE PAID...:
   DT INDG OATH:
   DATE OTHER..:
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT: $00.00

----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:   545
OFF/CHG: 18:1962(D)(C) &2-RICO, 18:1955 & 2-ILLEGAL GAMBLING, 18:892(A)
         & 894(A) CONSP, 18:1503, 371 & 2-OBSTRUCTION OF JUSTICE

```
  SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
  SENTENCE IMPOSED/TIME TO SERVE.:    45 YEARS
5H    DATE OF OFFENSE................: N/A
```

G0002      MORE PAGES TO FOLLOW . . .

```
5H     PAR3C  540*23 *          SENTENCE MONITORING        *      08-05-2003
PAGE 002 OF 002 *              COMPUTATION DATA            *      16:58:06
                               AS OF 08-05-2003
```

REGNO..: 03583-016 NAME: ANGIULO, GENNARO


------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 12-15-2000 AT DEV AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN...........: 04-03-1986
TOTAL TERM IN EFFECT.............:    45 YEARS
TOTAL TERM IN EFFECT CONVERTED..:    45 YEARS

JAIL CREDIT......................:   FROM DATE     THRU DATE
                                     09-19-1983    04-02-1986

TOTAL JAIL CREDIT TIME...........: 927
TOTAL INOPERATIVE TIME...........: 0
STATUTORY GOOD TIME RATE.........: 10
TOTAL SGT POSSIBLE...............: 5400
PAROLE ELIGIBILITY...............: 09-18-1993
STATUTORY RELEASE DATE...........: 12-05-2013
TWO THIRDS DATE..................: 09-18-2013
180 DAY DATE.....................: 03-21-2028
EXPIRATION FULL TERM DATE........: 09-17-2028

NEXT PAROLE HEARING DATE.........: 08-00-2003
TYPE OF HEARING..................: STATUTORY INTERIM HEARING

PROJECTED SATISFACTION DATE......: 05-15-2010
PROJECTED SATISFACTION METHOD...: MAND REL
```


S0055        NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

Exhibit 2

rPROB 2
(Rev. 4/84)

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PRESENTENCE REPORT

CONFIDENTIAL

| NAME (Last, First, Middle) | | | DICTATION DATE |
|---|---|---|---|
| ANGIULO, Gennaro J. | a/k/a  Jerry Angiulo;<br>a/k/a  Jay Angiulo | | March 12, 1986 |

| ADDRESS | LEGAL RESIDENCE | SCHEDULED SENT. DATE |
|---|---|---|
| Suffolk County Jail<br>Charles Street<br>Boston, MA | 9 Vernon Street<br>Nahant, MA | March 20, 1986 |
| | | DOCKET NO.<br>83-00235-01 |
| | | CITIZENSHIP<br>U.S. |

| AGE | RACE | DATE OF BIRTH | PLACE OF BIRTH | SEX | EDUCATION |
|---|---|---|---|---|---|
| 67 | Cauc. | 3-20-19 | Boston, MA | M | 12 Grades |

| MARITAL STATUS | DEPENDENTS | SOC. SEC. NO. |
|---|---|---|
| Co-habitating | 3/C-L Wife and 2 Children | 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 |

| FBI NO. | U.S. MARSHAL NO. | OTHER IDENTIFYING NO. |
|---|---|---|
| 451 197 A | 14056-038 | |

**OFFENSE**   Ct. 1:  Consp. to Conduct a Pattern of Racketeering Activity 18:1962(d), Ct. 2: Unlawfully Conducting Pattern of Racketeering Activity 18:1962(c) &2, Cts. 3-5 and Ct. 7: Gambling and Aiding and Abetting 18:1955,2, Cts. 12-15:  Extortinate credit transactions 18:894(a), Ct. 18:  Obstruction of Justice 18:1503,2, Ct. 19:  Consp. to Obstruct Justice 18:371.

**PENALTY**   Cts. 1 and 2:  20 yrs. and/or $25,000 each count, Cts. 3-5 and 7:  5 yrs. and/or $20,000 each count, Cts. 12-15:  20 yrs. and/or $10,000 each count, Ct. 18:  5 yrs. and/or $5,000, Ct. 19:  5 yrs. and/or $10,000.

