IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Gennaro Angiulo,
    (Petitioner)

v.

David L. Winn, Warden,
United States Parole,
Commission
    (Respondent's)

Case No. 04-40041-FDS
Civil Action

**ANGIULO'S RESPONSE TO THE GOVERNMENT'S OPPOSITION FOR
A WRIT OF HABEAS CORPUS UNDER 28 USC § 2241**

**COMES NOW**, Gennaro Angiulo and respectfully responds to the government's baseless and despondent "Opposition" asking this Court to summarily "deny and dismiss" his viable claims brought pursuant to **28 USC § 2241**.

Initially, the court should conclude that notwithstanding the oppositions twenty-four (24) pages of patented statutory, regulatory and interperetive distortion, several critical points of contention within their opposition will be addressed herein with the intention to place before the court not distortion, misrepresentation or chicanery under the guise of academic analysis, but meaningful "plain language" comprehension of the facts and issues now before the court. Indeed, it only took the opposition two (2) sentences into its pleading

1.

to contrive the first of several factual misrepresentations to taint the neutrality of this court. Angiulo's petition does not "focus[es] exclusively" on the respondent Parole Commission's "decision to deny him <u>early</u> <u>release</u> from his sentence," Opp. at 1, (emphasis added) however, what it does focus on is a myriad of procedural due process violations that have resulted with Angiulo **overserving** his sentence by many years. (prospectively, as many as eleven). Petitioner responds accordingly.

I.       **Angiulo Is Not An <u>Ex Officio</u> "Member" Of The Patriarca "Family" Of La Cosa Nostra; Not A Murderer; And Therefore Not An Offense Severity Category Eight**

---

1. The Parole Commission erred when it considered Angiulo's Pre-sentence Report (PSR/PSI) as <u>prima facie</u> evidence of the "facts" used to place him in offense severity Category Eight. See **28 USC § 2.20**. The commission's findings are clearly erroneous because they were based on multiple layers of unreliable hearsay evidence, <u>infra</u>.

2. In a case cited as **Gambino v. Morris**, 134 F.3d 156 (3rd Cir. 1998) the Third Circuit Court of Appeals was confronted with a very similar case. As with Angiulo, the commission attempted to justify Gambino serving until the expiration of his sentence. For their reasons, the commission rested soley on the facts that Gambino was "identified" as a member of an organized crime family, and that the body of his cousin was found in the trunk of his personal auto,

2.

victim of a brutal mob murder. The court would have none of it invalidating the "good cause" basis the commission's actions claimed to be under. The Gambino court went on to opine, "Moreover, 'good cause' means substantial reason and includes only those grounds put forward by the commission in good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious." Accord: **Harris v. Martin**, 792 F.2d 52, 55 (3rd Cir.1986)(citing H.R. Conf. Rep. No. 94-838, 94th Cong. 2nd. Sess. 27, reprinted in 1976 U.S. Code Cong. & Admin. News 335, 351, 359).

3. The government argues that the commission properly relied on "facts" that support its finding that Angiulo is a member of a crime family, Opp. at 2, and further that Angiulo "conspired" to murder no less than five people. Opp. at 2, citing Presentence Rpt., Opp. Exhibit-2 at 2. In fact, Government's Exhibit-4, "Hearing Summary" outline dated 9/7/03, confirms that the government still "believes" that all documentation of the conviction is still accurate and "....is rating the offense behavior on the original conviction " which supports the Category Eight placement. Further, the government (USPC) "....believes that the subject (Angiulo) should be held accountable for his actions and that his continued to expiration date is appropriate." Id. (emphasis added).

4. If Angiulo is being "held accountable for his actions", supra, this court must take the explicit facts established in his pleadings and release him forthwith, or grant a new parole hearing to permit the parole commission to resolve disputes with respect to information presented not under the preponderance of evidence standard, see

3.

