

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
v.                       )    Criminal No. 83-235-WGY
                         )
DONATO F. ANGIULO, and   )
FRANCESCO F. ANGIULO     )

## MEMORANDUM OF DECISION

YOUNG, D.J.                         September 12, 1994

On April 3, 1986, the defendants Donato and Francesco
Angiulo ("the Angiulos") were sentenced by the Honorable
David S. Nelson upon convictions of racketeering and
racketeering conspiracy, as well as various gambling and
loansharking offenses, in connection with their membership
in the Patriarca Family of "La Cosa Nostra" (the "Enter-
prise"). On April 25, 1994, this Court[1] denied the
Angiulos' Motions for Reduction of Sentence pursuant to Fed.
R. Crim. P. 35. United States v. Angiulo, 852 F. Supp. 54
(D. Mass. 1994). That opinion, however, did not address
their motions for relief pursuant to Fed. R. Crim. P.
32(c)(3)(D). This opinion addresses these issues.

Rule 32(c)(3)(D) provides that:

If the comments of the defendant and the defend-
ant's counsel or testimony or other information
introduced by them allege any factual inaccuracy
in the presentence investigation report or the
summary of the report or part thereof, the Court
shall, as to each matter controverted, make (i) a

---

[1] The case was redrawn to this Court in 1992.

finding as to the allegation, or (ii) a determina-
tion that no such finding is necessary because the
matter controverted will not be taken into account
in sentencing.  A written record of such findings
and determinations shall be appended to and ac-
company any copy of the presentence investigation
report thereafter made available to the Bureau of
Prisons.

(emphasis added).  The Angiulos' presentence investigation

reports, in the Prosecution Version subsection, state, inter

alia, that all the defendants "were members of the Patriarca

Family of La Cosa Nostra (L.C.N.), a racketeering enterprise

in existence from November, 1966 through December, 1982

which engaged in various criminal activities, consisting of

multiple acts of murder, as well as loansharking, obstruc-

tion of justice, and the operation of four illegal gambling

businesses;" that "members of the Enterprise engaged in

crimes, including murder as a matter of duty, . . . to

protect the criminal businesses of the Enterprise . . .

[and its] members and associates. . . ;" and that the

racketeering acts committed as part of the Enterprise's

pattern of racketeering activities "included [four] murders

that were actually carried out as well as conspiracies to

murder two additional individuals." Defendant Donato

Angiulo's Rule 35 Reply, Exh. 2, at 2, 3 and Defendant

Francesco Angiulo's Rule 35 Reply, Appendix P.S.R., at 2,

3 (emphasis added).  Both the Angiulos, through their

attorneys, duly objected at the sentencing hearing on April

3, 1986, to the inclusion in their presentence investigation

reports of any mention of murder or conspiracy to commit

murder.  They argued that since neither of them were charged

or found guilty of acts of murder or conspiring to commit murder it was misleading and prejudicial to include any mention of murder in the reports. They now argue that Judge Nelson failed either to make the required findings or to rule that findings were unnecessary as to this alleged factual dispute pursuant to Rule 32(c)(3)(D).

The Angiulos' reliance on Rule 32(c)(3)(D), however, is misplaced. That subdivision of Rule 32 is exclusively concerned with alleged inaccurate "assertions of fact" in the presentence report. Notes of Committee on the Judiciary, House Report No. 94-247 (1983). The Angiulos, however, do not dispute the accuracy of the facts stated above. They are, in effect, only questioning the propriety of the inclusion of the Enterprise's murder activities in their reports. This is not a case, however, where "inaccurate factual inferences are likely to be drawn from the report's presentation of concededly accurate facts" as the defendants allege. United States v. Gomez, 831 F.2d 453, 454 (3d Cir. 1987). A fair reading of the reports does not suggest that the Angiulos were found guilty of murder, as they both argue, but instead accurately describes them as being convicted of participating in a criminal enterprise which itself condoned and promoted the use of murder to protect its interests.[2]

---

[2] It is undisputed that the Enterprise was involved in murder. Co-defendant Samuel S. Granito, for example, was found guilty of the predicate act of conspiring with, inter

Since the facts at issue are concededly true, there is no alleged "factual inaccuracy" subject to a required Rule 32(c)(3)(D) factual finding.[3] What is more, the inclusion of the Enterprise's murder activities is not misleading and is highly relevant to the sentencing of these two high-ranking members of an organized crime family of La Cosa Nostra. The defendants' Rule 32 Motions are, therefore, DENIED.

