

James Lyons 02810-070
FCI Allenwood - Unit 3B
Box 2000
White Deer PA 17887-2000

February 20, 2002

Ms Marcia M. Waldron, Clerk
Office of the Clerk
U.S. Court of Appeals
For the Third Circuit
21400 U.S. Courthouse
601 Market St
Philadelphia PA 19106-1790

　　　In re: James Lyons v. Jake Mendez, et al.
　　　　　　 Docket No. 00-2822 (3rd Cir.)
　　　　　　 Letter under FRAP 28(j)

Dear Ms. Waldron:


　　　I have enclosed an original and 3 copies of this letter
and request that it be forwarded to the appellate panel
which currently has the full briefing.

　　　I am writing this because I dont' feel that I explained
a critical point clearly enough, and there is no doubt in
my mind that once this point is understood, the court will
decide this case in my favor.

　　　The main issue is whether § 235(b) of Chapter II of
the Comprehensive Crime Control Act of 1984 was in effect
October 12, 1984, the date of enactment.  Section 235 was
the "Effective Date" provision of Chapter II, the Sentencing
Reform Act of 1984.  There is no dispute that § 235(a) went
into effect October 12, 1984.  If § 235(b) was in effect
October 12, 1984, then it was in effect on the date of my
1986 offense, and § 235(b)(3) mandated my release on parole
within my 100-148 month parole guideline range.  I served
the 148th month in August 1998.

　　　The government's position, like the District Court's
below, is that § 235(a) was in effect October 12, 1984,
but § 235(b) was not among exceptions listed in § 235(a)
as being in effect October 12, 1984 - so § 235(b) was not
in effect until November 1, 1987.  The government's
argument is that the language is unambiguous, "and in the

- 1 -

absence of a contrary legislative intent, the language is controlling." Appellee's Brief, p. 11.

The legislative intent establishes that § 235(b) was in effect October 12, 1984. Of course, the Second, Seventh, and Tenth Circuit Court of Appeals have all held that § 235(b) was in effect October 12, 1984 - contrary to the government's position that it was not in effect until November 1, 1987. This is explained in both my Opening Brief and in my Reply Brief. The government's position can not possibly be correct, for a number of reasons which are set forth in the briefs I submitted. I wrote a letter to this panel dated October 17, 2001, and tried to explain the one point of law which makes it indisputable that § 235(b) went into effect October 12, 1984. I left a couple of important points out.

In Romano v. Luther, 816 F.2d 832, 839 (2nd Cir. 1987), Peter Goldberger's briefing convinced that court that Congress did not intend the fragmented reading of § 235 now being advocated by the government, and held that § 235(b) was in effect on the date of enactment, October 12, 1984. That court made that determination without the benefit of what has to be the clearest evidence in existence that its ruling is correct.

The reason it is indisputable that § 235(b) was also in effect October 12, 1984, is because of the absurd result that would occur between § 235(a)(1)(A) and § 235(b)(1)(E), which no court has recognized to date.

As the "Historical and Statutory Notes" to Chapter 402 of title 18 explain (see Addendum, p. 10, annexed - from Opening Brief), § 235(a)(1)(A) repealed Chapter 402 of title 18 (18 U.S.C. §§ 5005 to 5020), the Youth Corrections Act, effective immediately on October 12, 1984. See Addendum, pp. 4, 10-12, annexed hereto. Section 5017 of title 18 provided the Parole Commission with the authority to release YCA offenders on parole, while sections 5018 and 5020 of title 18 provided the Commission with the authority to revoke the parole of YCA offenders.

However, Congress utilized § 235(b), directly at issue in this case, to retain these parole release and revocation statutes of the YCA in effect immediately - beginning October 12, 1984 - under § 235(b)(1)(E). See Addendum, pp. 5, 10-12 (§ 235(b) retaining 18 U.S.C. §§ 5017 to 5020 in effect October 12, 1984 to October 31, 1987).

If § 235(b) was not in effect until November 1, 1987, as the District Court below held, then the U.S. Parole Commission acted without lawful authority in paroling and

in revoking the parole of many YCA offenders from October 12, 1984 to October 31, 1987. That authority derived solely from § 235(b)(1)(E). Again, any other construction of § 235 would mean that the U.S. Parole Commission acted illegally from October 12, 1984 to October 31, 1987. This is as obvious as one's hand in front of their face.

It would be totally absurd that Congress would include both § 235(a)(1)(A) and § 235(b)(1)(E) in the same chapter, directly interrelate them in a fashion so that both had to be in effect October 12, 1984, and intend that they go into effect on different dates. This soundly defeats the government's position that § 235(b) was not in effect until November 1, 1987.

This provides the irrefutable evidence the Congress framed the Act's "Effective Date" provision, with the intent that it be in effect on the date of enactment, October 12, 1984, as a whole. Again, there is no dispute that § 235(a) was in effect October 12, 1984, and now there can not be any dispute that § 235(b) was in effect October 12, 1984. This is also squarely supported by Senate Report 98-225, which Congress adopted in enacting these laws, and which has been previously explained in my briefings.

I hope this will assist you in rendering the correct decision. I also hope that a decision is forthcoming soon, as I have already spent over 3½ years in prison beyond the August 1, 1998 release date I was entitled to under the version of § 235(b)(3) that was in effect on the date of my 1986 offense. I am sure you can understand my concerns.

Thank you for your time and consideration.


Sincerely,




cc: Mary Catherine Frye, AUSA
    file

PUBLIC LAW 98–473—OCT. 12, 1984          98 STAT. 2031

(2) in subsection (g)(3), by adding ", supervised release," after "parole", and by adding "supervised release," after "parole,".

SEC. 229. Section 504(a) of the Labor Management Reporting and Disclosure Act of 1959 (29 U.S.C. 504(a)) and section 411(a) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1111(a)) are amended— *Post, p. 2131.*

(a) by deleting "the Board of Parole of the United States Department of Justice" and substituting "if the offense is a Federal offense, the sentencing judge or, if the offense is a State or local offense, on motion of the United States Department of Justice, the district court of the United States for the district in which the offense was committed, pursuant to sentencing guidelines and policy statements issued pursuant to 28 U.S.C. 994(a),"; *Ante, p. 2019.*

(b) by deleting "Board" and "Board's" and substituting "court" and "court's", respectively; and

(c) by deleting "an administrative" and substituting "a".