| CUSTODIAL STATUS | DATE OF ARREST |
|---|---|
| Held without bail since 9-19-83.   913 days jail credit. | 9-19-83 |

**PLEA**



**VERDICT**
Guilty by jury on 2-26-86    Cts. 1-5, 7, 12-15, 18, 19.

**DETAINERS OR CHARGES PENDING**

None

CONFIDENTIAL

PROPERTY OF US COURTS

SUBMITTED FOR OFFICIAL USE OF
U.S. PAROLE COMMISSION AND
FEDERAL BUREAU OF PRISONS. TO BE
RETURNED AFTER SUCH USE, OR UPON REQUEST.
DISCLOSURE AUTHORIZED ONLY TO
COMPLY WITH 18 USC 4208(b) (2).

**OTHER DEFENDANTS**

See attached.

| ASSISTANT U.S. ATTORNEY | DEFENSE COUNSEL |
|---|---|
| Jeremiah T. O'Sullivan, Diane M. Kottmyer, Spec. Attorneys U.S. Department of Justice | Anthony M. Cardinale, Esq.   523-1760<br>11 Beacon Street, Suite 1205, Boston, MA |

**DISPOSITION**

SEE ATTACHED

| SENTENCING JUDGE | DATE | PROBATION OFFICER |
|---|---|---|
| Honorable David S. Nelson | April 3, 198 | Anne E. Toye |

OTHER DEFENDANTS:

Vittore Niccolo Angiulo, a/k/a Niccle, a/k/a Nick - Pending.

Ilario M.A. Zannino, a/k/a Larry Baione - Pending.

Donato F. Angiulo, a/k/a Danny, a/k/a Smiley - Guilty, 2-26-86, by
jury, Counts 1-3, 12.
Disposition 3-20-86.

Samuel S. Granito, a/k/a Sammy - Guilty, 2/26/86 by jury, Counts 1,
2 and 4.
Disposition 3-20-86.

Francesco J. Angiulo, a/k/a Frank, a/k/a Caz, a/k/a Cat - Guilty,
2-26-86, by jury, counts 1-5, 7, 12-14.
Disposition 3-20-86.

Michele A. Angiulo, a/k/a Mike, Guilty, 2/26/86, by jury, Count 3.
Disposition 3/20/86.

AET/mel



- 1 -

OFFENSE:

On September 19, 1983, a Federal Grand Jury, convened in the District of Massachusetts, returned a 20 Count Indictment charging the defendant, GENNARO J. ANGIULO, et al with a variety of offenses all committed in furtherance of Racketeering. Specifically, the defendant, GENNARO J. ANGIULO is charged in Count 1 with conspiracy to commit extortionate acts in violation of Title 18, United States Code, Section 1962(d); Count 2 charges the defendant with a substantive act of extortion, in violation of Title 18, United States Code, Sections 1962(c). Counts 3 through 5 as well as 7 charge the defendant with Gambling as well as Aiding and Abetting all in violation of Title 18, United States Code, Sections 1955, 2; Counts 12 through 15 inclusive alleged extortionate credit transactions as prohibited in Title 18, United States Code, Section 892(a). Counts 18 and 19 charged the defendant with Obstruction of Justice and Conspiracy to Obstruct Justice in violation of Title 18, United States Code, Section 1503, 2 and Title 18, United States Code, Section 371 respectively. On September 19, 1983, the defendant, Gennaro J. Angiulo, was arrested and has been held without bail throughout the pendency of this criminal matter. On February 26, 1986, following a eight-month trial, Mr. Angiulo was convicted by jury as charged in Counts 1 through 5, Count 7, Counts 12 through 15, Counts 18 and 19. The Honorable Davis S. Nelson has set March 20, 1986 for sentencing in this matter.


Prosecution Version. On February 26, 1986, after an eight-month trial, GENNARO J. ANGIULO Donato P. Angiulo, Francesco J. Angiulo and Samuel S. Granito were convicted of violating Title 18 U.S.C. 1962, that is, the Racketeer Influenced and Corrupt Organizations Act (R.I.C.O.). The evidence, comprised chiefly of the defendants' own words intercepted at their North End headquarters over a five month period from January through May of 1981, demonstrated that the defendants were members of the Patriarca Family of La Cosa Nostra (L.C.N.), a racketeering enterprise in existence from November, 1966 through December, 1982 which engaged in various criminal activities, consisting of multiple acts of murder, as well as loansharking, obstruction of justice, and the operation of four illegal gambling businesses.