28 CFR § 2.19 (c) (repealed) and <u>U.S. Parole Commission Rules & Procedures Manual</u> (August 15, 2003) §2.19 "Information Concidered" (recently conveyed invalid by the Supreme Court's holding in <u>Blakely, infra</u>), but under the Sixth Amendments beyond a reasonable doubt jury standard. Indeed, **Blakely v. Washington**, No. 02-1632 (June 24, 2004), has declared legislative (statutory) and agency (promulgated) rules that undermine an offenders constitutional right to be punished only on conduct found beyond a reasonable doubt <u>un</u>constitutional. <u>Id</u>. In fact, the Commission Manual presumably has been invalidated in its entirety according to the teachings of <u>Blakely</u>.

5.   The record of Angiulo's parole determination hearing further establishes that the hearing examiner relied exclusively on the information reported in Angiulo's PSR/PSI that was written on March 12, 1986. Opp. <u>Exhibit-2</u>, and shamelessly continues to falsely "believe" such documentation as reliable. Opp. <u>Exhibit-4</u>. It has been raised by the petitioner on <u>numerous</u> occasions that subsequent to the dictation of the alleged conspiratorial acts of murder, i.e. "Walter Bennet, William Bennett, Joseph Barboza, Angelo Patrizzi, and Walter LaFreniere" Opp. at 2, evidence in the possession of the governments own files indisputably exonerate petitioner from any direct responsibility in the conduct used to place him within Category Eight. Notwithstanding the cognizable desperateness apparent in the opposition's response to place Angiulo in the mix of these crimes, nothing can be more factually unreliable.[1/] The government refuses to credit such <u>prima facie</u> evidence in wholesale violation

4.

of their own rules and procedural regulations.

6. The Commission "....may not base its judgment as to parole on an inaccurate factual predicate." <u>Campbell v. United States</u>, 704 F.2d 106, 109 (3rd Cir.1983). For the government to assert that the references of murder conspiracies in petitioner's PSR/PSI that were subsequently refuted by the Department of Justice and the United States Congress' own investigations as reliable is, to say the least, "a troubling exercise in conjecture." <u>Gambino</u>, <u>supra</u> at 162. To rely on the fact that petitioner was a friend of the late Raymond L.S. Patriarca who was allegedly affiliated with the mafia as evidence that he, too, is a member of the mafia, is to adopt a rule of "guilt by association." This is prohibited under the Parole Commissions Rules, yet the government here argues that this is precisely what the court is required to do because they <u>need</u> the court to so rule. Such a squeeze play is fundamentally wrong in law and ethics and should be summarily rejected by this court. Compare <u>Gambino</u> at 162.

7. As further justification of the relevant case factors used to place petitioner into Category Eight the government -- cuts and pastes -- selected dicta from the First Circuits opinion in <u>United</u>

---

1/In hearings conducted by Judge Wolf in <u>Salemme</u>, no. 94-10287-MLW, and Rep. Burton's <u>Committee Hearings</u> on FBI Misconduct in Boston, petitioner's alleged LCN conspiracies used to place Angiulo into Category Eight were disproved. Also see e.g. **Exhibit-8** of Addendum of Exhibits filed with initial §2241 Petition, and the sworn testimony of Frank Salemme re: **U.S. v.John J. Connolly, Jr.**, no 99-10428-JLT pgs. 15-39 and 141-143. Under separate cover is petitioner's Rule 6(a) Motion For Discovery and Hearing.

States v. Angiulo, 897 F.2d 1199, 1200 Opp. at 18. For example, the government boldly believes that "the law of petitioner's case that the jury 'must necessarily have accepted the government's interpretation' of the pertinent tape-recorded conversations [about the planned murder of Patrizzi] ...." supra at 18, however, even though this evidence constitutes an inappropriate expansion of the parôle hearing record: (neither USPC Hearing Summary dated 9/7/03 Opp. Exhibit-4; nor the Notice Of Action of 9/17/03 and Notice Of Action on Appeal of 2/27/04 Opp. Exhibits-5 & 6 clearly indicate what specific case factors of what specific murder were "relied" upon to place petitioner into Category Eight). This court cannot, and rightfully should not, tolerate government counsel's practice of filling-in-the-gaps with an opinion on the impanelled Angiulo jury going back two decades exercising a sort of immortal divinity best left for our creator. Notably, what the government counsel in opposition utterly fails to share with the court is that subsequent to the First Circuits opinion they rely so heavily, and within their very own files is prima facie evidence freeing Angiulo from any specific case factors of murder, accord: Salemme; Connolly; and Burton Committee Hearings, supra. 2/