WILLIAM G. YOUNG
UNITED STATES DISTRICT JUDGE

---

alia, co-defendant Gennaro Angiulo to murder Angelo Patrizzi in order to protect two members of the Enterprise. See United States v. Angiulo, 897 F.2d 1169, 1177, 1200 (1st Cir.), cert. denied, 498 U.S. 845 (1990). In addition, the factual accuracy of the involvement of the Enterprise in the murders of Walter Bennett, William Bennett, and Joseph Barboza has not been challenged at sentencing, on direct appeal, see id. at 1177, or in the Rule 32(c)(3)(D) motions presently at issue.

[3] Although the First Circuit ruled in 1990 that there was insufficient evidence to support a finding that Granito was guilty as an accessory to the murder of Angelo Patrizzi, United States v. Angiulo, 897 F.2d at 1198, and the Angiulos, therefore, could have challenged the accuracy of those statements in the reports which list the Patrizzi murder as the fourth murder "committed" "as part of" or "in furtherance of" the Enterprise, the Angiulos did not raise this point in their Rule 32(c)(3)(D) motions filed in November, 1991, and January, 1992, respectively, nor do they raise it in their latest Request for Status Conference Regarding Defendants' Motions Pursuant to Rule 32(c)(3)(D). The Court now considers the objection waived. The Court notes that in any event striking the Patrizzi murder from the reports would still leave three remaining murders and two murder conspiracies listed in the reports which are factually unchallenged and not subject to any Rule 32(c)(3)(D) action.

4



## SUMMARY

## THE PATRIZZI PREDICATE RACKETEERING ACTS

In the predicate racketeering acts of conspiracy to murder, and accessory before the fact of murder of Angelo Patrizzi, (The Patrizzi charges) alleged against Gennaro Angiulo and Samuel Granito in the RICO Federal case in 1983, the jury following Judge Nelson's instructions did <u>not</u> render any verdicts.

On appeal, the First Circuit Court of Appeals held:

> "Applying this standard to the facts, we conclude that the evidence was <u>not</u> sufficient to find beyond a reasonable doubt that Simone was a principal in the murder of Patrizzi. It therefore follows that there was <u>insufficient</u> evidence to support a finding that Samuel Granito <u>was</u> an accessory before the fact."

(See Exhibit "A" attached hereto, <u>U.S. v. Angiulo</u>, 897 F.2d 1169-1198 (1st. Cir. 1990)).

Therefore, the defendants charged in the Federal trial, with the predicate racketeering act of accessory before the fact of the murder of Patrizzi, Granito and Angiulo were absolved of that predicate act.

In October of 1986, the District Attorney of Essex County in the Commonwealth of Massachusetts, at the insistence and with the assistance of the Federal Strike Force that prosecuted the Angiulo case, went before a State grand jury and obtained an indictment for conspiracy to murder and accessory before the fact of murder of Angelo Patrizzi identical to the already tried Federal charges in the RICO indictment with the same identical evidence against Angiulo and Granito.

Massachusetts Superior Court Judge Peter Brady was assigned to the case. The Essex

County Prosecutor, Assistant District Attorney Robert Weiner, prior to the trial stipulated to the fact that the evidence to be used in the state trial was identical to that used in the federal trial. Also, that the evidence at the state trial would be presented by the same Federal prosecutors who presented it in the Federal trial, A.U.S.A. Ernest DiNisco, acting as a State Assistant District Attorney in concert with A.U.S.A. James Farmer.

The defense filed a motion for dismissal of the entire indictment due to double jeopardy. Judge Brady denied it without prejudice, recommending that the defense should appeal to the Massachusetts Supreme Court for a decision prior to the state trial.

On June 11, 1987, the Massachusetts Supreme Court dismissed the conspiracy to murder charge against Angiulo and Granito, which was after the P.S.R. was presented on March 12, 1986, and sentencing on April 3, 1986 in the Federal RICO case.  (See Exhibit "B" attached hereto, Commonwealth v. Angiulo, 615 N.E. 2d 155 (Mass. 1993); 415 Mass. 502).