SEC. 230. Section 411(c)(3) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1111(c)(3)) is amended by adding "or supervised release" after "parole".

SEC. 231. Section 425(b) of the Job Training and Partnership Act is amended by deleting "or parole" the first place it appears and substituting ", parole, or supervised release". *29 USC 1695.*

SEC. 232. The Public Health Service Act (42 U.S.C. 201 et seq.) is amended as follows:

(a) Section 341(a) (42 U.S.C. 257(a)) is amended by deleting "or convicted of offenses against the United States and sentenced to treatment" and "addicts who are committed to the custody of the Attorney General pursuant to provisions of the Federal Youth Corrections Act (chapter 402 of title 18 of the United States Code),".

(b) Section 343(d) (42 U.S.C. 259(d)) is amended by adding "or supervised release" after "parole".

SEC. 232A. Section 902 of the Federal Aviation Act of 1958 (49 U.S.C. 1472) is amended by inserting "notwithstanding the provisions of 18 U.S.C. 3559(b)," before the term "if" in paragraphs (i)(1)(B) and (n)(1)(B). *49 USC app. 1472.*

SEC. 233. Section 11507 of title 49, United States Code, is amended by adding ", supervised release," after "parole".

SEC. 234. Section 10(b)(7) of the Military Selective Service Act (50 U.S.C. App. 460(b)(7)) is amended by deleting "parole" and substituting "release".

### EFFECTIVE DATE

SEC. 235. (a)(1) This chapter shall take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment, except that— *18 USC 3551 note.*

(A) the repeal of chapter 402 of title 18, United States Code, shall take effect on the date of enactment; *18 USC 5005 et seq.*

(B)(i) chapter 58 of title 28, United States Code, shall take effect on the date of enactment of this Act or October 1, 1983; whichever occurs later, and the United States Sentencing Commission shall submit the initial sentencing guidelines promulgated to section 994(a)(1) of title 28 to the Congress within eighteen months of the effective date of the chapter; and *Guidelines. Ante, p. 2017. Ante, p. 2019.*

(ii) the sentencing guidelines promulgated pursuant to section 994(a)(1), and the provisions of sections 3581, 3583, and 3624 of

98 STAT. 2032          PUBLIC LAW 98-473—OCT. 12, 1984

*Ante,* pp. 1998, 1999, 2008.
Report.

title 18, United States Code, shall not go into effect until the day after—

    (I) the United States Sentencing Commission has submitted the initial set of sentencing guidelines to the Congress pursuant to subparagraph (B)(i), along with a report stating the reasons for the Commission's recommendations;

    (II) the General Accounting Office has undertaken a study of the guidelines, and their potential impact in comparison with the operation of the existing sentencing and parole release system, and has, within one hundred and fifty days of submission of the guidelines, reported to the Congress the results of its study; and

    (III) the Congress has had six months after the date described in subclause (I) in which to examine the guidelines and consider the reports; and

*Ante,* p. 2030.

    (IV) the provisions of sections 227 and 228 shall take effect on the date of enactment.

*Ante,* p. 2018.

(2) For the purposes of section 992(a) of title 28, the terms of the first members of the United States Sentencing Commission shall not begin to run until the sentencing guidelines go into effect pursuant to paragraph (1)(B)(ii).

(b)(1) The following provisions of law in effect on the day before the effective date of this Act shall remain in effect for five years after the effective date as to an individual convicted of an offense or adjudicated to be a juvenile delinquent before the effective date and as to a term of imprisonment during the period described in subsection (a)(1)(B):

18 USC 4201 *et seq.*
18 USC 4161 *et seq.*

    (A) Chapter 311 of title 18, United States Code.
    (B) Chapter 309 of title 18, United States Code.
    (C) Sections 4251 through 4255 of title 18, United States Code.
    (D) Sections 5041 and 5042 of title 18, United States Code.
    (E) Sections 5017 through 5020 of title 18, United States Code, as to a sentence imposed before the date of enactment.
    (F) The maximum term of imprisonment in effect on the effective date for an offense committed before the effective date.
    (G) Any other law relating to a violation of a condition of release or to arrest authority with regard to a person who violates a condition of release.

(2) Notwithstanding the provisions of section 4202 of title 18, United States Code, as in effect on the day before the effective date of this Act, the term of office of a Commissioner who is in office on the effective date is extended to the end of the five-year period after the effective date of this Act.

Release date.

(3) The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

(4) Notwithstanding the other provisions of this subsection, all laws in effect on the day before the effective date of this Act pertaining to an individual who is—

    (A) released pursuant to a provision listed in paragraph (1); and

PUBLIC LAW 98-473—OCT. 12, 1984          98 STAT. 2033

(B)(i) subject to supervision on the day before the expiration of the five-year period following the effective date of this Act; or

(ii) released on a date set pursuant to paragraph (3);

including laws pertaining to terms and conditions of release, revocation of release, provision of counsel, and payment of transportation costs, shall remain in effect as to the individual until the expiration of his sentence, except that the district court shall determine, in accord with the Federal Rules of Criminal Procedure, whether release should be revoked or the conditions of release amended for violation of a condition of release.   *18 USC app.*

(5) Notwithstanding the provisions of section 991 of title 28, United States Code, and sections 4351 and 5002 of title 18, United States Code, the Chairman of the United States Parole Commission or his designee shall be a member of the National Institute of Corrections, and the Chairman of the United States Parole Commission shall be a member of the Advisory Corrections Council and a nonvoting member of the United States Sentencing Commission, ex officio, until the expiration of the five-year period following the effective date of this Act. Notwithstanding the provisions of section 4351 of title 18, during the five-year period the National Institute of Corrections shall have seventeen members, including seven ex officio members. Notwithstanding the provisions of section 991 of title 28, during the five-year period the United States Sentencing Commission shall consist of nine members, including two ex officio, nonvoting members.   *U.S. Parole Commission, Chairman. Ante, p. 2017.*   *National Institute of Corrections, members. U.S. Sentencing Commission, members.*