This racketeering enterprise was headed from 1966 through 1982 by the defendant GENNARO J. ANGIULO who was Underboss to Patriarca and who controlled all L.C.N. related criminal activity in eastern Massachusetts. As early as 1963, the defendant was publicly identified during the United States McClennan Senate Rackets Committee Hearings as being a member of organized crime in the Boston area. Moreover, from tapes introduced at trial, it was learned that his entire adult life has been spent in furtherance of L.C.N. activities as illustrated in his much-publicized quote "show me a better way to make a living etc.". Angiulo's successful operation of these criminal businesses for so many years was the result of an organizational structure which used sophisticated methods to insulate the leaders of the Enterprise from exposure to



- 2 -

criminal prosecution. Illustrative of the sophistication of this
organization is the fact that the Enterprise paid grand jury
witnesses a "salary" of $300 per week to commit contempt and go to
prison for 18 months rather than testify.

The business of the Enterprise was the making of money by illegal
means, primarily gambling and loansharking.  In addition, as a
direct result of the illegality of its principal businesses, the
Enterprise provided support services designed to protect its members
and leaders from criminal liability arising out of the performance
of their duties.  Thus, the regular course of the Enterprise's
business encompassed the obstruction of justice and corruption of
the criminal justice system.

In addition to gambling and loansharking, members of the Enterprise
engaged in crimes, including murder as a matter of duty,  (1) to
protect the criminal businesses of the Enterprise from encroachment
by other criminal groups, (2) to protect members from retaliatory
action by the friends and families of murder victims, (3) to punish
those who testified against members, (4) to obstruct justice and
protect members and associates against investigation and
prosecution, and (5) at the request of other L.C.N. Families.  As
underboss, GENNARO J. ANGIULO directly authorized and shared in the
profits of all crimes committed by L.C.N. members and employees in
this region.

Racketeering acts committed in furtherance of the Enterprise
included murders that were actually carried out as well as
conspiracies to murder two additional individuals.  These acts
involving murder involved:

        (a)   The murder of Walter Bennett in Boston,
               Massachusetts in April, 1967.

        (b)   The murder of William Bennett, the brother
               of Walter Bennett, in Boston, Massachusetts
               on December 23, 1967.

        (c)   The murder of Joseph Barboza in San Francisco,
               California on February 11, 1976.

        (d)   The murder of Angelo Patrizzi in the District
               of Massachusetts in March, 1981.

The two murder conspiracies occurred in the Spring of 1981.  The
planned victims were Walter LaFreniere, then a witness before the
grand jury, and Harvey Cohen.  Both murders were averted by F.B.I.
agents monitoring the ongoing electronic surveillance.

The evidence was that GENNARO J. ANGIULO himself conspired to murder
Walter Bennett, William Bennett, Joseph Barboza, Angelo Patrizzi,
and Walter LaFrenier and that he was an accessory before the fact of
the murder of Angelo Patrizzi.  On June 11, 1981, Lynn Police
officers discovered Patrizzi's severely decomposed body wrapped in a


"F.O.I. EXEMPT"

- 3 -

sleeping bag and stuffed into the trunk of a stolen motor vehicle. When his body was uncovered, Patrizzi was found hog tied, that is, a rope was tied around his neck extending the length of his body and tied to his ankles which were bent behind his back.  A post mortem examination revealed that Patrizzi had died as a result of strangulation by ligature.  The motive for Patrizzi's slaying was that the Enterprise, and in particular, GENNARO J. ANGIULO and Samuel S. Granito, believed that Patrizzi would seek to avenge the gangland slaying of his brother, Joseph "Porter" Patrizzi, by killing Frederick Simone, a soldier assigned to Granito's regime. When Simone twice failed to execute Patrizzi as planned, Granito brought him to the Underboss, GENNARO J. ANGIULO, where he and Granito were intercepted on March 11, 1981, explaining the failed attempts to kill Patrizzi and seeking ANGIULO'S help in carrying out this brutal murder.  Patrizzi disappeared some four days later.