Indeed, just prior to the by now infamous Salemme hearings, on September 12, 1994, Judge Young's Memorandum Of Decision in United States v. Donato and Francesco Angiulo, Cr. No. 83-235-WGY, specifically

---

2/ Moreover, the First Circuit Panel that heard Angiulo's direct appeal expressly declined to address whether or not the evidence as to the alleged conspiracy with Granito was constitutionally sound to uphold, as the court was of the opinion the "number" of otherwise predicate RICO acts were present. The "law of the case is that the issue was not ruled on.

addressed what was then challenged as factual inaccuracies in petitioner's co-defendant's PSI.'s as to information according to the "government's version" (Exhibit-1 at 2) "....that all the defendant's 'were members of .... La Cosa Nostra, which engaged in' ... activities, consisting of multiple acts of murder." (emphasis in original, at2). In denying the motion under F.R.Cv.P. (c)(3)(D), the court observed:

> "A fair reading of the reports does not suggest that the Angiulo's were found guilty of murder, .... but instead accurately describes them as being convicted of participating in a criminal enterprise which itself condoned and promoted the use of murder to protect its interests." supra, at 3.

In footnotes 2 and 3 of the court's Memorandum Of Decision the Court references "Co-defendants Gennaro Angiulo" conspiring with Samuel S. Granito to murder Patrizzi. This is the conspiracy the opposition locked-on to validate petitioner's Category Eight offense severity and the corresponding decision to serve until expiration.

Footnote-3, specifically, denotes the First Circuit "ruling" that Granito could not have been convicted for any responsibility, (accessary) in the Partizzi murder. (Exhibit-1 at 4). The alleged plot that the opposition baselessly places petitioner in the thick of. It would be rather spurious to say that Angiulo and Granito "conspired" before the Patrizzi murder if in fact the evidence was insufficient to convict of accessory before the act. Judge Young explicitly asserts in note-3 that if petitioner's codefendant's

7.

were timely with their objections to the inaccuracies surrounding the bogus Patrizzi conspiracy, it is likely the information would have had to be purged from their reports.

> "The court notes that in any event striking the Patrizzi murder from the reports would still leave three remaining murders and two murder conspiracies ...." Id. at 4.(a ruling he could not make today).

However, see Exhibit-2, Summary - ("The Patrizzi Predicate Racketeering Act") which assists the court with a lucid and to date unchallenged overview of how the entire Patrizzi matter was systemically vindicated since the dictation date of petitioner's PSI/PSR, yet, respondent has chosen to proffer to this court deceptive and misleading facts and then request the court to rule on that flawed interpretation. Cf. n.2, supra.

8. Moreover, even if the government urged broader expansion to include cummulative "facts" (as they desire to call them) concerning these conspiracies, (expansion that would be outside that presented at petitioner's August 2003 hearing) they would fail again. See Exhibit-3 ("The LaFreniere Conspiracy To Murder") pages 9,10, and 11 of a pertinent historical case document. As shown, not only did Strike Force agents concede the bona fides (or lack thereof) in petitioner's Lafreniere "conspiracy", they declined to call him. When thereafter called by the Angiulo defense team, Special Agent Quinn for all practical purposes became the obstructor of justice when his squeeze of Mr. LaFreniere backfired because it was fact that Angiulo, nor his gambling enterprise, ever became a threat to

8.

Mr. LaFreniere. Id. at 10. Basically, the respondent's chicanery with their lust to place petitioner at the controls of the Patrizzi (and other) homicides is captured on pg. 18 Opposition, supra.

> "The government's interpretation was that these taped conversations recorded the participants conspiring to kill Patrizzi. Specifically, 'that petitioner indicated that he would assist' in the effort to .. .. kill Patrizzi." Opp. at 18.

What is omitted here is critical to the court's decision making process under habeas review. What the First Circuit went on to expressly hold was that:

> "Applying this standard [credibility] to the facts [Patrizzi conspiracy] we conclude that the evidence was not sufficient." Id. 897 F.2d 1197.,

but ofcourse, respondent elected not to share with the reviewing habeas court pertinent and material facts and data that would be considered during the review process. (see: n.2, supra).