The defense then filed a motion stating that by the Strike Force's own admission during the federal trial, the taped conversations were inaudible and unintelligible.  Their reasons in their motion to unseal the tapes prior to the Federal trial, before Federal Judge Arthur Garrity were:

> "That in their present condition the tape recorded conversations which occurred at 98 Prince Street in Boston were inaudible and unintelligible.  Also that in their present condition no Grand Jury could understand them to return an indictment and no Petite Jury would convict."

(See Exhibit "C" attached hereto, Motion to Unseal 6/22/81, paragraphs 2 and 4.)

The motion also incorporated the fact that the transcripts were plagued with inaccuracies, and as they were not evidence, the government should not be allowed to use them to assist the jury in listening to the tapes, as they had requested.  As to the tapes, they were also cryptic and

should be suppressed.

Judge Peter Brady, after many court sessions devoted entirely to the motion to suppress the taped conversations and not allow the use of the inaccurate transcripts, took the motion under advisement. The taped conversations with the accompanying transcripts amounted to 47 tapes to be played to the jury. The next day Anthony M. Cardinale, defense lawyer, informed Judge Brady that the government was withdrawing 40 of the taped conversations because of inaudibility reasons. (See Exhibit "D" attached hereto, Trial Transcript dated November 13, 1987).

Judge Brady then held that he would re-review the remaining 7 tapes, and needed more time, as they were, as the Strike Force had admitted, most times inaudible and unintelligible. He also stated that in listening to the tapes he had heard conversations not on the transcripts and read statements on the transcripts that were not on the taped conversations. On July 2, 1987, Judge Brady issued "Memorandum of Decision and Order on Defendant's Motions to Exclude Tapes and to Prohibit Use of Transcripts."

> "The authenticity of the transcript is not in question and I find it to be authentic. However, it's accuracy is more dubious. While listening to the recordings and reading along with the transcript I found words and phrases which I heard clearly were not included in the transcript. It is therefore ordered that the defendants motion to exclude tapes be denied and defendants motion to prohibit use of transcripts be Allowed."

(See Exhibit "E" attached hereto. Page 6, 3-7, Page 7).

The State Patrizzi indictment, of accessory before the fact of murder, was tried with only Angiulo on trial after Granito became ill and was severed from the case. The verdict was guilty. Gennaro Angiulo appealed to the Massachusetts Supreme Court on January 5, 1993. On June 11, 1993, the Massachusetts Supreme Court completely overturned the jury verdict, and the case was

3

remanded for a new trial. This order became final 28 days later on July 9, 1993. Under Rule

36(b)(1)(D) of the Massachusetts Rules of Criminal Procedure, Angiulo's retrial was to

commence within one year, or by July 9, 1994. The Commonwealth simply refused to move the

case forward, and on July 10, 1994, according to Massachusetts Law under Rule 36 (b)(1)(D),

the case became moot and the indictment was automatically dismissed. (See Exhibit "B",

Commonwealth v. Angiulo, 615 N.E. 2d 155 (Mass. 1993); 415 Mass. 502).

On September 2, 1994, 56 days after the case and indictment had been automatically

dismissed, Assistant State District Attorney Robert Weiner filed a "Nolle Prosequi" of the case

Commonwealth v. Gennaro Angiulo, Superior Court Criminal No. 11525, the Patrizzi Indictment,

knowing full well that the time limit, (1 year to retry) had been made to run out. A speedy trial

motion under the Interstate Detainers Act, calling for Angiulo to be tried within 180 days of July

9, 1993 was on file at all times and Assistant District Attorney Weiner chose not to retry Angiulo

on time, which then called for dismissal of the indictment due to being denied a speedy trial (See

Exhibit "H").

On April 25, 1994, Federal District Judge William G. Young, 75 days before the

expiration date for Angiulo's retrial (July 9, 1994), in a Memorandum and Order (re: Angiulo's

Federal Rule 35(b) motion) gave fair warning to and reminded the Essex County Assistant

District Attorney Robert Weiner that time was running out under Rule 36 (b)(1)(d) of the

Massachusetts Rules of Criminal Procedure for Angiulo to be tried within one year, on the

accessory before the fact of murder case overturned by the Massachusetts Supreme Court:

> "Significantly, Gennaro Angiulo's conviction on this charge was
> reversed in Commonwealth v. Angiulo, 415 Mass. 502 (1993) but the
> Commonwealth appears not to have commenced proceedings to retry

4

him on this charge."