SEC. 236. (a)(1) Four years after the sentencing guidelines promulgated pursuant to section 994(a)(1), and the provisions of sections 3581, 3583, and 3624 of title 18, United States Code, go into effect, the General Accounting Office shall undertake a study of the guidelines in order to determine their impact and compare the guidelines system with the operation of the previous sentencing and parole release system, and, within six months of the undertaking of such study, report to the Congress the results of its study.   *Study. Report. 28 USC 994 note. Ante, p. 2019. Ante, pp. 1998, 1999, 2008.*

(2) Within one month of the start of the study required under subsection (a), the United States Sentencing Commission shall submit a report to the General Accounting Office, all appropriate courts, the Department of Justice, and the Congress detailing the operation of the sentencing guideline system and discussing any problems with the system or reforms needed. The report shall include an evaluation of the impact of the sentencing guidelines on prosecutorial discretion, plea bargaining, disparities in sentencing, and the use of incarceration, and shall be issued by affirmative vote of a majority of the voting members of the Commission.   *Report.*

(b) The Congress shall review the study submitted pursuant to subsection (a) in order to determine—   *Review.*

(1) whether the sentencing guideline system has been effective;

(2) whether any changes should be made in the sentencing guideline system; and

(3) whether the parole system should be reinstated in some form and the life of the Parole Commission extended.

SEC. 237. (a)(1) Except as provided in paragraph (2), for each criminal fine for which the unpaid balance exceeds $100 as of the effective date of this Act, the Attorney General shall, within one hundred and twenty days, notify the person by certified mail of his obligation, within thirty days after notification, to—   *Penalties. 18 USC 3612 note.*

(A) pay the fine in full;

# [CHAPTER 402—REPEALED]

## HISTORICAL AND STATUTORY NOTES

**Codification**

This chapter was repealed by Pub.L. 98–473, Title II, § 218(a)(8), Oct. 12, 1984, 98 Stat. 2027, effective Oct. 12, 1984, pursuant to section 235(a)(1)(A) of Pub.L. 98–473, set out as an Effective Date note under section 3551 of this title, with sections 5017 to 5020 subject to remain in effect as provided in section 235(b) of Pub.L. 98–473, set out as a Savings Provision of Pub.L. 98–473 note under section 3551 of this title. For sentencing guidelines required to take age into consideration as a factor, see section 994(d) of Title 28, Judiciary and Judicial Procedure.

# [§§ 5005, 5006. Repealed. Pub.L. 98–473, Title II, § 218(a)(8), Oct. 12, 1984, 98 Stat. 2027]

## HISTORICAL AND STATUTORY NOTES

Section 5005, added Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1086, and amended Mar. 15, 1976, Pub.L. 94–233, § 3, 90 Stat. 231, related to the making of youth correction decisions by the United States Parole Commission.

Section 5006, added Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1086, and amended May 15, 1976, Pub.L. 94–233, § 4, 90 Stat. 231, defined the terms used in this chapter.

**Effective Date of Repeal**

Sections repealed effective on Oct. 12, 1984, pursuant to section 235(a)(1)(A) of Pub.L. 98–473, set out as a note under section 3551 of this title.

# [§§ 5007 to 5009. Repealed. Pub.L. 94–233, § 5, Mar. 15, 1976, 90 Stat. 231]

## HISTORICAL AND STATUTORY NOTES

Section 5007, added Act Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1086, provided for meetings and duties of members of the Youth Correction Division.

Section 5008, added Act Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1086, provided for the appointment of officers and employees by the Attorney General.

Section 5009, added Act Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1086, provided for the adoption and promulgation of rules governing procedure by the Youth Correction Division.

**Effective Date of Repeal**

Repeal of sections effective on the 60th day following Mar. 15, 1976, see section 16(b) of Pub.L. 94–233, set out as a note under section 4201 of this title.

# [§§ 5010 to 5016. Repealed. Pub.L. 98–473, Title II, § 218(a)(8), Oct. 12, 1984, 98 Stat. 2027]

## HISTORICAL AND STATUTORY NOTES

Section 5010, added Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1087, and amended Mar. 15, 1976, Pub.L. 94–233, § 9, 90 Stat. 232, provided for the imposition of a suspended sentence or sentence to the custody of the Attorney General in the case of youthful offenders.

Section 5011, added Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1087, provided for the treatment of youthful offenders.

mar 29 05 11:08p    WILLIAM KENNEDY          701 284 8115    p.11
Case 4:04-cv-40041-FDS    Document 15-4    Filed 08/18/2004    Page 9 of 25
USCA3 Docket Sheet for 00-2822                                Page 1 of 6

 

# General Docket
## US Court of Appeals for the Third Circuit

Court of Appeals Docket #: 00-2822                    Filed: 9/26/00
Nsuit: 2530 Prisoner: Habeas Corpus
Lyons v. Mendez, et al
Appeal from: U.S. District Court for the Middle District of Pennsylvania

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

    District: 0314-3 : 98-cv-01828
    Trial Judge: Thomas I. Vanaskie, Chief Judge
    Date Filed: 11/6/98
    Date order/judgment: 9/6/00
    Date NOA filed: 9/15/00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: In Forma Pauperis

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Prior cases:
    None
Current cases:
| | Lead | Member | Start | End |
|---|---|---|---|---|
| Related: | 00- 2514 | 00- 2822 | 9/26/00 | 6/18/01 |

Docket as of December 4, 2002 4:01 pm              Page 1

_____

00-2822  Lyons v. Mendez, et al

JAMES LYONS                 James Lyons
    Appellant                [NTC pro]
                      11 Snake Hill Road
                      North Scituate, RI 02857


    v.

JAKE MENDEZ, Warden         Mary C. Frye
    Appellee                 FAX 717-221-2246
                      717-221-4482
                      [COR NTC gvt]
                      Office of United States
                      Attorney
                      Federal Building
                      228 Walnut Street
                      P.O. Box 11754

Harrisburg, PA 17108

US PAROLE COMM          Mary C. Frye
    Appellee            (See above)
                        [COR NTC gvt]

Docket as of December 4, 2002 4:01 pm          Page 2

---

00-2822  Lyons v. Mendez, et al

JAMES LYONS

            Appellant


    v.