The government proved at trial that the Patriarca Family is part of a nationwide criminal organization composed of other L.C.N. Families and ruled by a Commission made up of the bosses of the most powerful Families.  The defendant, GENNARO J. ANGIULO, had business relationships with other L.C.N. Families throughout the country, as well as with other criminal organizations, including a criminal organization based in Eastern Massachusetts headed by Howard T. Winter.

In addition to his convictions under R.I.C.O., GENNARO J. ANGIULO was convicted of owning and operating four separate gambling businesses in violation of 18 U.S.C. 1955 -- a numbers betting business in Boston which employed more than 200 agents and took in receipts of $60,000 in a single day (Count Three), a high-stakes poker game in Boston in which up to $12,000 was bet in a single hand (Count Four), a barbooth game in Lowell (Count Five) and Las Vegas events in Boston which purported to benefit charities but which, in fact, benefited only the defendants (Count Seven).  GENNARO ANGIULO was the head of these businesses and was responsible for setting their long-term operational policies.

ANGIULO was also convicted of four counts of violating the Extortionate Credit Transaction Statue, 18 U.S.C. 892 and 894.  He conspired to make an extortionate extension of credit to Donald Smoot in the amount of $14,000 (Count Twelve); he conspired to make an extortionate extension of credit in the amount of $200,000 to Joseph Palladino (Count Thirteen); he conspired to collect the same extortionate extension of credit from Joseph Palladino (Count Fourteen); and he collected the extortionate extension of credit from Joseph Palladino (Count Fifteen).

Finally, GENNARO J. ANGIULO was convicted of conspiring to obstruct justice and obstructing of justice by interfering through corrupt, violent and threatening means with Walter LaFreniere, a witness appearing before the grand jury that was investigating his criminal organization.



- 4 -

The evidence was that in furtherance of the conspiracy to obstruct
justice, GENNARO J. ANGIULO conspired to murder Walter LaFreniere, a
murder which, as stated above, was averted when F.B.I. agents who
had been intercepting the defendant's conversations, warned
LaFreniere that there was a contract out on his life.


PRIOR RECORD:

A complete search of the files of the Massachusetts Criminal History
Systems Board together with a check of the courts in the area where
the defendant has resided reveals the following known criminal
record:  (except where indicated, representation by counsel was not
determined)

| | | | |
|---|---|---|---|
| 7-31-41<br>age 22 | Reg bets | Boston Munic. Ct. | $100 fine paid |
| 6-2-47<br>age 28 | Reg bets<br>(2 counts) | Boston Munic. Ct. | $100 ea. ct. paid |
| 6-23-47<br>age 28 | Conspiracy | Bristol Sup. Ct. | Nolo contendere, filed |
| | Bookng out-<br>side track | "      "      " | Nolo contendere, $25<br>fine paid. |
| 9-17-47<br>age 28 | Mal Des Prop<br>to Tel. Co. | Boston Munic. Ct. | Guilty, filed |
| | Lottery | "      "      " | $75 fine paid |
| | Present<br>where Gaming<br>Inst. Found | "      "      " | $25 ct. cost paid |
| 9-12-66<br>age 47 | Asslt<br>I.R.S. Agnt. | U.S. District Ct.<br>District of MA<br>Docket #65-9 | Guilty one mo. committed<br>$1,000 fine paid. |

The defendant was represented by Attorney Frank Demento.  Gennaro
Angiulo along with Peter J. Limone and William Cresta both of
Medford, was charged with forcibly, intimidating and impeding Harry
J. Foderaro, an IRS agent in May, 1964.  More than 20 years later,
the defendant recalls the events vividly and insinuated that his
actions were in response to improper advances made by the Revenue
Agent towards a young lady.


| | | | |
|---|---|---|---|
| 5-31-73<br>age 54 | Asslt Govt.<br>Employee | U.S. District Ct.<br>Docket #72-317 | Guilty one yr committed,<br>first 3 mo. to be served,<br>bal. ss probation 2 yrs.;<br>$2,000 fine appealed;<br>(sentence stayed pending |

F. O. I. EXEMPT

- 5 -

> appeal). The appeal
> resulted in a one mo. term
> of incarceration and the
> imposition of a $2,000
> fine which was paid.