9. Angiulo respectfully urges this court to do exactly as the First Circuit when contemplating whether such "information" passes Sixth Amendment muster in order to be constitutionally sound for penalogical aggravation; that is:

> "Even viewing this conversation (Patrizzi conspiracy) in the light most favorable to

9.

> the government, and drawing all legitimate inferences from it, we find the evidence insufficient ...." supra and n.2.

10. In sum, the law of the case today is that 1) the Bennett Bros. were murdered by someone other than the Angiulo gambling enterprise, 2) Barboza was never an issue because no verdict was ever entered by the jury following Judge Nelson's instructions on that predicate act --- "in other words, if you find ... 'Gennaro Angiulo not guilty' of the murder of Joseph Barboza you may not consider the acts invoving William and Walter Bennett." (jury chrg. Tr-127/pgs. 165-66) and 3) the Patrizzi and LaFreniere "conspiracies" were never proven.

11. Maintaining no association with the government's theory as to La Cosa Nostra other than a personal friendship with a man now long dead, petitioner suggests that Judge Nelson took all such information into consideration prior to sentencing. Any further reliance on such conjecture would be improper for several reasons. (association with mafia is not enough to place offender in Category Eight, Gambino, supra):

A. ---- the only evidence the government ever presented as to petitioner being mob affiliated was bald assertion from an unverified source[s], United States v. Cammisano, 917 F.2d 1057 (8th Cir.1990); also see e.g. Cardaropoli v. Norton, 523 F.2d 999 (2d Cir.1975)(noting that government often has no basis for its conclusions that inmates "played a significant role in a criminal organization.").

B. ---- the facts used to place petitioner in Category Eight are unsupported and clearly refuted. Coralluzo v. New York State Parole Board, 420 F.Supp.592 (W.D.N.Y. 1976)(noting that "serious errors are often made by the Government in determining that the inmate has links with organized crime.").

C. ---- if this court were to permit petitioner to serve even another day on such unreliable "specific case factors", plain error would manifest. Macolo v. Norton, 405 F.Supp. 523 (D.Conn.1975)("This is

10.

another in a series of cases which disclose the arbitrary class-
ification of an inmate as a 'member of organized crime' by federal
officials without a rational basis in fact and without affording
the inmate any procedural due process protactions.") i.e. Sixth
Amendment jury clause.

D. ---- petitioner presented to the hearing examiner an addendum of
contemporaneous documentation showing precisely what has just been
presented. Respondent Parole Commission claimed "new information was
not submitted at hearing" Opp. at Exhibit-4 at 2, which is yet
another deliberate misstatement. **Masiello v. Norton**, 364 F.Supp. (D.
Conn.1973)(finding no basis in fact for parole board to conclude
that defendant should be given organized crime designation, as
confidential presentence report was "replete with hearsay, inferences,
and conclusions concerning alleged connections ...." to organized
crime.

This court must therefore conclude that Angiulo's PSI/PSR, and the government's opposition is replete with mischaracterizations and the contents of it unreliable in the Sixth Amendment sense. See: **Blakely v. Washington**, supra; **Unitted States v. Green**, Cr. No. 02-10054-WGY (Sentencing Memo)(Young C.J.) discussing Blakely, and **United States v. Mueffleman**, Cr. No. 01-CR-10387-NG (Memorandum And Order)(Gertner, J.) (discussing the impact of Blakely and that "guide-lines" (agency/administrative) promulgated by an agency make no difference under it's progeny.The Sentencing Commission nor the Parole Commission can regulate in a way that usurps the Sixth Amendment). Any facts not put before a jury, or admitted to by the offender can not be used in a penalty phase of any definition or construction.

Where, as here, the government fails to verify the validity contained in the investigative report, (i.e. beyond a reasonable doubt) use of the information is clearly in violation of petitioner's Blakely protections. Respondents have exceeded their proper authority. Further still, by treating the alleged factual statements in the PSR as presumptively accurate, then placing the burden on Angiulo to

11.

disprove them (which has been done effectively) is **impermissable**, United States v. Charleworth, 217 F.3d 1155 (9th Cir.2000). The habeas court should not relieve the government of its procedural burden under Blakely and the Due Process Clause which is to lay the proper factual basis for the Category Eight classification.