(See Exhibit "F" attached hereto, Judge William J. Young's Memorandum and Order dated April

25, 1994, page 14, footnote #12, pages 14-18.)

As the reasons for the "Nolle Prosequi", Robert Weiner, First Assistant District Attorney

stated:

> "Judge William Young of the Federal District Court in Boston has
> denied a motion to reduce the defendant's sentence. Young, J. Has
> acknowledged that for all practical purposes [this is a] life sentence
> without hope of parole. Retrying this indictment in light of the above
> reality would be an unnecessary drain on Commonwealth resources
> and is not in the interest of justice."

(See Exhibit "G" attached hereto).

Nothing could be further from the truth. To commence with, Judge Young had never held

in his Order that for all practical purposes [this is a] life sentence without hope of parole. In fact,

the defendant's themselves argued that given their present ages (Gennaro 75, Donato 71,

Francesco 73) and the length of time yet to serve on these severe sentences, they are for all

practical purposes, "Life sentences without hope of parole", at their Rule 35(b) motion for a

reduction of sentence. (See Exhibit "F", Order dated April 25, 1994, pages 14-18 attached

hereto.)

On September 19, 1994, Gennaro Angiulo filed a motion in the Commonwealth of

Massachusetts Essex Superior Court:

> "Defendant's Opposition to the Government's "Nolle Prosequi;"
> Motion to Dismiss with Prejudice for Lack of Speedy Trial and
> Motion to Recall the Detainer."

Angiulo stated in paragraph 3:

5

> "Under Rule 36(b)(1)(D) of the Massachusetts Rules of Criminal Procedure, the defendant's retrial was to commence within one year, or by July 9, 1994, unless there was a period of excludable delay. There has been no period of excludable delay in the case at bar since the Supreme Judicial Court's Order. The Commonwealth simply refused to move the case forward. The defendant has always demanded his rights to a speedy trial. See the previously filed attachments hereto."

(See Exhibit "H", Opposition to Government's "Nolle Prosequi" dated September 19, 1994.)

Angiulo also filed a motion in opposition and for correction of the stated reasons, by Assistant District Attorney Weiner, for the "Nolle Prosequi", and requested that the indictment be dismissed without prejudice and that the State detainer, still outstanding, with the Federal Bureau of Prisons be recalled. The detainer, which should have been recalled on July 9, 1994, was recalled, but Assistant District Attorney Weiner chose not to answer the motion in opposition to the reasons for the "Nolle Prosequi" and to this day has not even attempted to correct the reasons. All the motions filed in reference to the "Nolle Prosequi" are still unanswered and outstanding as of this date.

Assistant District Attorney Weiner, in an interview, by David Liscio "Item Staff Reporter", for the Lynn, Massachusetts newspaper, "Daily Evening Item", on September 22, 1994, 17 days after the "Nolle Prosequi" date, unconsciously revealed the true reasons for the "Nolle Prosequi" of Angiulo's Patrizzi indictment, Criminal No. 11525. Assistant District Attorney Weiner emphatically stated in the interview that:

> "Anthony Cardinale (Angiulo's attorney) can't get a retrial or a court dismissal, because the case no longer exists. He'd have to go before the Grand Jury and get his client reindicted. The District Attorney's decision is final. We are not retrying him. That's the bottom line. How will the "Nolle Prosse" affect Angiulo's chances for parole? We don't have anything to do with the Parole Board."

6

In answering the parole board question, Assistant District Attorney Weiner well knew that any parole board, federal or state, would absolutely take his stated reasons for "Nolle Prosequi" of Angiulo's Patrizzi charges into consideration at his parole hearing, and that the reasons he presented for "Nolle Prosequi" in their false form would be very detrimental to Angiulo, at any parole hearing. He has been repeatedly asked and reminded to answer the outstanding motions and his answer was that the case is moot by "Nolle Prosequi". The fact that the case did not exist after July 9, 1994 according to Massachusetts law does not phase him, and he insists on leaving the unrequired "Nolle Prosequi" as is.