JAKE MENDEZ, Warden; US PAROLE COMM

            Appellees

Docket as of December 4, 2002 4:01 pm          Page 3

---

00-2822  Lyons v. Mendez, et al

9/26/00         CIVIL CASE DOCKETED.  Notice filed by James Lyons. (clc)
                [00-2822]

9/26/00         RECORD, received. (clc) [00-2822]

9/26/00         MOTION and affidavit by Appellant James Lyons in 00-2822 to
                proceed in forma pauperis, filed. Answer due 9/25/00.
                Certificate of Service dated 9/12/00. (dg) [00-2822]

10/2/00         APPEARANCE from Attorney Dulce Donovan on behalf of Appellee
                Jake Mendez and US Parole Comm, filed.   **[APPEARANCE
                WITHDRAWN - 9/28/01]** (clc) [00-2822]

10/12/00        ORDER (Clerk) granting motion to proceed in forma pauperis
                by Appellant. Appeal will be submitted to a panel for
                Section 1915(e)(2) determination. The Court will also
                consider any other appropriate action, such as affirmance
                of the order of the District Court. See Third Circuit
                Internal Operating Procedure 10.6, filed. EPS-418 PANEL ID
                (dg) [00-2822]

10/12/00        Certified copy of order to Lower Court. (dg)
                [00-2822]

| 10/25/00 | MOTION by Appellant for appointment of counsel, filed. Answer due 11/6/00. Certificate of Service dated 10/23/00. (clc) [00-2822] |
|----------|----------|
| 11/16/00 | RESPONSE filed by Appellant James Lyons in opposition to possible dismissal of appeal pursuant to 28 U.S.C. 1915(e)(2), filed. Certificate of service dated 11/13/00. (clc) [00-2822] |
| 11/16/00 | Document titled "Brief of Appellant" by Appellant which the court may wish to construe as a response in opposition to this case being submitted for section 1915(e), filed. (clc) [00-2822] |
| 1/23/01 | MOTION by Appellant titled Motion for Release on Personal Recognizance which the court may wish to construe as a motion for bail pending appeal, filed. (clc) [00-2822] |
| 5/3/01 | MOTION by Appellant to expedite appeal, filed. (clc) [00-2822] |
| 7/11/01 | ORDER (Nygaard, Authoring Judge, Alito and Fuentes, Circuit Judges) The appeal is not dismissed as frivolous pursuant to 28 U.S.C. section 1915(e)(2)(B). The Clerk is hereby directed to issue a briefing schedule. Appellant's motions for appointment of counsel, for release, and for an expedited appeal are denied, filed. DPS-218 (clc) [00-2822] |

Docket as of December 4, 2002 4:01 pm                    Page 4

---

00-2822  Lyons v. Mendez, et al

| 7/11/01 | RECORD, filed. (clc) [00-2822] |
|---------|----------|
| 7/11/01 | BRIEFING NOTICE ISSUED. Appellant brief and appendix due 8/20/01. (clc) [00-2822] |
| 8/17/01 | PRO SE BRIEF on behalf of Appellant James Lyons. Pages: 28, Copies: 4, Delivered by mail, filed. Certificate of service dated 8/17/01. (gas) [00-2822] |
| 8/17/01 | PRO SE APPENDIX on behalf of Appellant James Lyons. Copies: 4, Volumes: 1, Delivered by mail, filed. Certificate of service dated 8/17/01. (gas) [00-2822] |
| 9/21/01 | MOTION by Appellee for extension of time to file brief construed as a motion to file brief out of time, filed. Answer due 10/3/01. Certificate of Service dated 9/20/01. (clc) [00-2822] |
| 9/28/01 | WITHDRAW OF APPEARANCE: attorney Dulce Donovan for for US Parole Comm and Jake Mendez withdrawing appearance. (clc) |

[00-2822]

9/28/01        APPEARANCE from Attorney Mary C. Frye on behalf of
               Appellees Jake Mendez and US Parole Comm, filed. (clc)
               [00-2822]

10/3/01        ORDER (Clerk) granting motion to file brief out of time by
               Appellees Jake Mendez and US Parole Comm with filing as of
               the date of this order, filed. (clc) [00-2822]

10/3/01        BRIEF on behalf of Appellees Jake Mendez and US Parole
               Comm. Pages: 21, Copies: 10, Delivered by mail, filed.
               Certificate of service dated 9/27/01. (gas) [00-2822]

10/4/01        REPLY BRIEF on behalf of Appellant James Lyons. Copies: 4,
               Delivered by mail, filed. Certificate of service dated
               10/4/01. ZZ#STRICKEN (gas) [00-2822]

10/11/01       Letter by Appellant James Lyons construed as a motion to
               file corrected reply brief, filed. Answer due 10/24/01.
               Certificate of Service dated 10/10/01. (gas)
               [00-2822]

10/15/01       MOTION by Appellant James Lyons to file amended reply brief,
               filed. Answer due 10/29/01. Certificate of Service dated
               10/11/01. (gas) [00-2822]

10/22/01       ORDER (Clerk) granting motion to file amended reply brief
               by Appellant James Lyons with filing as of the date of this
               order, filed. Appellant's reply brief which was previously
               filed on October 4, 2001 is hereby stricken. Appellant is
               advised that the prior reply brief will be destroyed. (gas)
               [00-2822]


Docket as of December 4, 2002 4:01 pm                Page 5


---------------------------------------------------------------------------


00-2822  Lyons v. Mendez, et al

10/22/01       AMENDED REPLY BRIEF on behalf of Appellant James Lyons.
               Copies: 4, Delivered by mail, filed. Certificate of service
               dated 10/10/01. (gas) [00-2822]

10/22/01       ADDENDUM to Appellant's Reply Brief/w letter under FRAP
               28(j) attached, filed. (gas) [00-2822]

10/23/01       ORDER (Clerk) In light of the Clerk's order dated October
               22, 2001, the foregoing motion to file an amended reply
               brief is unnecessary, and is denied as moot, filed. (gas)
               [00-2822]