The defendant was represented by Attorney Joseph Balliro. The assault occurred on July 4, 1972 while the defendant was navigating a cabin cruiser in the area of Boston Harbor. A coast guardsman signaled to the defendant to stop because he was causing an "excessive wake". The defendant proceeded to the dock claiming that to have stopped the boat, would have been to endanger his passengers because of the low tide conditions in the channel. An altercation ensued between the defendant and the coast guardsman beginning first with name calling and climaxing with the defendant shoving the Guardsman Brown.

In addition to the above, the defendant has been sited for 11 minor traffic violations for which fines were assessed and remitted.

PERSONAL AND FAMILY DATA:

Defendant.   Gennaro Joseph Angiulo is a 67 year old, white divorced male, who for at least the 12 years preceding his arrest in 1983 maintained a cohabitating relationship with Barbara Lombard, the mother of his two minor children. Mr. Angiulo was born in Boston on March 20, 1919, the third child in a natural sequence of seven of the union between Caesare and Giovannina nee Fimiani Angiulo both of whom immigrated to America from Italy. The defendant's father established and managed a prosperous wholesale grocery business in Boston's North End. Upon his death in 1951, his wife assumed managerial duties. According to the defendant, he was raised within a financially secure climate and one which encouraged a deep commitment of each family member for the other. Mr. Angiulo was educated in the public school system (for which he expressed a deep respect) and remained a member of his parents' household until his induction into the service in 1942.

Mr. Angiulo identifies his immediate family members as follows:

Father.   Caesare Angiulo expired at age 61 in 1951 of a respiratory ailment.

Mother.   Giovannina nee Fimiani Angiulo expired in 1975 at age 82.

Brother.   Nicolo V. Angiulo, (co-defendant) age 69 of Revere Beach Parkway in Revere, a widower and father of one child, he is particially disabled.

Sister.   Stella nee Angiulo Orlandella, age 68 of Saugus, MA. She is a divorced housewife whose former husband owns Sea Crest Motors of Lynn.



- 6 -

Brother.  Francesco Angiulo, (co-defendant) age 65 of 98 Prince Street in Boston.  He is single with no children and according to the defendant, he is retired.

Brother.  Donato Aniuilo, (co-defendant) age 63 of 5 Lund Road in Medford.  He is retired and the father of two children.

Brother.  Antonino Anguiuo expired in 1976 at age 54 of an intestinal blockage.

Brother.  Michael Angiulo, (co-defendant) age 59 of 66 Maurice Street in Medford.  He is married and the father of two children. According to the defendant, this brother is the owner/manager of a package store.

Marital.  The defendant's marriage to the former Ann Rakauskas, age 62 occurred during a religious ceremony performed in Cambridge on November 23, 1947.  Of that union, two children were born who are identified as follows:

Daughter.  Thais Angiulo expired in 1969 at age 21 of an acute respiratory attack.  She was a registered nurse by profession.

Son.  Jason Brion Angiulo, age 29 resides at 9 Vernon Street in Nahant and is self-employed as an investment broker.

The couple mutually separated in April 1963, and a divorce was secured through the Middlesex Probate Court five years later. Reportedly, the former Mrs. Angiulo suffered from emotional disorders as early as 1963.  At that time, the couple's older child was in the care her paternal grandmother.  By 1973, the defendant had assumed the guardianship of his son; it is unclear as to whether Mrs. Angiulo ever fully recovered.  The defendant claims that he continues to honor his alimony obligations and he contributes $8,400 yearly towards his wife's support.  He added that she is an intelligent and resourceful woman, a former model who has established other sources of income.  Mrs. Angiulo is known today as Shiela Anderson and is believed to reside at 240 Spring Street in Medford.  This dwelling is an unpretentious single-family home located within a working class neighborhood.  Mrs. Angiulo's telephone listing under the name of Sheila Anderson is unpublished; attempts to contact her in person were unsuccessful.