12. Speculative evidence used to determine enhanced parole decisions violates due process. Even absent the wide implications of the Blakely mandate and its progeny as to "...facts that are 'essential' to punishment" **Mueffleman**, supra, (Gertner, J.) there is no fundamental Sixth Amendment distinction between a "judge" finding facts essential to punishment, and that of a parole "examiner" finding facts essential to punishment. Just as Blakely held unconstitutional under the Sixth Amendment a state statute that "authorized" a sentencing judge to enhance punishment on unfound conduct, so too, should this court hold unconstitutional a regulation that permits an inferior administrative employee "of the [government]" to enhance punishment based on unproven facts. Id. supra. As long as the facts "made essential" to punishment "impact" the decision, "it does not matter who promulgated the 'guidelines' or standards or rules. supra at 23. But see e.g. **United States v. Booker**, 2004 WL 1535858 at *2 (7th Cir.July 9,2004) cited as prevailing by Judge Gertner in Mueffleman:

> "....[I]t is hard to believe that the fact that
> the guidelines are promulgated by the U.S. Sen-
> tencing Commission (replacing the Parole "Comm-
> ission") rather than by a legislature can make

> a difference. The Commission is exercising
> power delegated to it by Congress, and if
> the legislature cannot evade what the
> Supreme Court deems the commands of the
> Constitution by a multistage sentencing
> scheme neither, it seems plain, can a regul-
> atory agency.",

such as the respondent Parole Commission? Cf. **United States v. Green**, Cr.No. 02-10054-WGY, (D.Mass.)(Young, C.J.). Although the Parole Commission <u>may</u> of had greater discretion than a sentencing judge during the <u>pre-Blakely</u> era, this court should be concerned that it was willing to add a decade, <u>and even two</u> , to Angiulo's prison term based on the quality of evidence discussed above.

II.      <u>**THE GOVERNMENT'S § 235 (b)(3) ARGUMENT**</u>

13. The government's legal interpretation of certain provisions of the Sentencing Reform Act (SRA) of 1984 at § 235 (a)(5), 98 Stat. 2027; specifically, section (b)(3) is ludicrous. First, they proffer to the court by implication that the commission has never been repealed (which ofcourse would have mooted such cases as <u>Lyons</u>) yet; go on to permeate § 235 (b)(3) with a meaning that is diametrical. They argue that § 235 (b)(3)'s seminal authority **Lyons v. Mendez**, 303 F.3d 285 (3d Cir.2002) is according to them "flawed", Opp. at 20, and that this court should in no uncertain terms consider the Third Circuit Court of Appeals insignificant. Their desperate lunge to invalidate <u>Lyons</u>' scholarly and unimpeachable reasoning must fail.

14. First, was the respondent Parole Commission ever repealed out of business of federal criminal justice? Angiulo says yes, but the respondent says no? No time need be wasted on this utterly rediculous proposition. See <u>Lyons v. Mendez</u>, 303 F.3d 289 (3d Cir. 2002)("Because the CCCA contained no effective-date provision governing the entire statute, the CCCA itself became effective upon enactment on October 12, 1984"). Therefore, the respondent parole commission was declared inoperable as of October 12, 1984, except for administrative "extensions" to address the very prerequisites needed to effectively clean-house and move on. Part of the cleaning-up extension was to make certain all "old-law" offenders received release dates <u>within</u> their applicable "guideline" range. If this court need further indication that the government's assertion in this regard itself is flawed, respectfully accord: **United States v. Schaffer**, 789 F.2d 682 (9th Cir.1986)(same); Petitioner's "<u>Motion To Amend Petition</u>" (first amendment) at 11, citing i.e. **United States v. O'Niel**, 11 F.3d 292, 298 (1st Cir.1993) n.5 ("Most existing provisions (chapt.II) were repealed in <u>1984</u> as part of the Sentencing Reform Act."); but more recently see **MEMORANDUM AND ORDER RE: UNITED STATES SUPREME COURT'S DECISION IN <u>BLAKELY V. WASHINGTON</u>** (July 26, 2004)(Gertner, J.) where Judge Gertner explicitly confirms the effective date of the Parole Commission's demise: "Looking only at the cases before me, I conclude that since the Federal Sentencing Guidelines are unconstitutional according to the <u>pre-1984</u> system." <u>id</u>. at 37. With that resolved, petitioner moves on.