For Assistant District Attorney Weiner to state to David Liscio that "The District Attorney's decision is final. We are not retrying him that's the bottom line", is a definite admittance that the Angiulo indictment had been automatically dismissed with prejudice, as there was, as Angiulo stated in his motion, insufficient evidence for a retrial. His statement "the case no longer exists" also proved that the case did not exist prior to September 2, 1994, the "Nolle Prosequi" date. (See Exhibit "I", David Liscio Interview dated September 22, 1994.)

In light of these new revelations and updating of new evidence and facts in the Patrizzi state case, Angiulo respectfully requests that his Case Manager, Ms. Jill Jacobson at the F.M.C. Ft. Worth, Texas, under Sellers v. U.S. Bureau of Prisons, 959 F.2d 307 (D.C. 1992) and Privacy Act, 5 U.S.C. §552a(e)5 and (g)(1)(c) (Holding agencies have duty to maintain current and accurate file information) and also 552 a(d) and (g)(1)(A) (Holding agencies have duty to amend inaccurate files), to ask the Kevin Burke, District Attorney of Essex County, Commonwealth of Massachusetts, to recall for removal, from Angiulo's federal file the unnecessary "Nolle Prosequi", of the case that did not exist as of September 2, 1994, at the time it was reported to

7

the Federal Bureau of Prisons, the U.S. Parole Commission and Angiulo's case manager at the Ft. Worth F.M.C. Of utmost importance for the "Nolle Prosequi" to be recalled is the fact of Assistant District Attorney Weiner's misquote of Judge Young's Order. Judge Young never held that Angiulo, "For all practical purposes this is a life sentence without hope of parole." The misquote insinuates that Judge Young held that Angiulo should not be paroled. It is inaccurate and must be corrected. The actual reason for the "Nolle Prosequi", if there must be given one, 1) failure to retry on time, 2) insufficient evidence for accessory before the fact of murder, quoting the decision held in <u>Angiulo, supra</u>, 1990, and, 3) failure to retry within 180 days under the speedy trial act. These reasons should be submitted for a dismissal <u>with prejudice</u> of the Commonwealth of Massachusetts Criminal Case No. 11525, the Patrizzi indictment regarding Angiulo.

In footnote #12 in "Memorandum and Order" of April 25, 1994, Judge Young acknowledges that the Patrizzi indictment in the Commonwealth of Massachusetts Essex County had been completely overturned by the Massachusetts Supreme Court in 1987 and 1993 and voices his opinion as to why the Essex County District Attorney has not commenced proceedings to retry him on this charge.

> "Apparently, it is the view of the appropriate Commonwealth officials that the matter does <u>not</u> warrant further expenditure of prosecutorial resources in view of this lengthy federal prison sentence.

This opinion was adopted by Robert Weiner, Assistant District Attorney and substituted for the real reasons for "Nolle Prosequi" of the Patrizzi indictment. (See Exhibit "F" attached hereto, Judge Young's Memorandum and Order dated April 25, 1994, page 14, footnote #12)

The seriousness of the misquoting of Judge Young's Memorandum and Order, in the

8

reasons for "Nolle Prosequi", by Assistant District Attorney Robert Weiner is best explained by a

recent hearing by a Federal Parole Board reviewer, Ronnie M. Scotkin, on February 6, 1996

regarding codefendant Francesco Angiulo.  Francesco was eligible for parole in December of

1994, after 100 months of a 300 month sentence, he was denied, and given a second hearing (2

years later) in February of 1996.  In his evaluation review on February 6, 1996, paragraph four

(4), Mr. Scotkin stated:

> "Mr. Francesco Angiulo's attorneys also make the argument that all
> charges against Francesco Angiulo's codefendant, Gennaro Angiulo,
> for conspiracy and accessory before the fact of murder were "nolle
> prossequi" with prejudice in Massachusetts.  As the document
> provided by the defense attorneys clearly shows, the case was not
> prossed because Gennaro Angiulo, who was 75 years of age at that
> time, was serving a federal sentence aggregating to 45 years in prison
> and to prosecute him 'would be an unnecessary drain on
> Commonwealth resources and is not in the interest of justice'."

(See Exhibit "J" attached hereto.)