2/26/02        CALENDARED for Tuesday, March 12, 2002. (mac)
               [00-2822]

2/27/02        Letter dated February 20, 2002 by Appellant sent for the

information of the Court, received. (clc) [00-2822]

3/7/02        Letter dated March 4, 2002 by Appellant sent to the court
              for their information, received. (clc) [00-2822]

3/12/02       SUBMITTED (Pro Se) Tuesday, March 12, 2002 Coram: Alito,
              Roth and Fuentes, Circuit Judges. (mac) [00-2822]

9/9/02        PUBLISHED PRECEDENTIAL REPORTED OPINION (Alito, Authoring
              Judge and Roth, Fuentes, Circuit Judges), filed. (clc)
              [00-2822]

9/9/02        JUDGMENT reversed and remanded for issuance of the writ of
              habeas corpus, filed. (clc) [00-2822]

9/26/02       MOTION by Appellant for Release on Personal Recognizance,
              filed. Answer due 10/7/02. Certificate of Service dated
              9/23/02. (clc) [00-2822]

10/8/02       RESPONSE in opposition filed by Appellees to motion for
              release on personal recognizance. Certificate of service
              dated 10/7/02. (clc) [00-2822]

10/9/02       Supplemental Memorandum of Law by appellant in Support of
              Motion for Release on Personal Recognizance, filed. (clc)
              [00-2822]

10/15/02      REPLY by appellant TO RESPONSE in opposition by appellee,
              filed. Certificate of service dated 10/9/02 (clc)
              [00-2822]

10/23/02      ORDER (Alito, Authoring Judge, Roth and Fuentes, Circuit
              Judges) granting motion for release on personal
              recognizance, filed. (clc) [00-2822]

10/23/02      Certified copy of order to Lower Court. (clc)
              [00-2822]

Docket as of December 4, 2002 4:01 pm              Page 6


00-2822  Lyons v. Mendez, et al

10/24/02      PETITION by Appellee for rehearing before original panel,
              Certificate of service dated 10/24/02. (clc)
              [00-2822]

10/31/02      MANDATE ISSUED, filed. (crg) [00-2822]

11/1/02       EMERGENCY MOTION by Appellee for Order of Supervision with
              memorandum in support, filed. Answer due 11/14/02.
              Certificate of Service dated 10/30/02. (clc)
              [00-2822]

11/1/02       ORDER (Clerk) to recall certified judgment issued in lieu

|           | of a formal mandate on 10/31/02, filed. (clc) [00-2822] |
|-----------|----------------------------------------------------------|
| 11/1/02   | Certified copy of order to Lower Court. (clc) [00-2822] |
| 11/4/02   | MOTION by Appellant to extend time to file response, filed. Answer due 11/12/02. Certificate of Service dated 10/30/02. (clc) [00-2822] |
| 11/8/02   | ORDER (Alito, Authoring Judge, Roth and Fuentes, Circuit Judges) denying motion to reconsider order dated October 23, 2002 and Emergency Motion by Appellees for Order of Supervision. See FRAP 23(c), filed. (clc) [00-2822] |
| 11/8/02   | ORDER (Alito, Authoring Judge, Roth and Fuentes, Circuit Judges) denying petition for rehearing before original panel by Appellee, filed. (clc) [00-2822] |
| 11/19/02  | MANDATE ISSUED, filed. (cmd) [00-2822] |
| 11/20/02  | RECORD RETURNED. (agb) [00-2822] |
| 12/2/02   | RECORD RETURNED. (lm) [00-2822] |

Docket as of December 4, 2002 4:01 pm                    Page 7

| PACER Service Center |||
|---|---|---|
| Transaction Receipt |||
| 03/29/2003 21:56:31 |||
| **PACER Login:** | 1e0196 | **Client Code:** |
| **Description:** | dkt report | **Case Number:** 00-2822 |
| **Billable Pages:** | 7 | **Cost:** 0.49 |



PETITIONER'S EXHIBIT-6

Below, the court encounters pertinent excerpts taken from the **U.S. Parole Commision's Rules & Procedures Manual**, August 15, 2003 edit.

Specifically, §§ 2.19 and 2.20 which are the corresponding equal (when applied procedurally) as the United States Sentencing Guidelines (U.S.S.G.). Just as the federal courts within the District of Massachusetts have constitutionally invalidated certain sections of the sentencing guidelines, this court should now invalidate pertinent sections of the parole guidelines as violating the Sixth Amendment. See e.g. **United States v. Jaber**, Cr. No. 02-CR-10201-NG, where Judge Gertner holds unconstitutional U.S.S.G § 3B1.1(c) "role in the offense" and § 3C1.1 "obstruction of justice", also see **United States v. Green**, No 02-10054-WGY, Sentencing Memoranda" wherein Chief Judge Young invalidates U.S.S.G. § 2D1.1 "Relevant Conduct" and the entire body of the guideline scheme as a whole. **United States v. Booker**, No. 03-4225 (7th Cir.2004) same. As with the Sentencing Commission, the Parole Commission is an administrative agency and cannot promulgate rules or procedures that strip a citizen of certain bed-rock constitutional protections.

1.    Sections 2.19 and 2.20, Information Considered and Paroling Policy Guidelines, respectively, must be held unconstitutional under Blakely.

2.    Even absent such a ruling, petitioner requires a finding that

1.

his release determination was ill-reached. The court should consider:

----- according to the "guideline" matrix, <u>infra</u>, there is in fact a corresponding "upper-limit" under Category Eight because there are four (4) Offense Characteristics (Salient Factor) <u>categories</u> which establish <u>upper-limits</u> to each salient placement. Because the respondent does not have the authority to transform "offender characteristics" to meet their penalogical goals they, therefore, cannot place an offender in a category (Very Good; Good; Fair; or Poor) on a whim to justify the decision on release. ---- Although the *note stating Category Eight has "no upper limit" ---- the Matrix suggests otherwise and the rule of lenity should dispose of the note. For example:

Even if Angiulo were a Category Eight, his <u>Salient Factor Score</u> places him at "Very Good". <u>Exhibit-1</u>, first Motion To Amend. because there are four (4) salient categories, each subsequent category establishes an "upper-limit" to a corresponding parole range, i.e.