Some time following his divorce, the defendant entered into a consensual relationship with Barbara Lombard presently age 45 by whom he has had two children.  Ms. Lombard, a native of East Boston, was one of two children raised within a single parent home in Malden, MA.  She is a graduate of Malden High School and was introduced to the defendant while employed as a hostess at Jay's Lounge in Boston.  Since June of 1971, the defendant and Ms. Lombard have occupied a spacious seven-room brick home of Georgian construction.  The dwelling is situated on two acres of ocean-front land and includes an inground swimming pool and a cabana.  The property has been assessed at $439,200 by the town of Nahant.  On



- 7 -

January 4, 1982, in consideration of the sum of $250,268 the property was conveyed by Jerry J. Angiulo to Gennaro J. Angiulo, Jason Brion Angiulo, Barbara Jay Angiulo all of Nahant, and Barbara Lombard of Boston.  At present, members of the 9 Vernon Street household include Barbara Lombard and her children, Gennaro and Barbara Jay, ages 14 and 8 respectively.  Both attend public school; Gennaro is enrolled in Swampscott, while Barbara attends the Nahant elementary.  The defendant's older son Jason, by his former marriage, is considered a member of the family constellation and resides in a cabana which has been coverted to living quarters.  The defendant's two younger children were present throughout this officer's interview with their mother.  Nothing has been withheld from the youngsters and the defendant's son was compiling all the newspaper articles which have been published about his father.  Each of the children contributed to the interview, sometimes correcting their mother and other times enlarging upon her responses.  Gennaro Jr. has assumed many of the home maintenance tasks generally carried out by the heads of the household.  He explained that his father instructed him as to technical intricacies of electrical and construction type problems and that he is well able to make the repairs that are necessary.  While only 14 years of age, the defendant's son operates a pickup truck within the compound and oversees the exterior maintenance of this property.

In light of the fact that the defendant's relationship with Ms. Lombard has endured over a number of years and has produced two children, this probation officer inquired as to the obstacles which have prevented them from solidifying their relationship in marriage.  Mr. Angiulo spoke of his unsuccessful attempts to secure an annulment from his first marriage.  He considers himself a devout Catholic and is disinclined for this reason to marry outside the church.  Ms. Lombard presented herself as a pragmatic figure especially when discussing her future as well as that of the defendant's and their children.  She claims to have an income independant to that of Mr. Angiulo (investment broker) and would be able to sustain her present lifestyle should a term of incarceration be imposed upon the defendant.  As in the case of the defendant, Ms. Lombard's income is presently the subject of an IRS investigation and thus she declined to offer any details relating to her brokerage profession.

EDUCATION:

The defendant received his elementary and secondary education from within the Boston Public School System and was graduated from Boston English High School in 1936.

EMPLOYMENT:

September 1983 to Present.  Held without bail, pending trial on the indictment offenses.

1963 to 1983.  Huntington Realty Company, 95 Prince Street, Boston, MA.  Mr. Angiulo provided an overview of this business explaining



- 8 -

that the title was a pseudonym for Jerry Angiulo i.e., doing
business as Huntington Realty Company. The defendant claims that he
derives an annual income of between $50,000 and $75,000. This
family held company deals in mortgages and direct loans; the company
controls and manages parcels of real estate in and throughout the
Boston area. Again because of ongoing investigation by the Internal
Revenue Service, the defendant declined to authorize releases which
might allow a representative of this office to examine income tax
returns which, he claims, always to have filed.

1943 to 1963. The defendant and his brothers were engaged in
essentially the same realty business as described above. Excerpted
from prior presentence investigations were self-employment sites
such as The Dog House Restaurant, The Monte Carlo Restaurant and The
Paddock Restaurant, doing business as Jays Lounge, all located in
the Boston area.

HEALTH:

Physical. Gennaro J. Angiulo is a 67 year old healthy, white male.
He is 5'7" tall, weighs 147 lbs., has brown eyes (wears glasses) and
white hair. There are no visible marks or scars. The defendant
characterized his overall health as satisfactory. Since his
incarceration, however, he has developed colitis and is currently
undergoing treatment in an experimental program sponsored by the
Massachusetts General Hospital. Treatment includes medication;
there are no dietary restrictions. Chronic illness in the
defendant's family includes asthma. For several years until 1972,
the defendant suffered from respiratory ailments correlating
directly with cigarette smoking. Mr. Angiulo has discontinued this
habit. The defendant denies excesses in form of alcohol, drugs or
gambling.