15. In their response, the government concedes by indirect conveyance

14.

that the primary reason Angiulo is not amenable to § 235 (b)(3)'s <u>original</u> enactment is because his crimes (including his §371 conspiracy) were "completed" prior to the "October 12, 1984" ---- "efective date." Not only are respondents all over the road with their interpretation of the SRA and it's operative provisions, in sum, it is difficult to pin-down what their central premise in law actually is that this court could base any rejection in dismissing Angiulo's colorful and significant claims. They press on the petitioner's crimes being committed prior to § 235 (b)(3)'s enactment date of October 12, 1984, however, <u>concede</u> as to his "coconspirators" indictments issued on April 17, 1986 and July 15, 1986. Specifically, they claim the subsequent Angiulo Gambling Enterprise indictments fail to place petitioner ".... within the perview of § 235 (b)(3). Opp. at 23, however, referring to the principles in those four indictments as:

- ------ "to the indictments against coconspirators";
- ------ "petitioner and six co-defendant's" against "seven co-conspirator's" (Sept. 14, 1984);
- ------ "seven coconspirators indicted for the <u>same gambling-related offenses</u>" (April 17, 1986)(emphasis added);
- ------ "petitioner's brother and co-defendant, and three others were indicted in the District of Nevada." (July 15, 1986) *3/

---

3/ The government argues in their opposition at n.10 that the July 15, 1986 Nevada gambling indictment is "unrelated" to the indictments returned in Massachusetts, however, this is another mischaracturization of the facts. Attached as <u>Exhibit-4</u> is the Nevada indictment in full text clearly establishing a 18 USC § 371 <u>overarching</u> conspiracy between all four indictments against the Angiulo Gambling "Enterprise". Same players, means and object, with respondent

15.

16. Petitioner's claim as to the presence of the indisputable Angiulo Gambling Enterprises overarching conspiracy spanning through the effective date of the original enactment of § 235(b)(3), and therefore "annexing" his crimes to that provision is convincingly addressed in his <u>Motion To Amend Petition</u> dated June 29, 2004, § C-II ¶¶ 15, 16, <u>Conspiracy Overlap/Degree Of Overlap</u>, now pending before the court. Respondent's position simply makes no sense.

17. Unwittingly, the government argues Angiulo's case for him, accord: n.9 at pg. 20 Opposition ----

> "The Sentencing Reform Act's abolition of parole creates substantial questions under the <u>ex post facto</u> clause of the Constitution. The SRA provides that a person convicted after November 1, 1992, of a crime committed before November 1, 1987 <u>is entitled to parole consideration</u>." <u>Id</u>.

The November 1, 1992 date here is meaningless as to Angiulo because the government chose a more contemporary historical note. What is meaningful as to petitioner's entitlement to parole is the implementing note in the <u>original</u> enactment of § 235 which stated under <u>Sect. 225</u> "effective date", the November 1, 1992 date refers to the initial "5 year period" that most of the old-law inmates will be released within, (not outside) confirming that § 235(b)(3) was

---

3/ cont.
explicitly attributing them as "the same <u>gambling-related</u> offenses." <u>supra</u>. (This court must agree that throughout its opposition, the government's arguments become at times bizarre.)

16.

specifically enacted for those like petitioner who would not be released within the first 5 year period. (See Exhibit-3, first Motion To Amend). Even more specifically related to this argument is footnote no. 430 of the Senate Report - 98-225 which the government has conceded pursuant to the rules of civil procedure for failure to deny. Note 430 explicitly describes the Senate's "intention" that petitioner would receive a release date, and one within his "guidelines". Moreover, the Senate directed that Angiulo receive a date "within" the "new sentencing guideline" provided it was lower than the minimum parole guideline, which it is. (supra at Exhibit-3, pg. 189). The court should agree that note 430 enacts a binding clause with the operational mechanics of the provision. See **Blacks Law Dictionary**, seventh edit. 1999: Clause -- "1. A distinct section or provision of a legal document or instrument." at 243.