Mr. Scotkin misread whose reasons were used for the "Nolle Prosequi" in the document

provided by Francesco's attorneys.  They were not the Commonwealth's or Assistant District

Attorney Weiner's reasons, instead Assistant District Attorney Weiner was misquoting, for the

reasons, from a Memorandum and Order by Judge Young on April 25, 1994 regarding Gennaro's

motion under Rule 35(b) for a reduction of sentence.  As one can readily read in the

Memorandum and Order, Gennaro himself brought up the age factor of 75.  As to the

unnecessary drain on the Commonwealth's resources, Judge Young, not the Commonwealth nor

Assistant District Attorney Weiner, opined in footnote #12, page 14 that maybe the reason for not

retrying Gennaro yet, was:

> "Apparently, it is the view of the appropriate Commonwealth Officials

9

that the matter does not warrant further expenditure of prosecutorial resources in view of his lengthy prison sentence."

In voicing this opinion, Judge Young had reviewed U.S. v. Angiulo, (1990) supra, wherein the First Circuit Court of Appeals had held unanimously that there was insufficient evidence for a finding of guilt in the accessory before the fact of murder in the Patrizzi predicate act and the jury had not rendered a verdict obviating that they found the act not guilty with the same evidence as in the Commonwealth's case.

The parole board, using these misquoted reasons regarding The Patrizzi "Nolle Prosequi" continued Francesco to expiration, meaning that after 10 years and 3 months of perfect conduct in jail, he must do four more years. It is now glaringly apparent as to how detrimental the misquoted reasons advanced by Assistant District Attorney Weiner, for the "Nolle Prosequi" of the state Patrizzi indictment, are to Gennaro Angiulo for his parole purposes. Therefore, Gennaro Angiulo reiterates, that he respectfully requests that his case manager at the F.M.C. Ft. Worth, Texas 76119, Miss Jill Jacobson send a letter to Mr. Kevin Burke, District Attorney for Essex County in the Commonwealth of Massachusetts, c/o District Attorney's Office, 70 Washington Street, Salem, Massachusetts 01970, asking the Essex County District Attorney to answer the motion for a dismissal with prejudice (regarding Criminal Case No. 11525 Essex County) filed September 19, 1994 in the Superior Court for the County of Essex, or recall the unnecessary "Nolle Prosequi" in its entirety from the Bureau of Prisons, the U.S. Parole Commission, and Angiulo's central prison record file at F.M.C. Ft. Worth. In the alternative, I ask that this invalid information be stricken from the files as a matter of law, in accordance with the strict mandates of the Federal Courts concerning these very issues.

10

It is axiomatic that valid punishment cannot be predicated upon false information. A sentence based upon unrebutted information that was "extensively and materially false" violates due process. Townsend v. Burke, 334 U.S. 736, 741 (1948). Thus, a defendant retains the right not to be punished on the basis of invalid facts. United States v. Espinoza, 481 F.2d 553 (CA5 1973). In the case of the "Nolle Prosequi", any reference to it is forbidden because the case itself is invalid, and does not exist to support such a reference. Accordingly, an appellate court has ordered resentencing because of inaccuracies in the PSR, even where the trial judge stated that he would have imposed the same sentence regardless of such inaccuracies. See, United States v. Battaglia, 478 F.2d 854 (CA5 1972).

The Parole Commission may not consider specific conduct in evaluating the prisoner's offense severity rating when the jury has acquitted the prisoner for the same conduct, because the jury has necessarily determined that the prisoner did not engage in that conduct. Ceniceros v. United States Parole Commission, 837 F.2d 1358, 1361 (5th Cir. 1988). In the issue presented, the federal jury declined to return a verdict on the same issues surrounding the state "Nolle Prosequi" at issue. The fact that the petitioner is being punished based upon an invalid case is shocking to one's sense of justice. The Parole Commission must rebut the allegations that it relied on murder charges for which the petitioner was acquitted. Joost v. United States Parole Commission, 698 F.2d 418, 419 (10th Cir. 1983).

The most consistently reversible error arises from inclusion of an offender's prior conviction in a presentence report where such conviction was legally invalid or factually nonexistent. So prejudicial a factor is reference to erroneous prior conduct, that the Fifth Circuit required sentencing despite the fact that the defendant only received a five year sentence out of a

11

possible seventy year maximum.  Haynie v. United States, 474 F.2d 1051 (5th Cir. 1973).