----- Category Eight with Salient Factor "Very Good" warrants 100+ months.

----- Category Eight with Salient Factor "Good" warrants 120+ months.

<u>Therefore</u>, the span <u>between</u> salient factor <u>very</u> <u>good</u> and salient factor <u>good</u> is a "parole guideline range" traversing 19 months with the 19th month constituting the "upper-limit". In other words, the parole guideline range for salient factor "Good" would be 120 to 149 months with 149 months being the <u>upper-limit</u> under Category Eight with a Salient Factor score of <u>Good</u> and 150 months the threshhold minimum under Salient Factor "Fair", etc. (See Parole Guideline Matrix attached herewith). In accordance with the parole

2.

commission guideline matrix the <u>only</u> offenders authorized to receive a 180+ "no upper-limit" classification are those Category Eight offenders  scoring "Poor" under the Offender Characteristics section of the guideline matrix. Ofcourse, Angiulo is one of those very few offenders who score "Very Good" and the respondent's have violated his due process entitlements to that score and must now be reversed. Simply stated. if the  commission is authorized (which has not been shown) to neglect n.430 <u>supra</u>, directing them to afford petitioner "new sentencing guidelines" which  reflects an 87 month minimum (first Motion To Amend at 14) then under the facts  and evidence most favorable to the government, Angiulo could have only served under pre-existing law a <u>maximum</u> of 119 months as a Category Eight (which he has established inapplicable) with  a corresponding Salient Factor score of "Very Good".  This court must release the petitioner, and release him forthwith. To  do otherwise would serve to further a constitutional miscarriage.

3.

U.S. Department of Justice
United States Parole Commission

# U.S. PAROLE COMMISSION
# RULES & PROCEDURES MANUAL



*AUGUST 15, 2003*

(b) Designation of a case meeting the criteria under §2.17 as original jurisdiction by a Regional Commissioner is presumptive not mandatory. A Regional Commissioner may decline to designate the case as original jurisdiction (with a memo to the file) and either (1) agree with the panel recommendation, or (2) take other action under 28 C.F.R. 2.24.

(c) Where a report from the Justice Department or other government law-enforcement agency is considered essential and such report has not been received, the Regional Commissioner may reschedule the case for the next docket for consideration of additional information. In such case, follow-up will be made with the appropriate agency to insure an expedited report.

2.17-03. *Referral to National Commissioners.* The Regional Commissioner referring a case for original jurisdiction shall use two orders (see Appendix 1). The reasons for designation specified in 28 C.F.R. 2.17 shall be particularized to the individual case and an analysis of the case and the reasons for decision shall be set forth.

2.17-04. *Processing by National Commissioners.* Upon receipt of an original jurisdiction case, the National Commissioners, where feasible, shall process the case within 21 days. Cases shall be voted on sequentially.

2.17-05. *Declassification.* Where a case has been previously designated as original jurisdiction and the Regional Commissioner believes it no longer warrants such classification, he may refer the case to the National Commissioners for declassification. The Regional Commissioner shall also vote on the substantive case decision. The National Commissioners shall first vote on declassification. If declassified, the case shall be treated as a non-original jurisdiction case and returned for processing, unless the Regional Commissioner's proposed decision requires action under 2.24(a). If not declassified, the case shall be processed under original jurisdiction procedures.

2.17-06. *Rescission.* Rescission procedures for original jurisdiction cases are set forth at 2.34-05.

2.17-07. *Revocation.* Where a case previously has been designated original jurisdiction or is being designated at this time, all orders (including any forfeiture of street time) will be forwarded with the Regional Commissioner's vote to the National Commissioners. Thereafter, the orders will be processed in the same manner as any other original jurisdiction decision.

## §2.18 GRANTING OF PAROLE.

The granting of parole to an eligible prisoner rests in the discretion of the U.S. Parole Commission. As prerequisites to a grant of parole, the Commission must determine that the prisoner has substantially observed the rules of the institution or institutions in which he has been confined; and upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, must determine that release would not depreciate the seriousness of his offense or promote disrespect for the law, and that release would not jeopardize the public welfare (*i.e.*, that there is a reasonable probability that, if released, the prisoner would live and remain at liberty without violating the law or the conditions of his parole).

## §2.19 INFORMATION CONSIDERED.

(a) In making a parole/reparole determination the Commission shall consider, if available and relevant:

(1) Reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) Official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;

(3) Pre-sentence investigation reports;

(4) Recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge and prosecuting attorney;

(5) Reports of physical, mental, or psychiatric examination of the offender; and

(6) A statement, which may be presented orally or otherwise, by any victim of the offense for which the pr' imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such

(b)(1) There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available (18 U.S.C. 4207). The Commission encourages the submission of relevant information concerning an eligible prisoner by interested persons.

(2) To permit adequate review of information concerning the prisoner, materials submitted to the Commission should be received by the Commission no later than the first day of the month preceding the month of the scheduled hearing docket.

(3) If material of more than six (6), double-spaced, letter-sized pages is first submitted at the time of the hearing (or preliminary interview) and the hearing examiner (or person conducting the hearing or preliminary interview) concludes that it is not feasible to read all the material at that time, the person submitting the material will be permitted to summarize it briefly at the hearing (or preliminary interview). All of the material submitted will become part of the record to be considered by the Commission in its review of the proceedings.

(4) The Commission will normally consider only verbal and written evidence at hearings. Recorded audio and visual material will be reviewed at hearings only if there is no adequate substitute to permit a finding under paragraph (c) of this section. Otherwise, recorded audio and visual material should be submitted prior to the hearing for review and summarization, pursuant to paragraph (b)(2) of this section.

(c) The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability. If the Commission is given evidence of criminal behavior that has been the subject of an acquittal in a federal, state, or local court, the Commission may consider that evidence if:

(1) The Commission finds that it cannot adequately determine the prisoner's suitability for release on parole, or to remain on parole, unless the evidence is taken into account;

(2) The Commission is satisfied that the record before it is adequate notwithstanding the acquittal;

(3) The prisoner has been given the opportunity to respond to the evidence before the Commission; and

(4) The evidence before the Commission meets the preponderance standard.