Mental and Emotional. Gennaro Angiulo is a garrulous figure in an
interview situation; he pretended a certain naivete with respect to
the post-conviction process (i.e., presentence and executing forms
etc.) but as the interview proceeded, he clearly revealed an astute
understanding of this process. He claims to be a self-educated
individual and one who is constantly on the alert for ways of
improving his powers of expression. He appears also to be a student
of human behavior, who studies his colleagues, adversaries, or
allies carefully, to determine how best to respond. He possesses
the facility to disarm those whom he perceives as unfriendly,
alternating between ingratiating platitudes and testing comments.

MILITARY SERVICE:

The defendant, Gennaro J. Angiulo, served as a member of the United
States Navy (Serial Number 606-73-19) from May 5, 1942 until
honorably discharged on November 29, 1945.

FINANCIAL CONDITION:

The defendant declined to furnish a statement attesting to his net
worth or offer a detailed account of his sources of income.

- 9 -

EVALUATION:

Probation Officer's Assessment.  Gennaro Joseph Angiulo is today a 67 year old white male, who on February 26, 1986 at the conclusion of an eight-month trial was convicted of 12 counts contained in a multi-count indictment including two counts of racketeering, two counts of obstruction of justice, four counts of gaming and four counts of extortion.  Mr. Angiulo was depicted by the government as the Boston area's impresario of organized crime who ultimately derived his power from the late Raymond L.S. Patriarca.  The indictment encompasses a time frame beginning in 1966 and concluding in December of 1982.  The defendant had heretofor been publicly linked with organized crime activities since 1963 when he was identified during the United States Senate Rackets Committee hearings as being an influential member of La Cosa Nostra.  Mr. Angiulo's criminal record includes two assualt charges upon Federal officials, one, IRS Agent and another, a Coast Guardsman in 1966 and 1973 respectively.  His affiliation with gaming activities is highlighted in his criminal profile during the 1940s.  The defendant has otherwise maintained a relatively obscure record of adjudicated criminal behavior.  Mr. Angiulo declined to offer a rebuttal to the jury's verdicts suggesting that to do so may compromise the outcome of his appeal, a constitutional right which he intends upon excercising.  The prosecution has contended that the defendant's income over the past several years has been generated exclusively through illegal enterprises and not through any legitimate revenue produced through a realty corporation.  From 1946 until the late 1950s, the defendant had owned or at least had held a proprietorship interest in various restaurants or lounge type establishments.  Mr. Angiulo demurred at a request to provide any substantiation of his income in recent years and referred to an investigation by the Internal Revenue Service which is presently underway.

From his activities as described in testimony produced by the government, his behavior as reported during the trial, and his attitude as demonstrated during an interview, one may infer that the defendant is an outspoken, antagonistic, and manipulative figure.  His utilizes flamboyance to not only inflate his image but to defuse issues, distract the listener, and otherwise embarrass his opponent.  It is felt that the secondary gains derived from his activities i.e., the mystique that surrounds the name Gennaro Angiulo and the homage paid him by his underlings, had been as important to the defendant as were the proceeds of his enterprise.

The defendant has contempt for the Law;  this was demonstrated through the pattern of racketeering, orchestrated by the defendant wherein he conspired to obstruct justice at various levels as in the grand jury proceedings and his attempts to influence the outcome of state court cases.  For those mavericks who outrightly frustrated the order of the Enterprise, a less subtle but certainly more effective tact was employed, as in the cases of



- 10 -

the late Joseph Barboza, William Bennett, Walter Bennett, and Angelo
Patrizzi.

Gennaro Angiulo was pronounced guilty beyond a reasonable doubt on
12 counts in this indictment. The acts attributed to the defendant
reveal him to be a malevolent, ruthless and greedy individual whose
corrupt influence has been pervasive. His commitment to the goals
of organized crime and his obvious disdain for those individuals
engaged in law abiding occupations, was best expressed when he
defied a co-defendant to "show me another way of making a living
etc". Mr. Angiulo has obviously relished his occupation over the
last several decades and it is felt that had he known at the onset
that his career would climax in a conviction and a possible term of
incarceration he would not have altered his course. Considering the
defendant's lifestyle, in retrospect, one must conclude that the
financial gains he has amassed over the years and the power which he
has wielded as a result of his organized criminal activity, far
outweigh any penalty which could be imposed by a court of law today.


Respectfully submitted,



Anne E. Toye,
U.S. Probation Officer

AET/mel
3/11/86



Exhibit 3