18. Attached herewith as Exhibit-5 is a case document from Lyons, supra. In this exhibit Mr. Lyons concisely removes any interpretive ambiguity as to § 235 (b)(3) for the Appellate panel reviewing the question of the provisions effective date. It is urged that this court agree with the plain meaning analytical conclusion that the exhibit fosters.

## CONCLUSION

19. In sum, this court should agree with the issues petitioner advances. It cannot be conclusively established that petitioner's parole determinations were appropriate given the facts that:

17.

i. ---- notwithstanding the imminent determination that the U.S. Parole Commission Rules & Procedures Manual, §§ 2.19 and 2.20 having been invalidated under Blakely, petitioner's hearing and parole decision to expiration is not supported. (Exhibit-6).

ii. ---- petitioner's placement into Category Eight is arbitrary and unlawful.

iii. ---- there are in fact expressly implied upper-end or upper-limit ranges under Category Eight and the respondent did not possess the statutory authority to re-invent Angiulo's "Offender Characteristics" under §2.20 even under pre-Blakely standards. (Exhibit-6).

iv. ---- the government submits no convincing argument that petitioner's gambling enterprise conspiracy was not overarching under the law of the First Circuit. (First Motion To Amend) supra, therefore conceding petitioner's "crimes" as "annexed" to the original enactment of section 235 (b)(3) on October 12, 1984.

v. ----- the only "law of the case" conclusion in this matter is that the First Circuit declined to rule on Angiulo's relationship to the Patrizzi conspiracy and accessory charges because as they stated: "Gennaro was convicted on a number of separately charged substantive counts ...." that qualified the RICO conviction. 897 F.2d 1200, n.17. Therefore, no ultimate (law of the case) holding sanctioned Angiulo's alleged Patrizzi conspiracy and the Lenity Doctrine controls. With the subsequent exonerations of petitioner in the form of D.O.J. casefiles and Congressional testimonial evidence as to the Bennett murders, the Barboza murder placed at the hands of another individual, and the LaFreniere evidence never being proven by the government, petitioner cannot legally be held accountable with a Category Eight placement. Cf. Exhibit-6.

**WHEREFORE**, after consideration of all the facts now before this court, and following a proposed hearing to expand the record for good cause and further discovery under Federal Habeas Corpus Rule 6 (a) and (b) of specified and pertinent government files, this court should issue Angiulo's request for writ of habeas corpus, and release him from his unconstitutional constraint.

**Submitted This** 16 **Day of August, 2004**

Respectfully submitted,

*[signature: Gennaro Angiulo Pro Se]*
Gennaro Angiulo, pro se
#03583-016
Federal Medical Center/J-A
P.O. Box 879
Ayer, MA  01432

## CERTIFICATE OF SERVICE

I, Gennaro Angiulo hereby state that I have this 16 day of August 2004 mailed a true and complete copy of the foregoing to AUSA Ernest DiNisco, at the United States Attorneys Office, United States District Courthouse, 1 Courthouse Way, Boston, MA  02210. This will also certify that I have served AUSA DiNisco with a true and complete copy of my Motion For Hearing and Discovery Under Rule 6 (a) and (b) that was filed corresponding to this responsive pleading.

*[signature: Gennaro Angiulo - Pro Se]*
Gennaro Angiulo, pro se
Petitioner

cc. file

## ADDENDUM OF EXHIBITS

EXHIBIT-1 ---- Memorandum And Decision, Young, C.J. (9/12/84)

EXHIBIT-2 ---- "Summary" <u>Patrizzi Predicate Racketeering Acts</u>

EXHIBIT-3 ---- "Summary" <u>The LaFreniere Conspiracy To Murder</u>

EXHIBIT-4 ---- Nevada Indictment -- **United States v. Donato Angiulo** case no: CR-S-86-95.

EXHIBIT-5 ---- "Lyons Letter" to Third Circuit Clerk (2/20/02), and Docket Entry Sheet re: **Lyons v. Mendez**, no. 00-2822-(3rd. Cir)

EXHIBIT-6 ---- "Petitioner's Exhibit-6" and Parole Commission Rules and Procedures "Matrix".