The "Nolle Prosequi" at issue is by its very nature legally invalid and factually nonexistent, and an adverse party should not be allowed to rely upon it as a basis of enhanced punishment.

Respectfully submitted,
Pro Se

Gennaro Angiulo
Reg. No. 03583-016
FMC Fort Worth - Dallas Unit
3150 Houton Road
Fort Worth, Texas 76119-5996

12



1          THE LaFRENIERE CONSPIRACY TO MURDER

2          The predicate racketeering act of conspiracy to murder Walter

3    LaFreniere spawned from, Count #18 obstruction of Justice in vio-

4    lation of T 18 U.S.C. #1503 and Count #19 Conspiracy to Obstruct

5    Justice in violation of T 18 U.S.C. 371. The evidence consisted

6    entirely of one government wire tap tape recording #268, enhancment

7    #397, recorded on 3 - 19 - 81 at 98 Prince St. Boston, Mass.. After

8    many reviews of this tape recording the Boston Federal Strike Force

9    on 6 - 22 - 81 filed a "Motion To Unseal", the tapes, prior to

10   trial, so as to enhance them, stating as their reason to unseal,

11   in the motion, at paragraph #2 Line #8:

12              "It also appears that some of the significant
                conversations intercepted are so inaudible as
13              to make the tape recordings potentially inad-
                missable at trial"
14

15   and at paragraph #4 Line 1 - 3

16              "The government believes that it will be dif-
                ficult to prosecute and convict the targets of
17              this court's electrbnic surveillance orders un-
                less many of the original tape recordings are
18              enhanced"

19   ( See Exhibit " " Motion To Unseal Attached hereto ).

20   Tape recording #268 was enhanced and numbered as enhanced tape #397.

21   Many F.B.I. agents under the direction of Case Agent Edward Guinn

22   listened to the enhanced version of the tape and Case Agent Quinn

23   after listening to it and consulting all the other listening agents

24   wrote his final summary:

25              "Discussion between Jerry Richie & Peter Limone
                - You don't hear Peter at all but you hear Jerry
26              refer to one of the people in the room as Peter.
                This is the Walter Murder Tape, but the enhanced
27              (copy) does not help.
                    You can make out the right words for Jerry
28              but it will be tough for a jury"

-9-

1    ( See Exhibit " " Case Agent Quinn Summary )

2    The government refused to call Walter LaFreniere as a govt. witness

3    and in turn the defense called him as a defense witness. He testi-

4    fied that he had never met or spoken to Gennaro Angiulo and when

5    asked if he ever felt that his life had been placed in jeopardy he

6    replied "yes" , when F.B.I. Case Agent Quinn in the Angiulo case,

7    incarcerated him in the New Hamphshire State Prison for contempt

8    of court in the Angiulo case for taking the fifth Amendment and

9    refusing to testify. He also testified that Quinn came to see him

10   in the New Hampshire State Prison and questioned him as to any

11   knowledge he had of Gennaro Angiulo and when he insisted he did

12   not even know Gennaro Angiulo, Quinn left, disturbed. The next

13   day U.S. Marshalls picked him up and explained that he was being

14   transported to a prison in New York with all felons due to his

15   refusal to answer Quinn. He stated, "that's when he had fear for

16   his life."

17   ( See Exhibit " " attached hereto trial transcript Jan. 22, 1986

18   Day 114 p. 104 )

19       The actual underlying basis for the charge of conspiracy to

20   murder Walter LaFreniere was given as an attempt by Gennaro Angiulo and

21   Attorney William Cintolo to have Walter LaFreniere commit perjury

22   before a grand jury. There was no testimony of threats or any acts

23   of violence whatsoever involved, and other evidence was not essen-

24   tial to the charge, nor would all the evidence have been relevant

25   to a conviction of conspiracy to murder Walter LaFreniere. The

26   jury after listening to  the enhanced tape No. 397; following the

27   instructions of Judge Nelson did not return a verdict, obviating

28   that they found the LaFreniere racketeering act of conspiracy to

-10-

1  murder <u>not</u> <u>guilty</u> ( See Exhibit " " U.S. vs Cintolo 818 F 2nd
2  980 - 985 ( 1st Cir. 1987 )
3
4                    *Gennaro Angiulo Pro Se*
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28