In any other case, the Commission shall defer to the trial jury. Offense behavior in Category 5 or above shall presumptively support a finding under paragraph (c)(1) of this section.

(d) Recommendations and information from sentencing judges, defense attorneys, prosecutors, and other interested parties are welcomed by the Commission. In evaluating a recommendation concerning parole, the Commission must consider the degree to which such recommendation provides the Commission with specific facts and reasoning relevant to the statutory criteria for parole (18 U.S.C. 4206) and the application of the Commission's guidelines (including reasons for departure therefrom). Thus, to be most helpful, a recommendation should state its underlying factual basis and reasoning. However, no recommendation (including a prosecutorial recommendation pursuant to a plea agreement) may be considered as binding upon the Commission's discretionary authority to grant or deny parole.

*Notes and Procedures*

▌2.19-01. *Prohibition Against Use of Illegal Wiretap Evidence.* Under 18 U.S.C. 2515, courts and other government authorities, including the Commission, are prohibited from using any illegal wiretap evidence for any purpose. Therefore, no information

acquired from an illegal wiretap shall be used by the Commission for determining offense severity, salient factor score, or for any other purpose in parole release, revocation, reparole, rescission, or any other decision.

■ 2.19-02. *Not Guilty Verdicts After Trial.*

(a) If a prisoner is convicted after trial of a lesser included offense and acquitted on a more serious offense (*e.g.*, conviction for carnal knowledge after trial for rape; conviction for voluntary manslaughter after trial for murder), only the conviction offense is to be considered unless the case meets the criteria listed in 28 C.F.R. 2.19(c).

(b) If a prisoner is convicted by trial of an offense, such as conspiracy, attempt, aiding or abetting, or accessory after the fact, where the severity rating is, by rule, determined by reference to the underlying offense (*e.g.*, 28 C.F.R. 2.20 specifies that conspiracy is to be rated in the same category as the underlying offense), acquittal on the underlying offense does not bar use of the conviction offense (*e.g.*, conviction for conspiracy to murder is graded as Category Eight even if the prisoner is acquited of the charge of murder). However, the acquittal should be carefully considered in assessing the offender's role and level of culpability in the offense.

■ 2.19-03. *Evidence Not Considered at Criminal Trial.* Under 28 C.F.R. 2.19(c), the Commission may consider evidence that was excluded or not considered at a criminal trial because of procedural violations (*e.g.*, information concerning the seizure of drugs suppressed for failure to obtain a proper search warrant, or a confession suppressed for failure to properly give the Miranda warning). Particular care should be exercised in considering the reliability of such information since the reasons for its exclusion may raise significant doubts about its reliability (*e.g.*, coercion in the case of a confession). The Commission may also consider reliable information developed after trial (*e.g.*, a subsequent admission of guilt).

■ 2.19-04. *Reliance on Offense Descriptions in Presentence Reports.*

(a) It is not uncommon for a prisoner to present a description of his or her offense behavior which is significantly different from the prosecution version of the offense in the presentence report. Commission regulations (in conformance with the Parole Commission and Reorganization Act of 1976) require the Commission to consider any reasonably available information concerning the prisoner, including information submitted by the prisoner, and require the Commission (not the sentencing court) to resolve conflicting versions of the facts by the preponderance of evidence standard. To say that the description of the offense in the presentence report will be deemed to be controlling unless first modified by the court is contrary to the Commission's duty to make its own independent factual findings. To be sure, the presentence report traditionally, and appropriately, has been given a great deal of weight by the Commission in making fact findings. But determining the weight to be given to any particular source of information is a function to be performed on a case-by-case basis. Several criteria for assessing the reliability of information are listed at 2.19-06. The Commission may not under its statute and regulations treat the presentence report as an unassailable source of factual information. It is to be noted that it may be futile for a prisoner to return to court seeking a modification of his presentence report. Some courts have refused to entertain post-sentencing requests for modification of the presentence report, holding that it is up to the Commission to make its own factual determinations in the parole decision making process.

(b) Therefore, information submitted to the Commission which conflicts with the presentence report, or any other government report, must be weighed by the Commission along with the report. The Commission is then to resolve the conflicting versions of the facts by the preponderance of evidence standard; that is, decide which version of the facts best accords with reason and probability. Judging the credibility of the source of the information naturally is part of the fact finding process. The prisoner, of course, may have an interest in having the facts distorted to show him to be less culpable than he really is. On the other hand, the presentence report writer, who must depend on investigative reports, may have misinterpreted the investigative reports or confused the facts of a complicated case. These possibilities must be weighed in each individual case.

(c) Where the hearing examiner concludes that the description of the offense reported in the presentence report or Form 792 is to be believed, the examiner should, when informing the prisoner of the recommendation, explain that the finding is based upon the information before the examiner. The examiner may then tell the prisoner that if the prisoner obtains further significant information, such as a correction from the sentencing court or probation officer, he may send it to the Commission for consideration of a reopening of the case.

◼ 2.19-05. *Information for Decision-Making.*

(a) If the presentence report is not clear as to the data needed to establish the correct guidelines, the U.S. Probation Office that prepared the report should be contacted. Where it is determined that additional information concerning the offense behavior is needed, Form USA-792 may be requested.. Modifications to that sample letter may be made where warranted (*e.g.*, where a report has previously been provided and additional information is required). Note also that, in drug offenses, the DEA regional office where the prosecution occurred may be a useful source of information.

(b) Establishing the correct guidelines and making objective and fair decisions are dependent upon having adequate information. Careful attention, particularly at the pre-hearing stage, will enable the securing of additional information where appropriate, and enhance the quality and fairness of the Commission's work.

◼ 2.19-06. *Assessing the Reliability of Information.* The normal indicants of reliability are (a) the report is specific as to the behavior alleged to have taken place; (b) the allegation is corroborated by established facts; and (c) the source of the allegation appears credible. The prisoner is to be informed of the allegation at the hearing and given an opportunity to respond. An allegation that is vague, unsupported, or comes from an unreliable source should not be considered. Cases requiring further information or verification may be referred to the Commission's Office.

## ◼ §2.20  PAROLING POLICY GUIDELINES; STATEMENT OF GENERAL POLICY.

(a) To establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration, the U.S. Parole Commission has adopted guidelines for parole release consideration.

(b) These guidelines indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics. The time ranges specified by the guidelines are established specifically for cases with good institutional adjustment and program progress.

(c) These time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered.

(d) The guidelines contain instructions for the rating of certain offense behaviors. However, especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed.

(e) An evaluation sheet containing a "salient factor score" serves as an aid in determining the parole prognosis (potential risk of parole violation). However, where circumstances warrant, clinical evaluation of risk may override this predictive aid.

(f) Guidelines for reparole consideration are set forth at §2.21.

(g) The Commission shall review the guidelines, including the salient factor score, periodically and may revise or modify them at any time as deemed appropriate.

(h) If an offender was less than 18 years of age at the time of the current offense, such youthfulness shall, in itself, be considered as a mitigating factor.

(i) For criminal behavior committed while in confinement see §2.36 (Rescission Guidelines).

(j)(1) In probation revocation cases, the original federal offense behavior and any new criminal conduct on probation (federal or otherwise) is considered in assessing offense severity. The original federal conviction is also counted in the salient factor score as a prior conviction. Credit is given towards the guidelines for any time spent in confinement on any offense considered in assessing offense severity.

(2) Exception: Where probation has been revoked on a complex sentence [*i.e.*, a committed sentence of more than six months on one count or more of an indictment or information followed by a probation term on the other count(s) of an

indictment or information], the case shall be considered for guideline purposes under §2.21 as if parole rather than probation had been revoked.

### GUIDELINES FOR DECISION-MAKING
[Guidelines for Decision-Making, Customary Total Time
to be Served before Release (including jail time)]

| OFFENSE CHARACTERISTICS: | OFFENDER CHARACTERISTICS: Parole Prognosis (Salient Factor Score 1998) | | | |
|---|---|---|---|---|
| Severity of Offense Behavior | Very Good (10-8) | Good (7-6) | Fair (5-4) | Poor (3-0) |
| Category One | <=4 months | Guideline Range <=8 months | 8-12 months | 12-16 months |
| Category Two | <=6 months | Guideline Range <=10 months | 12-16 months | 16-22 months |
| Category Three | <=10 months | Guideline Range 12-16 months | 18-24 months | 24-32 months |
| Category Four | 12-18 months | Guideline Range 20-26 months | 26-34 months | 34-44 months |
| Category Five | 24-36 months | Guideline Range 36-48 months | 48-60 months | 60-72 months |
| Category Six | 40-52 months | Guideline Range 52-64 months | 64-78 months | 78-100 months |
| Category Seven | 52-80 months | Guideline Range 64-92 months | 78-110 months | 100-148 months |
| Category Eight* | 100+ months | Guideline Range 120+ months | 150+ months | 180+ months |

*Note:  For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category.  For decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the pertinent case factors upon which it relied in reaching its decision, which may include the absence of any factors mitigating the offense.  This procedure is intended to ensure that the prisoner understands that individualized consideration has been given to the facts of the case, and not to suggest that a grant of parole is to be presumed for any class of Category Eight offenders.  However, a murder committed to silence a victim or witness, a contract murder, a murder by torture, the murder of a law enforcement officer to carry out an offense, or a murder carried out to further the aims of an on-going criminal operation, shall not justify a parole at any point in the prisoner's

sentence unless there are compelling circumstances in mitigation (*e.g.*, a youthful offender who participated in a murder planned and executed by his parent). Such aggravated crimes are considered, by definition, at the extreme high end of Category Eight offenses. For these cases, the expiration of the sentence is deemed to be a decision at the maximum limit of the guideline range. (The fact that an offense does not fall under the definition contained in this rule does not mean that the Commission is obliged to grant a parole.)

# U.S. PAROLE COMMISSION OFFENSE BEHAVIOR SEVERITY INDEX

**CHAPTER ONE.**   OFFENSES OF GENERAL APPLICABILITY

**CHAPTER TWO.**   OFFENSES INVOLVING THE PERSON
   Subchapter A - Homicide Offenses
   Subchapter B - Assault Offenses
   Subchapter C - Kidnaping and Related Offenses
   Subchapter D - Sexual Offenses
   Subchapter E - Offenses Involving Aircraft
   Subchapter F - Communication of Threats

**CHAPTER THREE.**   OFFENSES INVOLVING PROPERTY
   Subchapter A - Arson and Property Destruction Offenses
   Subchapter B - Criminal Entry Offenses
   Subchapter C - Robbery, Extortion, and Blackmail
   Subchapter D - Theft and Related Offenses
   Subchapter E - Counterfeiting and Related Offenses
   Subchapter F - Bankruptcy Offenses
   Subchapter G - Violations of Securities or Investment Regulations
      and Antitrust Offenses

**CHAPTER FOUR.**   OFFENSES INVOLVING IMMIGRATION, NATURALIZATION, AND PASSPORTS

**CHAPTER FIVE.**   OFFENSES INVOLVING REVENUE
   Subchapter A - Internal Revenue Offenses
   Subchapter B - Customs Offenses
   Subchapter C - Contraband Cigarettes

**CHAPTER SIX.**   OFFENSES INVOLVING GOVERNMENTAL PROCESS
   Subchapter A - Impersonation of Officials
   Subchapter B - Obstructing Justice
   Subchapter C - Official Corruption

**CHAPTER SEVEN.**   OFFENSES INVOLVING INDIVIDUAL RIGHTS
   Subchapter A - Offenses Involving Civil Rights
   Subchapter B - Offenses Involving Privacy

**CHAPTER EIGHT.**   OFFENSES INVOLVING EXPLOSIVES AND WEAPONS
   Subchapter A - Explosives and Other Dangerous Articles
   Subchapter B - Firearms

**CHAPTER NINE.**   OFFENSES INVOLVING ILLICIT DRUGS
   Subchapter A - Heroin and Opiate Offenses
   Subchapter B - Marijuana and Hashish Offenses
   Subchapter C - Cocaine Offenses
   Subchapter D - Other Illicit Drug Offenses